**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION** | Master File No. 12-md-02311 |
| | Honorable Marianne O. Battani |
| **In Re: Bearings** | |
| **THIS DOCUMENT RELATES TO:** | Child Case: 12-cv-00502 |
| | Child Case: 12-cv-00503 |
| **All Automobile Dealer Actions** **All End-Payor Actions** | **ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' COLLECTIVE MOTION TO DISMISS THE END PAYORS'**
**CORRECTED CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND**
**THE DEALERSHIP CONSOLIDATED CLASS ACTION COMPLAINT**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6), Defendants[1] respectfully move to dismiss all claims in the End Payors' Corrected Consolidated Amended Class Action Complaint, filed on September 19, 2013 (Case No. 2:12-cv-00503, ECF No. 69-1) ("EP CCAC"), and the Dealership Consolidated Class Complaint, filed on August 21, 2013 (Case No. 2:12-cv-00502, ECF No. 67) ("AD CCC") (the EP CCAC and AD CCC are collectively referred to herein as the "Complaints"). In support of this motion, Defendants state as follows:

---

[1] "Defendants" refers to JTEKT Corporation, JTEKT North America Corporation (formerly d/b/a/ Koyo Corporation of U.S.A.), Nachi-Fujikoshi Corp., Nachi America Inc., NTN Corporation, NTN USA Corporation, NSK Ltd., NSK Americas, Inc., Schaeffler AG, Schaeffler Group USA Inc., and AB SKF.

1.     Defendants base this motion upon the accompanying memorandum of law in support, oral argument of counsel, and such other and further material as the Court may consider.

2.     As required by E.D. Mich. Local Rule 7.1(a), counsel for Defendants sought concurrence from counsel for Dealership Plaintiffs on November 27, 2013, and counsel for End Payor Plaintiffs on November 26, 2013, via telephone conferences.  During those calls, counsel for Defendants explained the nature of this motion and its legal basis and requested, but did not obtain, concurrence in the relief sought (i.e., dismissal of the Complaints).

Dated:  December 2, 2013

<div style="margin-left:40%">

Respectfully submitted,

SHEARMAN & STERLING LLP

/s/ Heather L. Kafele
Heather L. Kafele
Keith R. Palfin
Alison R. Welcher
801 Pennsylvania Avenue
Suite 900
Washington, DC 20004
202-508-8097
202-508-8001 (facsimile)
heather.kafele@shearman.com
keith.palfin@shearman.com
alison.welcher@shearman.com

PAESANO AKKASHIAN, PC

Brian M. Akkashian
132 N. Old Woodward Avenue
Birmingham, MI 48009
248-792-6886
bakkashian@paesanoakkashian.com

**Attorneys for JTEKT Corporation and JTEKT North America Corporation (formerly d/b/a Koyo Corporation of U.S.A.)**

</div>

REED SMITH LLP

Debra H. Dermody
Michelle Mantine
Reed Smith Centre
225 Fifth Ave.
Pittsburgh, PA 15222-2716
412-288-3302
ddermody@reedsmith.com
mmantine@reedsmith.com

DYKEMA GOSSETT PLLC

/s/ Howard B. Iwrey (w/ consent)
Howard B. Iwrey (P39635)
Brian M. Moore (P58584)
39577 Woodward Avenue; Suite 300
Bloomfield Hills, MI 48304
248-203-0700
hiwrey@dykema.com
bmoore@dykema.com

**Attorneys for Defendant AB SKF**

LANE POWELL PC

/s/ Kenneth R. Davis II (w/consent)
Kenneth R. Davis II
Craig D. Bachman
Darin M. Sands
Masayuki Yamaguchi
ODS Tower
601 SW Second Ave., Suite 2100
Portland, OR  97204-3158
(503) 778-2100
(503) 778-2200 (facsimile)
davisk@lanepowell.com
bachmanc@lanepowell.com
sandsd@lanepowell.com
yamaguchi@lanepowell.com

Larry S. Gangnes
Connor B. Shively
1420 Fifth Avenue, Suite 4100
Seattle, WA  98101-2338
(206) 223-7000

(206) 223-7107 (facsimile)
gangnes@lanepowell.com
shivelyc@lanepowell.com

KEMP KLEIN LAW FIRM

Richard D. Bisio (P30246)
Ronald S. Nixon (P57117)
201 W. Big Beaver, Suite 600
Troy, MI 48084
(248) 528-1111
(248) 528-5129 (facsimile)
richard.bisio@kkue.com
ron.nixon@kkue.com

**Attorneys for Defendants Nachi-Fujikoshi
Corp. and Nachi America, Inc.**

WINSTON & STRAWN LLP

/s/ A. Paul Victor (w/consent)
A. Paul Victor (*pro hac vice*)
Jeffrey L. Kessler (*pro hac vice*)
Molly M. Donovan (*pro hac vice*)
Elizabeth A. Cate (*pro hac vice*)
200 Park Avenue
New York, NY 10166
(212) 294-6700
(212) 294-4700 (facsimile)
pvictor@winston.com
jkessler@winston.com
mmdonovan@winston.com
ecate@winston.com

KERR, RUSSELL AND WEBER

Fred K. Herrmann (P49519)
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
(313) 961-0200
fkh@krwlaw.com

**Attorneys for Defendants NTN
Corporation and NTN USA Corporation**

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

/s/ Jeremy J. Calsyn (w/consent)
Jeremy J. Calsyn
Mark Leddy
2000 Pennsylvania Avenue, NW
Washington, DC 20006
202-974-1522
jcalsyn@cgsh.com
mleddy@cgsh.com

HONIGMAN, MILLER, SCHWARTZ
AND COHN LLP

David A. Ettinger
660 Woodward Avenue
Suite 2290
Detroit, MI 48226-3506
313-465-7368
dettinger@honigman.com

**Attorneys for Defendants NSK Ltd. and
NSK Americas, Inc.**

WILMER CUTLER PICKERING HALE
AND DORR LLP

/s/ Eric J. Mahr (w/ consent)
Eric J. Mahr
Stacy E. Frazier
1875 Pennsylvania Ave., NW
Washington, DC 20006
202-663-6446
eric.mahr@wilmerhale.com
stacy.frazier@wilmerhale.com

**Attorneys for Defendants Schaeffler AG
and Schaeffler Group USA, Incorporated**

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| **In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION** | Master File No. 12-md-02311 |
| | Honorable Marianne O. Battani |
| **In Re: Bearings** | |
| **THIS DOCUMENT RELATES TO:** | Child Case: 12-cv-00502 |
| | Child Case: 12-cv-00503 |
| **All Automobile Dealer Actions** **All End-Payor Actions** | **ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' COLLECTIVE MOTION TO DISMISS THE END PAYORS' CORRECTED CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND THE DEALERSHIP CONSOLIDATED CLASS <u>ACTION COMPLAINT</u>**

## STATEMENT OF THE ISSUES PRESENTED

1.    Whether the Court should dismiss with prejudice the Complaints of the End Payors ("EPs") and Automobile Dealers ("ADs") (collectively, "IPPs") in their entirety because the Complaints fail to meet the pleading requirements set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and its progeny, including the decisions in the Wire Harnesses case, *In re Automotive Parts Antitrust Litig.,* No. 2:12–cv–00101, 2013 WL 2456584 (E.D. Mich. June 6, 2013) (Battani, J.) ("*Wire Harnesses I*"), and *In re Automotive Parts Antitrust Litig.,* Nos. 2:12–cv–00101, 2:12-cv-00103, 2013 WL 2456612 (E.D. Mich. June 6, 2013) (Battani, J.) ("*Wire Harnesses II*").

2.    Whether the Court should dismiss the IPPs' Complaints in their entirety because the Complaints fail to plausibly allege an injury-in-fact, as required for constitutional standing.

3.    Whether (a) the EPs have constitutional standing to assert claims under District of Columbia law, where no EP resides or allegedly suffered injury, and (b) the ADs have constitutional standing to assert claims under the laws of Hawaii and North Dakota, where no AD resides or allegedly suffered injury.

4.    Whether due process requires dismissal of the EPs' state law claims due to EPs' failure to allege where any purported injury occurred.

5.    Whether IPPs lack antitrust standing to bring their antitrust claims under the laws of Arizona, California, District of Columbia, Hawaii, Illinois, Iowa, Kansas, Maine, Michigan, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

6.    Whether the Court should dismiss the IPPs' unjust enrichment claims in their entirety because the IPPs have failed to identify the unjust enrichment laws of any particular jurisdiction.

7.    Whether the IPPs can maintain unjust enrichment claims under the laws of thirty-one states and the District of Columbia if there are no surviving antitrust or consumer protection claims under the laws of those states.

8.    Whether the specific state laws of thirty-one states and the District of Columbia require dismissal of IPPs' state law antitrust, consumer protection, and unjust enrichment claims on statutory or various other grounds, including whether these claims are barred, in whole or in part, by the relevant statutes of limitations.

9.    Whether the Court should dismiss the IPPs' claims for injunctive relief due to the IPPs' failure to plausibly allege a real or immediate threat of future injury.

i

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

**I.     IPPs' Failure to Plausibly Plead Conspiracy Under *Twombly***

- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
- *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)
- *In re Automotive Parts Antitrust Litig.*, No. 2:12–cv–00101, 2013 WL 2456584 (E.D. Mich. June 6, 2013) (Battani, J.) ("*Wire Harnesses I*") (Exh. J-1)
-  *In re Automotive Parts Antitrust Litig.*, Nos. 2:12–cv–00102, 2:12-cv-00103, 2013 WL 2456612 (E.D. Mich. June 6, 2013) ("*Wire Harnesses II*") (Exh. J-2)
- *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09–md–02042, 2012 WL 2114997 (E.D. Mich. June 11, 2012) ("*Compressors*") (Exh. J-33)

**II.    IPPs' Failure to Sufficiently Plead Article III Constitutional Standing**

- *Allen v. Wright*, 468 U.S. 737 (1984)
- *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-02042, 2012 WL 2917365 (E.D. Mich. July 17, 2012) ("*Compressors I*") (Exh. J-3)
- *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-02042,  2013 WL 1431756 (E.D. Mich. Apr. 9, 2013) ("*Compressors II*") (Exh. J-4)
- *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)
- *Nat'l ATM Council, Inc. v. Visa, Inc.*, 922 F. Supp. 2d 73 (D.D.C. 2013)
- *Sierra Club v. Morton*, 405 U.S. 727 (1972)

**III.   EPs' Failure to Satisfy Due Process Requirements**

- *Allstate Ins. Co. v. Hague*, 449 U.S. 302 (1981)
- *Healy v. Beer Inst., Inc.*, 491 U.S. 324 (1989)
- *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)

**IV.    IPPs' Failure to Sufficiently Plead Antitrust Standing**

- *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*")
- *Bodie-Rickett & Assocs. v. Mars, Inc.*, 957 F.2d 287 (6th Cir. 1992)
- *In re Dynamic Random Access Memory Antitrust Litig.*, 516 F. Supp. 2d 1072 (N.D. Cal. 2007) ("*DRAM I*")
- *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-02042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013) ("*Compressors II*") (Exh. J-4)
- *Province v. Cleveland Press Publ'g Co.*, 787 F.2d 1047 (6th Cir. 1986)

**V.     IPPs' Failure to Sufficiently Plead Any Claims for Unjust Enrichment**

- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
- *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

- *In re Automotive Parts Antitrust Litig.*, Nos. 2:12-cv-00102, 2:12-cv-00103, 2013 WL 2456612 (E.D. Mich. June 6, 2013) ("*Wire Harnesses II*") (Exh. J-2)
- *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-02042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013) ("*Compressors II*") (Exh. J-4)
- *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642 (E.D. Mich. 2011) ("*Packaged Ice*")

**VI.**   **IPPs' State Law Claims Are Barred in Whole or in Part by State Statutes of Limitations**

- Ariz. Rev. Stat. Ann. § 44-1410
- Ark. Code Ann. § 4-88-115
- Cal. Bus. & Prof. Code §§ 16750.1; 17208
- D.C. Code §§ 28-4511; 12301(8)
- Fla. Stat. Ann. § 95.11(3)
- Haw. Rev. Stat. § 480-24
- 740 Ill. Comp. Stat. § 10/7(2)
- Iowa Code Ann. § 553.16(1)
- Kan. Stat. Ann. § 60-512(2)
- 14 Me. Rev. Stat. Ann. § 752
- Mass. Gen. Laws Ann. Ch. 93 § 13
- Mich. Comp. Laws Ann. § 445.781
- Minn. Stat. Ann. § 325D.64
- Miss. Code Ann. § 15-1-49
- Mo. Rev. Stat. § 516.120
- Mont. Code Ann. § 27-2-11
- Neb. Rev. Stat. Ann. § 59-1612
- Nev. Rev. Stat. Ann. § 598A.220
- N.C. Gen. Stat. § 75-16.2
- N.D. Cent. Code § 51-08.1-10(1)
- N.H. Rev. State. Ann. § 356:12
- N.M. Stat. Ann. § 57-1-12
- N.Y. Gen. Bus. Law § 340(5); N.Y. CPLR § 214(2)
- Or. Rev. Stat. Ann. § 646.140
- R.I. Gen. Laws § 6-36-23
- S.C. Code Ann. § 39-5-150
- S.D. Codified Laws § 37-1-14.4
- 12 Vt. Stat. Ann. § 511
- W.Va. Code Ann. § 47-18-11
- Wisc. Stat. Ann. § 133.18(2)
- *Appletree Square 1 Ltd. P'ship v. W.R. Grace & Co.*, 815 F. Supp. 1266 (D. Minn. 1993)
- *Baier v. Ford Motor Co.*, No. C04-2039, 2005 WL 928615 (N.D. Iowa Apr. 21, 2005) (Exh. J-31)

- *Batek v. Curators of the Univ. of Mo.*, 920 S.W.2d 895 (Mo. 1996)
- *Bomar v. Moser*, 251 S.W.3d 234 (Ark. 2007)
- *Cevenini v. Archbishop of Wash.*, 707 A.2d 768 (D.C. 1998)
- *Chandler v. Wackenhut Corp.*, 1:08-CV-1197, 2010 WL 307908 (W.D. Mich. Jan. 19, 2010) *aff'd*, 465 F. App'x 425 (6th Cir. 2012) (Exh. J-48)
- *Chaney v. Fields Chevrolet Co.*, 503 P.2d 1239 (Or. 1972)
- *Christy v. Miulli*, 692 N.W.2d 694 (Iowa 2005)
- *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 115 N.M. 690 (N.M. 1993)
- *Crawford v. Paul Davis Restoration Triad Inc.*, No. COA02-1040, 2003 WL 21436156 (N.C. App. June 17, 2003) (Exh. J-52)
- *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389 (6th Cir. 1975)
- *Delco Oil, Inc. v. Pannu*, 856 So. 2d 1070 (Fla. Dist. Ct. App. 2003)
- *Doe v. St. Benedict's Abbey*, 189 P.3d 580, No. 98,675, 2008 WL 3368248 (Kan. Ct. App. Aug. 8, 2008) (Exh. J-32)
- *Evans v. Pearson Enters., Inc.*, 434 F.3d 839 (6th Cir. 2006)
- *First Fed. Savings & Loan Ass'n of Wisconsin v. Dade Fed. Savings & Loan Ass'n*, 403 So.2d 1097 (Fla. Dist. Ct. App. 1981)
- *Friends Univ. v. W.R. Grace & Co.*, 608 P.2d 936 (Kan. 1980)
- *Hanna Mining Co. v. InterNorth, Inc.*, 379 N.W.2d 663 (Minn. Ct. App. 1986)
- *Hinkle v. Hargens*, 76 S.D. 520 (S.D. 1957)
- *Kante v. Nike, Inc.*, CV 07-1407-HU, 2008 WL 5246090 (D. Or. Dec. 16, 2008) *aff'd sub nom. Azewen-Jik Kante v. Nike, Inc.*, 364 F. App'x 388 (9th Cir. 2010) (Exh. J-53)
- *In re Ford Motor Co. E-350 Van Products Liab. Litig. (No. II)*, CIV. A. 03-4558, 2010 WL 2813788 (D.N.J. July 9, 2010) (Exh. J-43)
- *In re Refrigerant Compressors Antitrust Litig.*, 795 F. Supp. 2d 647 (E.D. Mich. 2011)
- *Martin v. Howard*, 784 A.2d 291 (R.I. 2001)
- *McKinnon v. Honeywell Int'l, Inc.*, 977 A.2d 420 (Me. 2009)
- *McNaughton v. Rockford State Bank*, 256 N.W. 84 (Mich. 1933)
- *Pahlad v. Brustman*, 33 A.D.3d 518 (N.Y. App. Div. 2006)
- *People v. Coleman*, 206 Ill. 2d 261 (Ill. 2002)
- *Pinney Dock & Transport Co. v. Penn Central Corp.*, 838 F.2d 1445 (6th Cir. 1988)
- *Portsmouth Country Club v. Town of Greenland*, 152 N.H. 617 (N.H. 2005)
- *Puritan Med. Ctr., Inc. v. Cashman*, 596 N.E.2d 1004 (Mass. 1992)
- *Rodrigue v. Valco Enter.*, 726 A.2d 61 (Vt. 1999)
- *Roether v. Nat'l Union Fire Ins. Co.*, 200 N.W. 818 (N.D. 1924)
- *Rundgren v. Bank of New York Mellon*, 777 F. Supp. 2d 1224 (D. Haw. 2011)
- *Rucinsky v. Hentchel*, 881 P.2d 616 (Mont. 1994)
- *Ryan v. Roman Catholic Bishop of Providence*, 941 A.2d 174 (R.I. 2008)
- *Sattler v. Bailey*, 400 S.E.2d 220 (W.Va. 1990)
- *State ex rel. Susedik v. Knutson*, 191 N.W.2d 23 (Wis. 1971)

iv

- *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 572 N.W.2d 321 (Minn. Ct. App. 1997)
- *Strong v. Univ. of S.C. Sch. of Med.*, 447 S.E.2d 850 (S.C. 2002)
- *Stephens v. Equitable Life Assurance Soc'y of U.S.*, 850 So.2d 78 (Miss. 2003)
- *Tovrea Land & Cattle Co. v. Linsentneyer*, 412 P.2d 47 (Ariz. 1996)
- *Upah v. Ancona Bros. Co.*, 521 N.W.2d 895 (Neb. 1994)
- *Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980)
- *Wilkerson v. Christian*, No. 1:06CV00871, 2008 WL 483445 (M.D. N.C. Feb. 19, 2008) (Exh. J-40)
- *Winn v. Sunrise Hosp. & Med. Ctr.*, 277 P.3d 458 (Nev. 2012)
- *Yancey v. Remington Arms Co., LLC*, Nos. 1:12CV977, 1:12CV437, 1:10CV918, 2013 WL 5462205 (M.D. Sept. 30, 2013) (Exh. J-5)

## VII.   IPPs' Failure to Sufficiently Plead State Antitrust Claims

- Ariz. Rev. Stat. Ann. § 44-1412
- D.C. Code § 28-4515
- Haw. Rev. Stat. §§ 480-3, *et seq.*
- 740 Ill. Comp. Stat. §§ 10/7, 10/11
- Iowa Code § 553.2
- Mich. Comp. Laws Ann. § 445.784(2)
- Neb. Rev. Stat. Ann. § 59-829
- Nev. Rev. Stat. Ann. §§ 598A.050; 598A.060
- N.H. Rev. Stat. Ann. §§ 356:11, 356:14
- N.M. Stat. Ann. § 57-1-15
- N.Y. Gen. Bus. Law § 340(1)
- Or. Rev. Stat. Ann. § 646.715(2)
- S.D. Codified Laws § 37-1-3.1
- Tenn. Code Ann. § 28-3-105
- Utah Code Ann. §§ 68-3-3, 76-10-3109, 76-10-3118
- W.Va. Code Ann. § 47-18-16
- *Am. Council, Certified Podiatric Physicians v. Am. Board Podiatric Surgery, Inc.*, 185 F.3d 606 (6th Cir. 1999)
- *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*")
- *Beckler v. Visa U.S.A. Inc.*, No. Civ. 09-04-C-00030, 2004 WL 2475100 (N.D. Dist. Ct. Sept. 21, 2004) (Exh. J-6)
- *Boulware v. Nevada*, 960 F.2d 793 (9th Cir. 1992)
- *Cornelison v. Visa U.S.A. Inc.*, Hearing Transcript, No. CIV 03-1350 (S.D. Cir. Ct. 2004) (Exh. J-12)
- *Davis v. Four Seasons Hotel Ltd.*, 228 P.3d 303 (Haw. 2010)
- *Donovan v. Digital Equip. Corp.*, 883 F. Supp. 775 (D.N.H. 1994)
- *Fucile v. Visa U.S.A., Inc.*, No. 51560-03 CNC, 2004 WL 3030037 (Vt. Super. Ct. Dec. 27, 2004) (Exh. J-7)

- *Gutnayer v. Cendant Corp.*, 116 F. App'x 758 (7th Cir. 2004)
- *H-Quotient, Inc. v. Knight Trading Grp., Inc.*, No. 03 Civ. 5889 (DAB), 2005 WL 323750 (S.D.N.Y. Feb. 9, 2005) (Exh. J-8)
- *Ho v. Visa U.S.A. Inc.*, Index No. 112316/00, 2004 WL 1118534 (N.Y. Sup. Ct. Apr. 21, 2004) (Exh. J-9)
- *In re Dynamic Random Access Memory Antitrust Litig.*, 536 F. Supp. 2d 1129 (N.D. Cal. 2008) ("*DRAM II*")
- *In re Magnesium Oxide Antitrust Litig.*, Civ. No. 10-5943(DRD), 2011 WL 5008090 (D.N.J. Oct. 20, 2011) (Exh. J-10)
- *In re Microsoft Corp. Antitrust Litig.*, Nos. MDL 1332, Civ. JFM–03–741, Civ. JFM–03–742, Civ. JFM 03–743, Civ. JFM 03–744, Civ. JFM–03–745, Civ. JFM–03–746, Civ. JFM–03–747, Civ. JFM–03–748, 2003 WL 22070561 (D. Md. Aug. 22, 2003) (Exh. J-11)
- *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-02042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013) ("*Compressors II*") (Exh. J-4)
- *In re S.D. Microsoft Antitrust Litig.*, 707 N.W.2d 85 (S.D. 2005)
- *Kanne v. Visa U.S.A., Inc.*, 723 N.W.2d 293 (Neb. 2006)
- *Kessel v. Monongalia Cnty. Gen. Hosp. Co.*, 648 S.E.2d 366 (W.Va. 2007)
- *Knowles v. Visa U.S.A. Inc.*, No. 01-03-00697-CR, 2004 WL 2475284 (Me. Super. Ct. Oct. 20, 2004) (Exh. J-13)
- *Luscher v. Bayer AG*, No. 2004-014835, slip op. (Ariz. Super. Ct. Sept. 14, 2005) (Exh. J-60)
- *Minuteman v. Microsoft Corp.*, 795 A.2d 833 (N.H. 2002)
- *Nass-Romero v. Visa U.S.A., Inc.*, 279 P.3d 772 (N.M. Ct. App. 2012)
- *N.W. Med. Labs., Inc. v. Blue Cross & Blue Shield of Or., Inc.*, 794 P.2d 428 (Or. 1990)
- *Orr v. Beamon*, 77 F. Supp. 2d 1208 (D. Kan. 1999)
- *Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So. 2d 331 (Miss. 2004)
- *Peterson v. Visa U.S.A. Inc.*, No. Civ.A. 03-8080, 2005 WL 1403761 (D.C. Super. Ct. Apr. 22, 2005) (Exh. J-14)
- *Princeton Ins. Agency, Inc. v. Erie Ins. Co.*, 690 S.E.2d 587 (W. Va. 2009)
- *Southard v. Visa U.S.A. Inc.*, 734 N.W.2d 192 (Iowa 2007)
- *Stark v. Visa USA, Inc.*, No. 03-055030-CZ, 2004 WL 1879003 (Mich. Cir. Ct. July 23, 2004) (Exh. J-15)
- *Strang v. Visa U.S.A., Inc.*, No. 03-CV 011323, 2005 WL 1403769 (Wis. Cir. Ct. Feb. 8, 2005) (Exh. J-16)
- *Sun Dun, Inc. v. Coca-Cola Co.*, 770 F. Supp. 285 (D. Md.1991) ("*Sun Dun II*")
- *Teague v. Bayer AG*, 671 S.E.2d 550 (N.C. Ct. App. 2009)
- *Tenn. Med. Ass'n v. Blue Cross Blue Shield of Tenn., Inc.*, 229 S.W.3d 304 (Tenn. Ct. App. 2007)
- *Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811 (1995)
- *Weaver v. Cabot Corp.*, No. 03 CVS 04760, 2004 WL 3406119 (N.C. Super. Ct. Mar. 26, 2004) (Exh. J-51)
- *West Virginia ex rel. Palumbo v. Graley's Body Shop, Inc.*, 425 S.E.2d 177 (W.Va. 1992)

**VII.    IPPs' Failure to Sufficiently Plead State Consumer Protection Claims**

- Ark. Code Ann. §§ 4-75-201, *et seq.*; 4-88-101, *et seq.*
- Mass. Gen. Laws Ch. 93A, § 11
- Mo. Rev. Stat. § 407.025
- Mont. Code Ann. § 30-14-133
- N.M. Stat. Ann. § 57-12-2(E)
- N.Y. Gen. Bus Law § 349(h)
- S.C. Code Ann. § 39-5-140
- *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 818 N.E.2d 1140 (N.Y. 2004)
- *Depriest v. Astrazeneca Pharms. L.P.*, No. CV2004-77, 2008 WL 3243562 (Ark. Cir. Ct. July 31, 2008) (Exh. J-17)
- *Ford v. ChartOne, Inc.*, 908 A.2d 72 (D.C. 2006)
- *Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190 (N.Y. 2002)
- *Independence Cnty. v. Pfizer, Inc.*, 534 F. Supp. 2d 882 (E.D. Ark. 2008)
- *In re Automotive Parts Antitrust Litig.*, Nos. 2:12–cv–00102, 2:12-cv-00103, 2013 WL 2456612 (E.D. Mich. June 6, 2013) ("*Wire Harnesses II*") (Exh. J-2)
- *In re Dynamic Random Access Memory Antitrust Litig.*, 516 F. Supp. 2d 1072 (N.D. Cal. 2007) ("*DRAM I*")
- *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011 (N.D. Cal. 2007) ("*GPU I*")
- *In re Magnesium Oxide Antitrust Litig.*, Civ. No. 10-5943 (DRD), 2011 WL 5008090 (D.N.J. Oct. 20, 2011) (Exh. J-10)
- *In re MI Windows and Doors, Inc. Prods. Liab. Litig.*, No. 2:11-cv-00167-DCN, 2012 WL 5408563 (D.S.C. Nov. 6, 2012) (Exh. J-18)
- *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642 (E.D. Mich. 2011) ("*Packaged Ice*")
- *"In" Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494 (M.D.N.C. 1987)
- *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42 (4th Cir. 1983)
- *Merck & Co. v. Lyon*, 941 F. Supp. 1443 (M.D.N.C. 1996)
- *Meridian Project Sys. Inc. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214 (E.D. Cal. 2005)
- *Shaw v. Marriot Int'l, Inc.*, 605 F.3d 1039 (D.C. Cir. 2010)
- *Wallis v. Ford Motor Co.*, 208 S.W.3d 153 (Ark. 2005)

**VIII.   IPPs' Failure to Sufficiently Plead State Unjust Enrichment Claims**

- *A & M Supply Co. v. Microsoft Corp.*, No. 274164, 2008 WL 540883 (Mich. Ct. App. Feb. 28, 2008) (per curiam) (Exh. J-46)
- *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170 (M.D. Fla. 2005)
- *Am. Movie Classics v. Rainbow Media Holdings*, 508 F. App'x 826 (10th Cir. 2013)
- *Am. Towers Owners Ass'n, Inc. v. CCI Mech., Inc.*, 930 P.2d 1182 (Utah 1996)

- *Apache Corp. v. MDU Res. Grp., Inc.*, 603 N.W.2d 891 (N.D. 1999)
- *Arena Res., Inc. v. Obo, Inc.*, 238 P.3d 357 (N.M. Ct. App. 2010)
- *Axenics, Inc. v. Turner Constr. Co.*, 62 A.3d 754 (N.H. 2013)
- *Baker Constr. Co. v. City of Burlington*, No. COA09-13, 2009 WL 3350747 (N.C. Ct. App. Oct. 20, 2009) (Exh. J-19)
- *Bouchard v. Price*, 694 A.2d 670 (R.I. 2001)
- *Bowyer v. Davidson*, 584 P.2d 686 (Nev. 1978)
- *Britt v. Britt*, 359 S.E.2d 467 (N.C. 1987), *overruled on other grounds by Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 374 S.E.2d 385 (N.C. 1988)
- *Clapp v. Goffstown Sch. Dist.*, 977 A.2d 1021 (N.H. 2009)
- *Carmona v. Spanish Broad. Sys., Inc.*, No. 08 Civ. 4475 (LAK), 2009 WL 890054 (S.D.N.Y. Mar. 30, 2009) (Exh. J-20)
- *Cmty. Builders, Inc. v. Indian Motocycle Assocs., Inc.*, 692 N.E.2d 964 (Mass. App. Ct. 1998)
- *Commercial Fed. Bank v. Qwest Corp.*, No. 03-0634, 2004 WL 2296370 (Iowa Ct. App. Oct. 14, 2004) (Exh. J-44)
- *Concrete Prods. Co. v. Salt Lake Cnty.*, 734 P.2d 910 (Utah 1987)
- *Cnty. Asphalt Paving, Co., Inc. v. Mosley Constr., Inc.*, 239 S.W.3d 704 (Mo. Ct. App. 2007)
- *Crandell v. Wall Lake View Auburn Bd. of Educ.*, No. 00-2013, 2002 WL 987665 (Iowa Ct. App. May 15, 2002) (Exh. J-30)
- *Dahlgren v. Audiovox Commc'ns Corp.*, No. 2002 CA 007884 B, 2012 WL 2131937 (D.C. Super. Ct. Mar. 15, 2012) (Exh. J-21)
- *Davis v. Four Seasons Hotel Ltd.*, CIV. 08-00525 HG-BMK, 2011 WL 5025521 (D. Haw. Oct. 20, 2011) (Exh. J-42)
- *Dist. 1199P Health & Welfare Plan v. Janssen, LP*, 784 F. Supp. 2d 508 (D.N.J. 2011)
- *Dunkel v. eBay, Inc.*, No. 5:12-CV-01452-EJD, 2013 WL 415584 (N.D. Cal. Jan. 31, 2013) (Exh. J-41)
- *Eivaz v. Edwards*, No. 12-C-910, 2013 WL 989843 (E.D. Wis. Mar. 13, 2013) (Exh. J-39)
- *Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400 (Fla. Dist. Ct. App. 2009)
- *Fernandes v. Havkin*, 731 F. Supp. 2d 103 (D. Mass. 2010)
- *Ferola v. Allstate Life Ins. Co.*, No. 050996, 2007 WL 2705534 (Mass. Super. Ct. Aug. 30, 2007) (Exh. J-22)
- *Fort Lincoln Civic Assoc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055 (D.C. 2008)
- *Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512 (Tenn. 2005)
- *Frein v. Windsor Weeping Mary LP*, 366 S.W.3d 367 (Ark. Ct. App. 2009)
- *High v. Davis*, 584 P.2d 752 (Or. 1978)
- *Howard v. Turnbull*, 316 S.W.3d 431 (Mo. Ct. App. 2010)
- *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2010 WL 1416259 (N.D. Ill. Apr. 1, 2010) (Exh. J-23)
- *In re Microsoft Corp. Antitrust Litig.*, 401 F. Supp. 2d 461 (D. Md. 2005)

- *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160 (D. Me. 2004) ("*NMV I*")
- *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907 (N.D. Ill. 2009), *vacated and remanded on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 657 F.3d 650 (7th Cir. 2011)
- *In re Refrigerant Compressors Antitrust Litig.*, 2:09-md-02042, 2012 WL 2917365 (E.D. Mich. July 17, 2012) ("*Compressors I*") (Exh. J-3)
- *Isom v. NE Lots LLC*, Docket No. 288378, 2010 WL 143470 (Mich. Ct. App. Jan. 14, 2010) (Exh. J-24)
- *Jerry Harmon Motors, Inc. v. Heth*, 316 N.W.2d 324 (N.D. 1982)
- *Johnston v. Brown*, 348 S.E.2d 391 (S.C. Ct. App. 1986), *rev'd on other grounds*, 357 S.E.2d 450 (S.C. 1987)
- *Kunzelmann v. Wells Fargo Bank, N.A.*, No. 9:11-cv-81373-DMM, 2013 WL 139913 (S.D. Fla. Jan. 10, 2013) (Exh. J-49)
- *La Throp v. Bell Fed. Sav. & Loan Ass'n*, 370 N.E.2d 188 (Ill. 1977)
- *Laborers' & Operating Eng'rs' Util. Agreement Health & Welfare Trust Fund for Ariz. v. Philip Morris, Inc.*, 42 F. Supp. 2d 943 (D. Ariz. 1999)
- *M+J Savitt, Inc. v. Savitt*, No. 08 Civ. 8535 (DLC), 2009 WL 691278 (S.D.N.Y. Mar. 17, 2009) (Exh. J-50)
- *Mann v. Am. W. Life Ins. Co.*, 586 P.2d 461 (Utah 1978)
- *Martis v. Grinell Mut. Reinsurance Co.*, 388 Ill. App. 3d 1017 (2009)
- *McKee v. Meltech, Inc.*, No. 10-2730, 2011 WL 1770461 (W.D. Tenn. May 9, 2011) (Exh. J-56)
- *Melchior v. New Line Prods., Inc.*, 131 Cal. Rptr. 2d 347 (Cal. Ct . App. 2003)
- *Minebea Co. Ltd. v. Pabst*, 444 F. Supp. 2d 68 (D.C. 2006)
- *Munson v. Countrywide Home Loans, Inc.*, No. 08-13244, 2008 WL 5381866 (E.D. Mich. Dec. 17, 2008) (Exh. J-25)
- *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 532 S.E.2d 868 (S.C. 2000)
- *Nickerson Co. v. Energy W. Mining Co.*, No. 20090221–CA, 2009 WL 4681778 (Utah Ct. App. Dec. 10, 2009) (Exh. J-58)
- *Niemi v. Am. Axle Mfg. & Holding. Inc*., No. 269155, 2007 WL 29383 (Mich. Ct. App. Jan. 4, 2007) (per curiam) (Exh. J-47)
- *One Step Up, Ltd. v. Webster Bus. Credit Corp.*, 925 N.Y.S.2d 61 (App. Div. 2011)
- *Parker v. W. Dakota Insurors, Inc.*, 605 N.W.2d 181 (S.D. 2000)
- *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150 (Tenn. 1966)
- *Peterson v. Cellco P'Ship*, 80 Cal. Rptr. 3d 316 (Ct. App. 2008)
- *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329 (S.D. Fla. 2007) ("*Prohias I*")
- *Porter v. Hu*, 169 P.3d 994 (Haw. Ct. App. 2007)
- *Ray Reilly's Tire Mart, Inc. v. F.P. Elnicki, Inc*., 537 A.2d 994 (Vt. 1987)
- *Rosetta v. Moretti*, No. 98-89, 2005 WL 1109638 (R.I. Super. Ct. May 4, 2005) (Exh. J-54)
- *Schroeder v. Buchholz*, 622 N.W.2d 202 (N.D. 2001)
- *Schumacher v. Schumacher*, 627 N.W.2d 725 (Minn. App. 2001)

- *Senne & Co. v. Simon Capital Ltd P'ship*, No. 93,302, 2007 WL 1175858 (Kan. Ct. App. Apr. 20, 2007) (Exh. J-26)
- *Smith v. Stowell*, 125 N.W.2d 795 (Iowa 1964), *overruled on other grounds by Lamp v. Am. Prothetics, Inc.*, 379 N.W.2d 909 (Iowa 1986)
- *S. Title Guar. Co. v. Bethers*, 761 P.2d 951 (Utah Ct. App. 1988)
- *Southard v. Visa U.S.A., Inc.*, No. LACV031729, 2004 WL 3030028 (Iowa Dist. Nov. 17, 2004) (Exh. J-27)
- *Southtown Plumbing, Inc. v. Har-Ned Lumber Co., Inc.*, 493 N.W.2d 137 (Minn. Ct. App. 1992)
- *Sperry v. Crompton Corp.*, 863 N.E.2d 1012 (N.Y. 2007)
- *Spires v. Hosp. Corp. of Am.*, 289 F. App'x 269 (10th Cir. 2008)
- *Tri-State Mech., Inc. v. Northland Coll.*, 681 N.W.2d 302 (Wis. Ct. App. 2004)
- *Tradesmen Int'l, Inc. v. U.S. Postal Serv.*, 234 F. Supp. 2d 1191 (D. Kan. 2002)
- *Trustmark Ins. Co. v. Bank* One, Ariz., NA, 48 P.3d 485 (Ariz. Ct. App. 2002)
- *USLife Title Co. v. Gutkin*, 732 P.2d 579 (Ariz. Ct. App. 1986)
- *Washa v. Miller*, 546 N.W.2d 813 (Neb. 1996)
- *Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168 (E.D. Cal. 2007)
- *Weather Doctor Servs. Co. v. Stephens*, No. E2000-01427-COA-R3-CV, 2001 WL 849540 (Tenn. Ct. App. July, 27, 2001) (Exh. J-57)
- *Will v. Mill Condo. Owners Ass'n, Inc.*, No. 457-10-01 WRCV, 2002 WL 34340312 (Vt. Super. Ct. July 5, 2002) (Exh. J-59)
- *Willis v. Rehab Solutions, PLLC*, 82 So. 3d 583 (Miss. 2012), *reh'g denied*, No. 2010-CA-01015-SCT, 2012 Miss. LEXIS 175 (Miss. Mar. 29, 2012)
- *Winters v. Cnty. of Clatsop*, 150 P.3d 1104 (Or. Ct. App. 2007)
- *Wittenberg v. First Indep. Mortg. Co.*, No. 3:10–CV–58, 2011 WL 1357483 (N.D. W.Va. Apr. 11, 2011) (Exh. J-28)
- *Yee v. Nat'l Gypsum Co.*, No. CV-09-8189-PHX-DGC, 2010 WL 2572976 (D. Ariz. June 22, 2010) (Exh. J-61)
- *Zinter v. Univ. of Minn.*, 799 N.W.2d 243 (Minn. Ct. App. 2011)

## IX.    IPPs' Failure to State a Claim for Injunctive Relief

- *City of L.A. v. Lyons*, 461 U.S. 95 (1980)
- *In re Nifedipine Antitrust Litig.*, 335 F. Supp. 2d 6 (D.D.C. 2004)
- *O'Shea v. Littleton*, 414 U.S. 488 (1974)
- *United States v. W.T. Grant Co.*, 345 U.S. 629 (1953)

## TABLE OF CONTENTS

STATEMENT OF THE ISSUES PRESENTED ................................................................. i

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES .................. ii

INDEX OF EXHIBITS ........................................................................... xxxii

INTRODUCTION ............................................................................... 1

ARGUMENT ..................................................................................... 3

  **I.**    **IPPS HAVE FAILED TO ALLEGE FACTS TO SUPPORT THEIR CLAIM THAT A UNIVERSAL CONSPIRACY BY ALL DEFENDANTS AFFECTED ALL AUTOMOTIVE BEARINGS SOLD IN THE UNITED STATES OVER A NINE-YEAR PERIOD**    **3**

  **II.**    **IPPS HAVE FAILED TO ALLEGE FACTS SUFFICIENT TO ESTABLISH CONSTITUTIONAL STANDING**    **9**

      A.    IPPs Do Not Sufficiently Allege That They Purchased Affected Products .................................................................... 10

      B.    IPPs Have Not Sufficiently Alleged a Causal Connection Between Any Claimed Injury and the Alleged Conspiracy ..................................... 11

      C.    IPPs Lack Article III Standing to Invoke the Laws of States in Which No Plaintiff Allegedly Resides or Suffered Injury .................................. 11

  **III.**    **DUE PROCESS REQUIRES DISMISSAL OF THE END PAYORS' STATE LAW CLAIMS BECAUSE NO NAMED PLAINTIFF HAS ALLEGED WHERE ANY PURPORTED INJURY OCCURRED**    **13**

  **IV.**    **IPPS' ALLEGATIONS FALL FAR SHORT OF ESTABLISHING ANTITRUST STANDING UNDER VARIOUS STATE ANTITRUST LAWS**    **14**

      A.    Component IPPs Did Not Participate in the Relevant Market .................. 16

      B.    IPPs' Alleged Injuries are Indirect, Attenuated, and Inherently Speculative ................................................................. 19

      C.    IPPs' Claims Would Require an Unreasonably Complex Apportionment of Damages and Are Potentially Duplicative .................. 22

  **V.**    **IPPS HAVE FAILED TO ADEQUATELY PLEAD THEIR STATE LAW UNJUST ENRICHMENT CLAIMS**    **23**

A. IPPs Do Not Identify the Unjust Enrichment Laws of Any Particular State..................................................................................... 23

B. IPPs' Unjust Enrichment Claims Also Fail Because IPPs Do Not Satisfy State Law Pleading Requirements ................................. 24

C. IPPs Cannot Use Unjust Enrichment to Recover on Failed Antitrust and Consumer Protection Theories ........................................... 27

**VI.   IPPS' STATE-LAW CLAIMS ARE BARRED IN WHOLE OR IN PART BY STATE STATUTES OF LIMITATIONS                                    28**

**VII.  AUTOMOBILE DEALERS' AND END PAYORS' STATE LAW CLAIMS MUST BE DISMISSED ON STATUTORY OR OTHER GROUNDS                                                                            33**

A. Arizona................................................................................ 34

B. Arkansas ............................................................................. 35

C. California ............................................................................ 37

D. District of Columbia ......................................................... 39

E. Florida ................................................................................ 42

F. Hawaii ................................................................................ 43

G. Illinois ................................................................................ 44

H. Iowa.................................................................................... 46

I. Kansas ................................................................................ 48

J. Maine .................................................................................. 49

K. Massachusetts .................................................................... 50

L. Michigan ............................................................................ 51

M. Minnesota........................................................................... 53

N. Mississippi ......................................................................... 54

O. Missouri ............................................................................. 56

P. Nebraska ............................................................................ 59

Q. Nevada ............................................................................... 60

R.    New Hampshire ...................................................................... 62

S.    New Mexico ........................................................................... 63

T.    New York ............................................................................... 66

U.    North Carolina ....................................................................... 70

V.    Oregon ................................................................................... 74

W.    Rhode Island ......................................................................... 75

X.    South Carolina ....................................................................... 76

Y.    South Dakota .......................................................................... 78

Z.    Tennessee ............................................................................... 80

AA.    Utah ...................................................................................... 82

BB.    Vermont ................................................................................ 84

CC.    West Virginia ........................................................................ 85

DD.    Wisconsin .............................................................................. 87

**VIII.**    **IPPS HAVE FAILED TO ALLEGE ANY PLAUSIBLE THREAT OF FUTURE INJURY TO SUPPORT A CLAIM FOR INJUNCTIVE RELIEF**    **88**

CONCLUSION ........................................................................................... 90

# TABLE OF AUTHORITIES

Page

**Cases**

*A & M Supply Co. v. Microsoft Corp.*, No. 274164, 2008 WL 540883 (Mich. Ct. App. Feb. 28, 2008) ..................................................................................................52, 55

*In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2010 WL 1416259 (N.D. Ill. Apr. 1, 2010) ...........................................................................................25, 52, 72

*Allen v. Wright*, 468 U.S. 737 (1984) .................................................................................9

*Allstate Ins. Co. v. Hague*, 449 U.S. 302 (1981).................................................................13, 14

*Am. Council of Certified Podiatric Physicians v. Am. Bd. Podiatric Surgery, Inc.*, 185 F.3d 606 (6th Cir. 1999) ...............................................................................52

*Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170 (M.D. Fla. 2005) ...................................................................................................42

*Am. Movie Classics v. Rainbow Media Holdings*, 508 F. App'x 826 (10th Cir. 2013)................83

*Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322 (Fla. Dist. Ct. App. 2007) ...................26, 43

*Am. Towers Owners Ass'n, Inc. v. CCI Mech., Inc.*, 930 P.2d 1182, 1193 (Utah 1996)..............83

*Anziulewicz v. Bluefield Cmty. Hosp., Inc.*, 531 F. Supp. 49 (S.D.W.V. 1981) ..........................86

*Apache Corp. v. MDU Res. Grp., Inc.*, 603 N.W.2d 891 (N.D. 1999).........................................73

*Appletree Square 1 Ltd. P'ship v. W.R. Grace & Co.*, 815 F. Supp. 1266 (D. Minn. 1993).........54

*Arena Res., Inc. v. OBO, Inc.*, 238 P.3d 357 (N.M. Ct. App. 2010)............................................65

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................................................3, 4, 24

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983)........................................................................................... *passim*

*Au v. Au*, 626 P.2d 173 (Haw. 1981) ..................................................................................44

*In re Automotive Parts Antitrust Litig.*, No. 2:12–cv–00101, 2013 WL 2456584 (E.D. Mich. June 6, 2013) .................................................................................. *passim*

*In re Automotive Parts Antitrust Litig.*, No. 2:12–cv–00101, 2013 WL 2456612 (E.D. Mich. June 6, 2013) .................................................................................. *passim*

xiv

*Axenics, Inc. v. Turner Constr. Co.*, 62 A.3d 754, 766–67 (N.H. 2013) .......................................63

*Baier v. Ford Motor Co.*, No. C04-2039, 2005 WL 928615 (N.D. Iowa Apr. 21, 2005) ............48

*Baker Constr. Co. v. City of Burlington*, No. COA09-13, 2009 WL 3350747 (N.C. Ct. App. Oct. 20, 2009)..................................................................................................72

*Bank of Ravenswood v. Domino's Pizza*, 646 N.E.2d 1252 (Ill. App. Ct. 1995)..........................46

*Bartleys Town & Country Shops, Inc. v. Dillingham Corp.*, 530 F. Supp. 499 (D. Haw. 1982) .........................................................................................................43

*Batek v. Curators of the Univ. of Mo.*, 920 S.W.2d 895 (Mo. 1996).............................................57

*In re Bath and Kitchen Fixtures Antitrust Litig.*, No. 05-cv-00510 MAM, 2006 WL 2038605 (E.D. Penn. 2006).........................................................................................8

*Beckler v. Visa U.S.A., Inc.*, No. 09-04-C-00030, 2004 WL 2475100 (N.D. Dist. Ct. Sept. 21, 2004) .........................................................................................................73

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ *passim*

*Berenda v. Langford*, 914 P.2d 45 (Utah 1996)..........................................................................84

*Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 818 N.E.2d 1140 (2004)........................................................................................................68

*Bodie-Rickett & Assocs. v. Mars, Inc.*, 957 F.2d 287 (6th Cir. 1992) ..............................16, 17, 20

*Bomar v. Moser*, 251 S.W.3d 234 (Ark. 2007)...........................................................................37

*Bouchard v. Price*, 694 A.2d 670 (R.I. 1997)..............................................................................75

*Boulware v. Nevada*, 960 F.2d 793 (9th Cir.1992) .....................................................................61

*Bowyer v. Davidson*, 584 P.2d 686 (Nev. 1978)..........................................................................62

*Bray Lines Inc. v. Utah Carriers, Inc.*, 739 P.2d 1115 (Utah Ct. App. 1987)..............................83

*Brenner v. Brenner*, 821 F. Supp. 2d 533 (E.D.N.Y. 2011) ..................................................69, 70

*Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883 (6th Cir. 2004).......................30, 32

*Bristol Vill., Inc. v. La.-Pac. Corp.*, 916 F. Supp. 2d 357 (W.D.N.Y. 2013) ...............................70

*Britt v. Britt*, 359 S.E.2d 467 (N.C. 1987) .................................................................................72

*Brooks v. Valley Nat'l Bank*, 548 P.2d 1166 (Ariz. 1976)...........................................................34

*Byre v. City of Chamberlain*, 362 N.W.2d 69 (S.D. 1985).............................................................78

*California v. Infineon Techs. AG.*, 531 F. Supp. 2d 1124 (N.D. Cal. 2007)...................................55

*Carmona v. Spanish Broad. Sys., Inc.*, No. 08 Civ. 4475, 2009 WL 890054 (S.D.N.Y. Mar. 30, 2009)........................................................................................................................69

*Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012)....................................................30

*Cevenini v. Archbishop of Wash.*, 707 A.2d 768 (D.C. 1998).......................................................42

*Chandler v. Wackenhut Corp.*, 1:08-CV-1197, 2010 WL 307908 (W.D. Mich. Jan. 19, 2010) *aff'd*, 465 F. App'x 425 (6th Cir. 2012).........................................................................53

*Chaney v. Fields Chevrolet Co*, 503 P.2d 1239 (Or. 1972).........................................................75

*In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538 (M.D. Pa. 2009)...............65

*Christy v. Miulli*, 692 N.W.2d 694 (Iowa 2005)............................................................................48

*City of L.A. v. Lyons*, 461 U.S. 95 (1988).....................................................................88, 89, 90

*Clapp v. Goffstown Sch. Dist.*, 977 A.2d 1021 (N.H. 2009)........................................................63

*Cmty. Builders, Inc. v. Indian Motocycle Assocs., Inc.*, 692 N.E.2d 964 (Mass. App. Ct. 1998)...............................................................................................................................51

*Cnty. Asphalt Paving, Co. v. Mosley Constr., Inc.*, 239 S.W.3d 704 (Mo. Ct. App. 2007)...........57

*Colosimo v. Roman Catholic Bishop of Salt Lake City*, 156 P.3d 806 (Utah 2007).....................84

*Commercial Fed. Bank v. Qwest Corp.*, No. 03-0634, 2004 WL 2296370 (Iowa Ct. App. Oct. 14, 2004) ...................................................................................................................47

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 138 F. Supp. 2d 25 (D. Me. 2001)...................................................................................................................32

*Concrete Prods. Co. v. Salt Lake Cnty.*, 734 P.2d 910 (Utah 1987)............................................83

*Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 858 P.2d 66 (N.M. 1993)............................32, 66

*Cornelison v. Visa U.S.A. Inc.*, Hearing Transcript, No. CIV 03-1350 (S.D. Cir. Ct. 2004) ........78

*Crandell v. Wall Lake View Auburn Bd. of Educ.*, No. 00-2013, 2002 WL 987665 (Iowa Ct. App. May 15, 2002).....................................................................................................47

*Crawford v. Paul Davis Restoration Triad Inc.*, No. COA02-1040, 2003 WL 21436156 (N.C. App. June 17, 2003).............................................................................................73

*D.R. Ward Constr. Co. v. Rohm & Hass Co.*, 470 F. Supp. 2d 485 (E.D. Pa. May 30, 2006) ................................................................................................................15

*Dahlgren v. Audiovox Commc'ns Corp.*, No. 2002 CA 007884 B, 2012 WL 2131937 (D.C. Super. Ct. Mar. 15, 2012) ........................................................................41

*Davis v. Four Seasons Hotel Ltd.*, 228 P.3d 303 (Haw. 2010) ....................................43

*Davis v. Four Seasons Hotel Ltd.*, CIV. 08-00525 HG-BMK, 2011 WL 5025521 (D. Haw. Oct. 20, 2011) ........................................................................................44

*Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389 (6th Cir. 1975) ........................30, 32

*Delco Oil, Inc. v. Pannu*, 856 So. 2d 1070 (Fla. Dist. Ct. App. 2003) ............................43

*Depriest v. Astrazeneca Pharms. L.P.*, No. CV2004-77, 2008 WL 3243562 (Ark. Cir. Ct. July 31, 2008) ....................................................................................35

*In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390 (S.D.N.Y. 2011) ............................28, 66

*Dist. 1199P Health & Welfare Plan v. Janssen, LP*, 784 F. Supp. 2d 508 (D.N.J. 2011)............26

*In re Ditropan XL*, 529 F. Supp. 2d 1098 (N.D. Cal. 2007) ........................................12

*Doe v. St. Benedict's Abbey*, 189 P.3d 580, No. 98,675, 2008 WL 3368248 (Kan. Ct. App. Aug. 8, 2008) ........................................................................................49

*Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526 (D. Md. 2011) ................................42, 77

*Donovan v. Digital Equip. Corp.*, 883 F. Supp. 775 (D. N.H. 1994) ............................62

*Dry Cleaning & Laundry Inst. of Detroit, Inc. v. Flom's Corp.*, 841 F. Supp. 212 (E.D. Mich. 1993)........................................................................................31

*Duke Energy Int'l, L.L.C. v. Napoli*, 748 F. Supp. 2d 656 (S.D. Tex. 2010) ..............................71

*Dunkel v. eBay, Inc.*, No. 5:12-CV-01452-EJD, 2013 WL 415584 (N.D. Cal. Jan. 31, 2013) ....................................................................................................38

*In re Dynamic Random Access Memory Antitrust Litig.*, 516 F. Supp. 2d 1072 (N.D. Cal. 2007) ........................................................................................*passim*

*In re Dynamic Random Access Memory Antitrust Litig.*, 536 F. Supp. 2d 1129 (N.D. Cal. 2008) ........................................................................................*passim*

*Eivaz v. Edwards*, No. 12-C-910, 2013 WL 989843 (E.D. Wis. Mar. 13, 2013) ........................24

*In re Elevator Antitrust Litig.*, 502 F.3d 47 (2d Cir. 2007)............................................8

*Emergency Physicians Integrated Care v. Salt Lake Cnty.*, 167 P.3d 1080 (Utah 2007)..............83

*Evans v. Pearson Enters., Inc.*, 434 F.3d 839 (6th Cir. 2006) ........................................29

*Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400 (Fla. Dist. Ct. App. 2009) ...................................................................................................42

*Fernandes v. Havkin*, 731 F. Supp. 2d 103 (D. Mass. 2010)........................................51

*Ferola v. Allstate Life Ins. Co.,* No 050996, 2007 WL 2705534 (Mass. Super. Ct. Aug. 30, 2007) ...........................................................................................27, 51

*First Fed. Savings & Loan Ass'n of Wisconsin v. Dade Fed. Savings & Loan Ass'n*, 403 So.2d 1097 (Fla. Dist. Ct. App. 1981) ....................................................43

*In re Flash Memory Antitrust Litigation*, 643 F. Supp. 2d 1133 (N.D. Cal. 2009) ................20, 21

*In re Flonase Antitrust Litig.*, 610 F. Supp. 2d 409 (E.D. Pa. 2009)..............................12

*In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524 (E.D. Pa. 2010)..........................28, 72

*In re Florida Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291 (S.D. Fla. 2010)........7, 9

*In re Ford Motor Co. E-350 Van Products Liab. Litig. (No. II)*, Civil Action No. 03-4558 (GEB), 2010 WL 2813788 (D.N.J. July 9, 2010) .............................................32, 46

*Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d 1055 (D.C. 2008) ...........41

*Fox v. City of Pompano Beach*, 984 So.2d 664 (Fla. Dist. Ct. App. 2008) ...............................43

*Frank Cooke, Inc. v. Hurwitz*, 406 N.E.2d 678 (Mass. App. Ct. 1980).........................51

*Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512 (Tenn. 2005) .............................81

*Frein v. Windsor Weeping Mary, LP*, 366 S.W.3d 367 (Ark. Ct. App. 2009) ...........................36

*Friends Univ. v. W.R. Grace & Co.*, 608 P.2d 936 (Kan. 1980) ...........................................31, 49

*FTC v. Mylan Labs., Inc.*, 62 F. Supp. 2d 25 (D.D.C. 1999)........................................83

*Fucile v. Visa U.S.A. Inc.*, No. S1560-03 CNC, 2004 WL 3030037 (Vt. Super. Ct. Dec. 27, 2004) ...................................................................................................84

*Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743 (N.Y. 2012) ...................................70

*Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190 (N.Y. 2002)...........................67, 68, 69

*In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011 (N.D.Cal. 2007) ...................................................................................................12, 13, 36, 64

*In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085 (N.D.Ca. 2007) ..... *passim*

*Gutnayer v. Cendant Corp.*, 116 F. Appx. 758 (7th Cir. 2004) ....................................45

*H-Quotient, Inc. v. Knight Trading Grp., Inc.*, No. 03 Civ. 5889(DAB), 2005 WL 323750
(S.D.N.Y. Feb. 9, 2005) ................................................................................66, 67

*Hanna Mining Co. v. InterNorth, Inc.*, 379 N.W.2d 663 (Minn. Ct. App. 1986) .........................54

*Harkness v. Fitzgerald*, 701 A.2d 370 (Me. 1997) ......................................................50

*Haz-Mat Response, Inc. v. Certified Waste Servs., Ltd.*, 910 P.2d 839 (Kan. 1996) ...................49

*Healy v. Beer Inst., Inc.*, 491 U.S. 324 (1989) ............................................................13

*Henning v. Sec. Bank*, 564 N.W.2d 398 (Iowa 1997) ................................................47

*Hentosh v. Herman M. Finch Univ. of Health Scis.*, 167 F.3d 1170 (7th Cir. 1999) ...................30

*Hesse v. Vinatieri*, 302 P.2d 699 (Cal. Dist. Ct. App. 1956) ................................................30, 39

*High v. Davis*, 584 P.2d 725 (Or. 1978) (en banc) ............................................................26, 75

*Hill v. Roll Int'l Corp.*, 128 Cal. Rptr. 3d 109 (Cal. Ct. App. 2011) ............................................38

*Hinkle v. Hargens*, 81 N.W.2d 888 (S.D. 1957) ......................................................80

*Hinkson v. Sauthoff*, 74 N.W.2d 620 (Wis. 1956) ......................................................88

*Ho v. Visa U.S.A. Inc.*, Index No. 112316/00, 2004 WL 1118534 (N.Y. Sup. Ct. Apr. 21,
2004) ................................................................................................66

*Holman v. Hansen*, 773 P.2d 1200 (Mont. 1989) ......................................................59

*Home Ins. Co. v. Dick*, 281 U.S. 408 (1930) ............................................................13

*Howard v. Turnbull*, 316 S.W.3d 431 (Mo. Ct. App. 2010) ................................................26, 56

*"In" Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494 (M.D.N.C. 1987) ................71, 72

*Independence Cnty. v. Pfizer, Inc.*, 534 F. Supp. 2d 882 (E.D. Ark. 2008) ................................36

*INS v. Pangilinan*, 486 U.S. 875 (1988) ..............................................................27

*Int'l Bhd. Of Teamsters, Local 734 Health & Welfare Trust Fund v. Philip Morris Inc.*,
196 F.3d 818 (7th Cir. 1999) ........................................................................23, 45

*In re Intel Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404 (D. Del. 2007) .........................23

*Iron Workers Local Union No. 70 Ins. Fund v. Philip Morris Inc.*, 29 F. Supp. 2d 801 (N.D. Ohio 1998) ................................................................................................32

*Island Tobacco Co., Ltd. v. R. J. Reynolds Tobacco Co.*, 63 Haw. 289, 627 P.2d 260 (1981) ..............................................................................................................43

*Isom v. NE Lots LLC*, No. 288378, 2010 WL 143470 (Mich. Ct. App. Jan. 14, 2010)................53

*ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42 (4th Cir. 1983) ...........................................71, 72

*Jerry Harmon Motors, Inc. v. Heth*, 316 N.W.2d 324 (N.D. 1982) ...............................................74

*Johnston v. Brown*, 348 S.E.2d 391 (S.C. Ct. App. 1986)............................................................78

*Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293 (Neb. 2006)............................................................60

*Kante v. Nike, Inc.*, CV 07-1407-HU, 2008 WL 5246090 (D. Or. Dec. 16, 2008) ......................75

*Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5 (2d Cir. 2012) ...............................................69

*Kaye v. Grossman*, 202 F.3d 611 (2d Cir. 2000) ....................................................................69, 70

*Kessel v. Monongalia Cnty. Gen. Hosp. Co.*, 648 S.E.2d 366 (W. Va. 2007)..............................86

*Knowles v. Visa U.S.A. Inc.*, No. Civ.A CV-03-707, 2004 WL 2475284 (Me. Super. Ct. Oct. 20, 2004) ........................................................................................................50

*Kobritz v. Severance*, 912 A.2d 1237 (Me. 2007) ......................................................................50

*Kunzelmann v. Wells Fargo Bank, N.A.*, No. 9:11-cv-81373-DMM, 2013 WL 139913 (S.D. Fla. Jan. 10, 2013) .......................................................................................77

*La Throp v. Bell Fed. Sav. & Loan Ass'n*, 370 N.E.2d 188 (Ill. 1977)........................................46

*Laborers' & Operating Eng'rs' Util. Agreement Health & Welfare Trust Fund for Ariz. v. Philip Morris, Inc.*, 42 F. Supp. 2d 943 (D. Ariz. 1999) ........................................34

*Lamprey v. Britton Const., Inc.*, 37 A.3d 359, 367 (N.H. 2012) ................................................63

*Laughlin v. Evanston Hosp.*, 550 N.E.2d 986 (Ill. 1990) ...........................................................45

*Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060 (C.D. Cal. 2009) ..................................................39

*Lewis v. Lead Industries Ass'n, Inc.*, 793 N.E.2d 869 (2003) ....................................................46

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666 (S.D.N.Y. 2013) ...............................................................................................................70

*Lorenzo v. Qualcomm Inc.*, 603 F. Supp. 2d 1291 (S.D. Cal. 2009) ............................................19

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................................10, 14

*Luscher v. Bayer AG*, No. 2004-014835 (Ariz. Super. Ct. Sept. 14, 2005)...................................34

*M+J Savitt, Inc. v. Savitt*, No. 08 Civ. 8535 (DLC), 2009 WL 691278 (S.D.N.Y. Mar. 17, 2009) ..........................................................................................................................................70

*In re Magnesium Oxide*, Civ. No. 10–5943 (DRD), 2011 WL 5008090 (D.N.J. Oct. 20, 2011) ................................................................................................................................... *passim*

*In re Magnesium Oxide*, Civ. No. 10-5943 (DRD), 2012 WL 1150123 (D.N.J. Apr. 5, 2012) ..........................................................................................................................................32

*Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104 (N.Y. 2011).........................................70

*Mann v. Am. W. Life Ins. Co.*, 586 P.2d 461 (Utah 1978) .............................................................82

*Martin v. Howard*, 784 A.2d 291 (R.I. 2001) ...............................................................................76

*Martis v. Grinell Mut. Reinsurance Co.*, 388 Ill. App. 3d 1017 (2009) ........................................45

*McKee v. Meltech, Inc.*, No. 10-2730, 2011 WL 1770461 (W.D. Tenn. May 9, 2011) ...............81

*McKinnon v. Honeywell Int'l, Inc.*, 977 A.2d 420 (Me. 2009) ......................................................50

*McNaughton v. Rockford State Bank*, 256 N.W. 84 (Mich. 1933) ................................................53

*Melchior v. New Line Prods. Inc.*, 131 Cal. Rptr. 2d 347 (Ct. App. 2003) ..................................38

*Meridian Project Sys., Inc. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214 (E.D. Cal. 2005)........37

*In re MI Windows & Doors, Inc. Prods. Liab. Litig.*, No. 2:11-cv-00167-DCN, 2012 WL 5408563 (D.S.C. Nov. 6, 2012) ...........................................................................................77

*Michigan Division-Monument Builders v. Michigan Cemetery Ass'n*, 458 F. Supp. 2d 474 (E.D. Mich. 2006) ...................................................................................................4, 6, 8

*In re Microsoft Corp. Antitrust Litig.*, 401 F. Supp. 2d 464 (N.D. Cal. 1975) .............................77

*In re Microsoft Corp. Antitrust Litig.*, Nos. MDL 1332, Civ. JFM–03–741, Civ. JFM–03–742, Civ. JFM 03–743, Civ. JFM 03–744, Civ. JFM–03–745, Civ. JFM–03–746, Civ. JFM–03–747, Civ. JFM–03–748, 2003 WL 22070561 (D. Md. Aug. 22, 2003)...................55

*Minebea Co. Ltd. v. Pabst*, 444 F. Supp. 2d 68 (D.C. 2006).........................................................41

*Minuteman, LLC v. Microsoft Corp.*, 147 N.H. 634 (N.H. 2002) .................................................62

*Morrisville Lumber Co. v. Okcuoglu*, 531 A.2d 887 (Vt. 1987).....................................................85

*Munson v. Countrywide Home Loans, Inc*., No. 08-13244, 2008 WL 5381866 (E.D. Mich. Dec. 17, 2008) ...........................................................................................52

*Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 532 S.E.2d 868 (S.C. 2000) ..........................77

*In re N.J. Title Ins. Litig.*, Civil Action No. 08-1425, 2010 WL 2710570 (D.N.J. July 6, 2010) ...........................................................................................................11

*N.W. Med. Labs., Inc. v. Blue Cross & Blue Shield of Or., Inc.*, 794 P.2d 428 (Or. 1990) ...........74

*Nass-Romero v. Visa U.S.A. Inc.*, 279 P.3d 772 (N.M. Ct. App. 2012) ........................................64

*In re Nat'l Ass'n of Music Merchants, Musical Instruments & Equipment Antitrust Litig.*, MDL No. 2121, 2012 WL 3637291 (S.D. Cal. Aug. 20, 2012) .................................................9

*Nat'l ATM Council, Inc. v. Visa Inc.*, 922 F. Supp. 2d 73 (D.D.C. 2013) ....................................11

*In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160 (D. Me. 2004)
.......................................................................................................25, 26, 28, 65

*In re New Motor Vehicles Canadian Export Antitrust Litig.*, 235 F.R.D. 127 (D. Me. 2006) ...........................................................................................................50

*Next Generation Realty v. Iowa Realty Co.*, 686 N.W.2d 206 (Iowa 2004) ..................................46

*Nickerson Co. v. Energy W. Mining Co.*, No. 20090221–CA, 2009 WL 4681778 (Utah Ct. App. Dec. 10, 2009) ...................................................................................83

*NicSand, Inc. v. 3M Co.*, 507 F.3d 442 (6th Cir. 2007) ...............................................................14

*Niemi v. Am. Axle Mfg. & Holding. Inc*., No. 269155, 2007 WL 29383 (Mich. Ct. App. Jan. 4, 2007) ...........................................................................................................53

*In re Nifedipine Antitrust Litig.*, 335 F. Supp. 2d 6 (D.D.C. 2004) .........................................88, 90

*O'Regan v. Arbitration Forms, Inc.*, 121 F.3d 1060 (7th Cir. 1997) ..........................................45

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ....................................................................................90

*Ockey v. Lehmer*, 189 P.3d 51 (Utah 2008) ................................................................................82

*One Step Up, Ltd. v. Webster Bus. Credit Corp.*, 925 N.Y.S.2d 61 (App. Div. 2011) .................70

*In re Optical Disk Drive Antitrust Litigation*, No. 3:10-md-2143 RS, 2012 WL 1366718 (N.D. Cal. Apr. 19, 2012) ...........................................................................................77

*Orlak v. Loyola Univ. Health Sys.*, 885 N.E.2d 999 (Ill. 2007) .............................................31, 46

*Orr v. Beamon*, 77 F. Supp. 2d 1208 (D. Kan. 1999) ...............................................................23, 48

*Owen v. Gen. Motors Corp.*, 533 F.3d 913 (8th Cir. 2008)...........................................................57

*Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So.2d 331 (Miss. 2004)...............................54

*In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642 (E.D. Mich. 2011)...................... *passim*

*Pahlad v. Brustman*, 33 A.D.3d 518 (N.Y. App. Div. 2006)..........................................................70

*Paltre v. Gen. Motors Corp.*, 810 N.Y.S.2d 496 (App. Div. 2006)...............................................68

*West Virginia ex rel. Palumbo v. Graley's Body Shop, Inc.*, 425 S.E.2d 177 (W.Va. 1992) ........86

*Parker v. W. Dakota Insurors, Inc.*, 605 N.W.2d 181 (S.D. 2000) ...............................................79

*Paschall's v. Dozier*, 407 S.W.2d 150 (Tenn. 1966) ................................................................27, 81

*Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 317 S.E.2d 41 (N.C. Ct. App. 1984) ..................73

*People v. Coleman*, 794 N.E.2d 275 (Ill. 2002)............................................................................46

*Perry v. Am. Tobacco Co.*, 324 F.3d 845 (6th Cir. 2003) .............................................................80

*Peterson v. Cellco P'ship*, 80 Cal. Rptr. 3d 316 (Ct. App. 2008)..................................................38

*Peterson v. Visa U.S.A. Inc.*, No. 03-8080, 2005 WL 1403761 (D.C. Super. Ct. Apr. 22, 2005) ...........................................................................................................................................39

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) .................................................................13

*Pinney Dock & Transport Co. v. Penn Cent. Corp.,* 838 F.2d 1445 (6th Cir. 1988) ........15, 29, 31

*In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801 (S.D. Ohio 2012).......................................42

*Porter v. Hu*, 169 P.3d 994 (Haw. Ct. App. 2007) ......................................................................44

*Porter v. Spader*, 239 P.3d 743 (Ariz. Ct. App. 2010) .................................................................35

*Portsmouth Country Club v. Town of Greenland*, 15883 A.2d 298 (N.H. 2005).........................63

*In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 924 (N.D. Ill. 2009)............................. *passim*

*Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266 (11th Cir. 2000) ........................................12

*Princeton Ins. Agency, Inc. v. Erie Ins. Co.*, 690 S.E.2d 587 (W. Va. 2009) .........................58, 86

*Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329 (S.D. Fla. 2007) ...............................................26, 43

*Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228 (S.D. Fla. 2007) .....................................................42

*Province v. Cleveland Press Publ'g Co.*, 787 F.2d 1047 (6th Cir. 1986)......................................16

*Puritan Med. Ctr., Inc. v. Cashman*, 596 N.E.2d 1004 (Mass. 1992) ............................................51

*Ray Reilly's Tire Mart, Inc. v. F.P. Elnicki, Inc.*, 537 A.2d 994 (Vt. 1987)...........................26, 85

*Re/Max Int'l, Inc., v. Realty One, Inc.*, 173 F.3d 995 (6th Cir. 1999) ....................................16, 19

*In re Refrigerant Compressors Antitrust Litig.*, 795 F. Supp. 2d 647 (E.D. Mich. 2011).......30, 32

*In re Refrigerant Compressors Antitrust Litig.*, No. 2:09–md–02042, 2012 WL 2114997
    (E.D. Mich. June 11, 2012)....................................................................................4, 6, 7

*In re Refrigerant Compressors Antitrust Litigation*, No. 2:09–md–02042, 2012 WL
    2917365 (E.D. Mich. July 17, 2012) ..............................................................11, 12

*In re Refrigerant Compressors Antitrust Litig.*, No. 2:09–md–02042, 2013 WL 1431756
    (E.D. Mich. Apr. 9, 2013)............................................................................... *passim*

*In re Relafen Antitrust Litig.*, 221 F.R.D. 260 (D. Mass. 2004) ....................................................72

*In re Relafen Antitrust Litig.*, 225 F.R.D. 14 (D. Mass. 2004) ......................................................73

*Roberson v. Medtronic*, 494 F. Supp. 2d 864 (W.D. Tenn. 2007)..................................................80

*Rodrigue v. Valco Enter.*, 726 A.2d 61 (Vt. 1999) ........................................................................85

*Roether v. Nat'l Union Fire Ins. Co.*, 200 N.W. 818 (N.D. 1924) ................................................74

*Romero v. Philip Morris Inc.*, 242 P.3d 280 (N.M. 2010)..............................................................64

*Rosetta v. Morretti*, No. 98-89, 2005 WL 1109638 (R.I. Super. Ct. May 4, 2005).......................75

*Ross v. Bank of Am., N.A.*, 524 F.3d 217 (2d Cir. 2008) ...............................................................14

*Rucinsky v. Hentchel*, 881 P.2d 616 (Mont. 1994) ........................................................................59

*Rundgren v. Bank of New York Mellon,* 777 F. Supp.2d 1224 (D. Haw. 2011) ...........................44

*Russell/Packard Dev., Inc. v. Carson*, 78 P.3d 616, 108 P.3d 741 (Utah 2007) ..........................84

*Ryan v. Roman Catholic Bishop of Providence*, 941 A.2d 174 (R.I. 2008) ..................................76

*In re S.D. Microsoft Antitrust Litig.*, 707 N.W.2d 85 (S.D. 2005) ................................................78

*S. Title Guar. Co. v. Bethers*, 761 P.2d 951 (Utah Ct. App. 1988)................................................83

*Sattler v. Bailey*, 400 S.E.2d 220 (W. Va. 1990) ..........................................................................87

*School Dist. Of City of Pontiac v. Secretary of U.S. Dept. of Educ.*, 584 F.3d 253 (6th Cir. 2009) ........................................................................................................14

*Schroeder v. Buchholz*, 622 N.W.2d 202 (N.D. 2001) ....................................................73

*Schumacher v. Schumacher*, 627 N.W.2d 725 (Minn. Ct. App. 2001)...........................54

*Senne & Co., Inc. v. Simon Capital Ltd. P'ship*, No. 93-302, 2007 WL 1175858 (Kan Ct. App. Apr. 20, 2007) ..............................................................................27, 49

*Shadrick v. Coker*, 963 S.W.2d 726 (Tenn. 1998)...........................................................82

*Shady Grove Orthopedic Assocs. v. Allstate Ins.*, 559 U.S. 393 (2010) .............57, 58, 76, 77

*Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039 (D.C. Cir. 2010).........................................40

*Sierra Club v. Morton*, 405 U.S. 727 (1972) ..................................................................10

*Sills v. Oakland Gen. Hosp.*, 559 N.W.2d 348 (Mich. Ct. App. 1997)...........................53

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976)...............................................12

*Sinclair Oil Corp. v. Atl. Richfield Co.*, 720 F. Supp. 894 (D. Utah 1989) ...................32

*Smith v. Lawyers Title Ins. Corp.*, Civil Case No. 07-12124, 2009 WL 514210 (E.D. Mich. Mar. 2, 2009) ..............................................................................................12

*Smith v. Stowell*, 125 N.W.2d 795 (Iowa 1964)..............................................................47

*Snapp & Assocs. Ins. Servs. Inc. v. Robertson*, 96 Cal. App. 4th 884 (2002) .........32, 39

*Southard v. Visa U.S.A., Inc.*, 734 N.W.2d 192 (Iowa 2007) .........................................47

*Southard v. Visa U.S.A., Inc.*, No. LACV 031729, 2004 WL 3030028 (Iowa Dist. Ct. Nov. 17, 2004) ....................................................................................................47

*Southhaven Land Co. v. Malone & Hyde, Inc.*, 715 F.2d 1079 (6th Cir. 1983) ...............15, 16, 17

*Southtown Plumbing, Inc. v. Har-Ned Lumber Co.*, 493 N.W.2d 137 (Minn. Ct. App. 1992) ......................................................................................................................53

*Spann v. Diaz*, 987 So. 2d 443 (Miss. 2008)...................................................................56

*Sperry v. Crompton Corp.*, 863 N.E.2d 1012 (N.Y. 2007).............................................69

*Spires v. Hosp. Corp. of Am.*, 289 F. App'x 269 (10th Cir. 2008) .................................48

*State ex rel. Spitzer* v. *Daicel Chem. Indus.*, 840 N.Y.S.2d 8 (App. Div. 2007) ...........68

xxv

*Standard Oil Co. of Ky. v. State*, 65 So. 468 (Miss. 1914) ...................................................55, 56

*Stark v. Advanced Magnetics, Inc.*, 736 N.E.2d 434 (Mass. App. Ct. 2000).................................51

*Stark v. VISA USA, Inc.*, No. 03-055030-CZ, 2004 WL 1879003 (Mich. Cir. Ct. July 23, 2004) ..........................................................................................................................................52

*State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 572 N.W.2d 321 (Minn. Ct. App. 1997) ..........................................................................................................................................54

*Stephens v. Equitable Life Assurance Soc'y of U.S.*, 850 So. 2d 78 (Miss. 2003)........................56

*Strang v. Visa U.S.A. Inc.*, No. 03 CV 011323, 2005 WL 1403769 (Wis. Cir. Ct. Feb. 8, 2005) ..........................................................................................................................................87

*Strassburg v. Citizens State Bank*, 581 N.W.2d 510 (S.D. 1998)...................................................80

*Strong v. Univ. of S.C. Sch. of Med.*, 447 S.E.2d 850 (S.C. 2002) ................................................78

*Stuart & Sons, L.P. v. Curtis Publ'g Co.*, 456 F. Supp. 336 (D. Conn. 2006) .............................28

*Sun Dun, Inc. of Wash. v. Coca Cola Co.*, 740 F. Supp. 381 (D. Md. 1990) ...............................40

*Sun Dun, Inc. of Wash. v. Coca-Cola Co.*, 770 F. Supp. 285 (D. Md. 1991) ...............................40

*Superior Offshore Int'l, Inc. v. Bristow Group, Inc.*, 738 F. Supp. 2d 505 (D. Del. 2010) .4, 6, 7, 9

*State ex. Rel. Susedik v. Knutson*, 191 N.W.2d 23 (Wis. 1971)......................................................88

*Szymczak v. Nissan N. Am., Inc.*, No. 10 CV 7493, 2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) ..........................................................................................................................................42

*Teague v. Bayer AG*, 671 S.E.2d 550 (N.C. Ct. App. 2009)..........................................................71

*Tenn. Med. Ass'n v. Blue Cross Blue Shield of Tenn., Inc.*, 229 S.W.3d 304 (Tenn. Ct. App. 2007) ....................................................................................................................................80

*In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365 (S.D. Fla. 2001)...............27

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109 (N.D. Cal. 2008) ......... *passim*

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179 (N.D. Cal. 2009) ................61

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, Nos. M 07–1827 SI, C 09–4997 SI, 2010 WL 2609434 (N.D. Cal. June 28, 2010)...........................................................................13

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430 (6th Cir. 2008)...........................................................................................................3, 4, 8, 9

*Tovrea Land & Cattle Co. v. Linsentneyer*, 412 P.2d 47 (Ariz. 1966) ....................................30, 35

*Tradesmen Int'l, Inc. v. U.S. Postal Serv.*, 234 F. Supp. 2d 1191 (D. Kan. 2002) ......................49

*In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896 (6th Cir. 2009).......................... *passim*

*In re Travel Agent Commission Antitrust Litig.*, No. 1:03 CV 30000, 2007 WL 3171675 (N.D. Ohio Oct. 29, 2007) ..........................................................................................8

*Tri-State Mech., Inc. v. Northland Coll.*, 681 N.W.2d 302 (Wis. Ct. App. 2004).......................87

*Trustmark Ins. Co. v. Bank One, Ariz., NA*, 48 P.3d 485 (Ariz. Ct. App. 2002) ..........................34

*Union Nat'l Life Ins. Co. v. Crosby*, 870 So. 2d 1175 (Miss. 2004) .............................................56

*United States v. W.T. Grant Co.*, 345 U.S. 629 (1953)..................................................................88

*Upah v. Ancona Bros. Co.*, 521 N.W.2d 895 (Neb. 1994) ...........................................................60

*USLife Title Co. v. Gutkin*, 732 P.2d 579 (Ariz. Ct. App. 1986) .................................................34

*Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811 (1995)...........................................................37

*Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980).....................................................................28

*Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168 (E.D. Cal. 2007).......................................38

*Washa v. Miller*, 546 N.W.2d 813 (Neb. 1996)...........................................................................60

*Watts v. Mulliken's Estate*, 115 A. 150 (Vt. 1921) ......................................................................85

*Weather Doctor Servs. Co. v. Stephens*, No. E2000-01427-COA-R3-CV, 2001 WL 849540 (Tenn. Ct. App. July, 27, 2001) ..............................................................................81

*Weaver v. Cabot Corp.*, No. 03 CVS 04760, 2004 WL 3406119 (N.C. Super. Ct. Mar. 26, 2004) ..........................................................................................................................71

*In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143 (E.D. Pa. 2009)....................................12, 24

*Wilkerson v. Christian*, No. 1:06CV00871, 2008 WL 483445 (M.D. N.C. Feb. 19, 2008)....31, 73

*Will v. Mill Condo. Owners Ass'n, Inc.*, No. 457-10-01 WRCV, 2002 WL 34340312 (Vt. Super. Ct. July 5, 2002) .......................................................................................85

*Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287 (3d Cir. 2003) ........................8, 9

*Willis v. Rehab Solutions, PLLC*, 82 So. 3d 583 (Miss. 2012) (en banc) .....................................56

*Winn v. Sunrise Hosp. & Med. Ctr.*, 277 P.3d 458 (Nev. 2012).....................................................62

*Winters v. Cnty. of Clatsop*, 150 P.3d 1104 (Or. Ct. App. 2007) ............................................26, 74

*In re Wiring Device Antitrust Litig.*, 498 F. Supp. 79 (E.D.N.Y. 1980).........................................67

*Wittenberg v. First Indep. Mortg. Co.*, No. 3:10–CV–58, 2011 WL 1357483 (N.D. W. Va. Apr. 11, 2011) ...........................................................................................................86

*Yancey v. Remington Arms Co., LLC*, Nos. 1:12CV477, 1:12CV437, 1:12CV918, 2013 WL 5462205 (M.D. N.C. Sept. 30, 2013) ..................................................................................73

*Yarbro, Ltd. v. Missoula Fed. Credit Union*, 50 P.3d 158 (Mont. 2002) ......................................59

*Yee v. Nat'l Gypsum Co.*, No. CV-09-8189-PHX-DGC, 2010 WL 2572976 (D. Ariz. June 22, 2010) ...........................................................................................................................34

*Zinter v. Univ. of Minn.*, 799 N.W.2d 243 (Minn. Ct. App. 2011) ................................................54

*Zoe G. v. Frederick F. G.*, 208 A.D.2d 675 (N.Y. App. Div. 1994)..............................................70

*Zuccarini v. Hoescht (In re Cardizem CD Antitrust Litig.)*, 200 F.R.D. 326 (E.D. Mich. 2001) ...........................................................................................................................52

**Statutes**

15 U.S.C. § 26.............................................................................................................................88

Ariz. Rev. Stat. Ann. § 44-1412.................................................................................................34

Ariz. Rev. Stat. Ann. § 44-1410.................................................................................................35

Ark. Code Ann. §§ 4-75-201, *et seq* .........................................................................................35

Ark. Code Ann. § 4-88-101 ........................................................................................................35

Ark. Code Ann. § 4-88-107(a)....................................................................................................36

Ark. Code Ann. § 4-88-115 ........................................................................................................37

Ark. Code Ann. §4-88-303 .........................................................................................................35

Cal. Bus. & Prof. Code § 16750.1 ..............................................................................................39

Cal. Bus. & Prof. Code § 17208 .................................................................................................39

Consumer Protection Procedures Act ....................................................................................40, 41

D.C. Code § 28-4511 ..................................................................................................................41

D.C. Code § 28-4515 ..................................................................................................................39

Fla. Stat. Ann. § 95.11(3) ................................................................................43

Haw. Rev. Stat. § 480-3 ....................................................................................43

Haw. Rev. Stat. § 480-4(a) ...............................................................................43

Haw. Rev. Stat. § 480-24 ..................................................................................44

740 Ill. Comp. Stat. § 10/11 .........................................................................45, 46

Iowa Code Ann. § 553.16(1) .............................................................................48

Iowa Code Ann. § 553.2 ...................................................................................46

Kan. Stat. Ann. § 60-512(2) ..............................................................................49

Mass. Gen. Laws Ann. Ch. 93 § 13 ..................................................................51

14 Me. Rev. Stat. Ann. § 752 ............................................................................50

Mich. Comp. Laws Ann. § 445.781 ...................................................................53

Mich. Comp. Laws Ann. § 445.784(2) ..............................................................52

Minn. Stat. Ann. § 325D.64 ..............................................................................54

Miss. Code Ann. § 15-1-49 ...............................................................................56

Mo. Rev. Stat. § 516.120 ..................................................................................57

Mont. Code Ann. § 27-2-11 ..............................................................................59

Mont. Code Ann. § 27-2102(3) ..........................................................................59

Mont. Code Ann., §§ 30-14-103, *et seq* .........................................................58

Mont. Code Ann. § 30-14-133(1) ......................................................................58

Mont. Code Ann., §§ 30-14-201, *et. seq* ........................................................58

N.C. Gen. Stat. § 75-16.2 ..................................................................................72

N.D. Cent. Code § 51-08.1-10(1) ......................................................................74

N.H. Rev. Stat. Ann. § 356:12 ..........................................................................63

N.H. Rev. Stat. Ann. § 356:14 ..........................................................................62

N.H. Rev. Stat. Ann. § 356:11 ..........................................................................63

N.M. Stat. Ann. § 57-1-12 ......................................................................66

N.M. Stat. Ann. § 57-1-15 ......................................................................64

N.M. Stat. Ann. § 57-12-2(E) ..................................................................64

N.Y. Gen. Bus. Law § 340(1) ..................................................................67

N.Y. Gen. Bus. Law § 340(5) ..................................................................70

N.Y. Gen. Bus. Law § 349(h) ..................................................................68

Neb. Rev. Stat. Ann. § 59-1612 ...............................................................60

Neb. Rev. Stat. Ann. § 59-829 .................................................................60

Nev. Rev. Stat. Ann. § 598A.050 .............................................................61

Nev. Rev. Stat. Ann. § 598A.220 .............................................................62

Nev. Rev. Stat. Ann. § 598A.060 .............................................................61

New York Civil Practice Law § 901(b) ....................................................57

Or. Rev. Stat. Ann. § 646.140 ..................................................................75

Or. Rev. Stat. Ann. § 646.715(2) ..............................................................74

R.I. Gen. Laws § 6-36-23 .........................................................................76

S.C. Code Ann. § 39-5-140(a) ..................................................................76

S.C. Code Ann. § 39-5-150 ......................................................................78

S.D. Codified Laws § 37-1-3.1 .................................................................79

S.D. Codified Laws § 37-1-14.4 ...............................................................80

S.D. Codified Laws § 37-1-22 ..................................................................78

Tenn. Code Ann. § 28-3-105 ....................................................................82

Utah Code Ann. § 68-3-3 ..........................................................................84

Utah Code Ann. § 76-10-3109 ..................................................................84

Utah Code Ann. § 76-10-3118 ..................................................................82

Utah Code Ann. § 7610-92 .......................................................................84

xxx

12 Vt. Stat. Ann. § 511 .................................................................................................85

W. Va. Code Ann. § 47-18-11 .......................................................................................87

W. Va. Code Ann. § 47-18-16 .......................................................................................85

Wisc. Stat. Ann. § 133.18(2)..........................................................................................88

**Other Authorities**

N.Y. C.P.L.R. § 214(2) ..................................................................................................70

U.S. Const. art. I, § 8.....................................................................................................13

U.S. Const. art III ...........................................................................................2, 10, 11, 12

Rstmt. (First) of Restitution § 107(1) (1937)................................................................25

Rule 9(b) .........................................................................................................2, 29, 33

**<u>INDEX OF EXHIBITS</u>**

| | |
|---|---|
| **EXHIBIT A** | Summary of Defendants' Arguments For Dismissal of IPPs' (1) Individual State Law Antitrust Claims; (2) Individual State Law Consumer Protection Claims; and (3) Individual State Law Unjust Enrichment Claims |
| **EXHIBIT B** | Appendix of Authority in Support of Defendants' Argument that (1) IPPs Lack Antitrust Standing to Assert State Law Antitrust Claims; and (2) ADs' Antitrust Claim Is Barred Under Illinois Law |
| **EXHIBIT C** | Appendix of Authority in Support of Defendants' Argument that IPPs' Allegations Fail to Meet Certain State Law Antitrust Laws' *Intra*state Nexus Requirements |
| **EXHIBIT D** | Appendix of Authority in Support of Defendants' Argument that (1) IPPs Fail to Allege a Sufficient *Intra*state Nexus as the Consumer Protection Laws of Four States Require; (2) ADs' and EPs' Consumer Protection Claims Are Not Actionable Under the Laws of Three States and the District of Columbia; (3) ADs' Arkansas Consumer Protection Claim Fails For Remoteness; (4) IPPs' Consumer Protection Claims Fail Under the Laws of Two States Due to IPPs' Failure to Allege Unconscionable Conduct; and (5) IPPs' New York Consumer Protection Claims Fail Due to IPPs' Failure to Allege a Deceptive Act Towards Consumers or a Deceptive Transaction Occurring in New York |
| **EXHIBIT E** | Appendix of Authority in Support of Defendants' Argument that IPPs Fail to Satisfy the Requirements for Pleading Unjust Enrichment under the Laws of Thirteen States and the District of Columbia |
| **EXHIBIT F** | Appendix of Authority in Support of Defendants' Argument that IPPs' Unjust Enrichment Claims Fail in the Fourteen States that Require a Direct Benefit Conferred by IPPs |
| **EXHIBIT G** | Appendix of Authority in Support of Defendants' Argument that IPPs' Unjust Enrichment Claims Fail in the District of Columbia and the Twenty-One States that Recognize the Benefit of the Bargain Limitation |
| **EXHIBIT H** | Appendix of Authority in Support of Defendants' Argument that IPPs' Unjust Enrichment Claims Fail in the Eleven States Where Retention of a Benefit is not Unjust Where the Defendant Has Provided Consideration |
| **EXHIBIT I** | Appendix of Authority in Support of Defendants' Argument that IPPs' Claims Are Barred in Whole or In Part by State Statutes of Limitations |
| **EXHIBIT J-1 – J-60** | Copies of Unpublished Authorities Cited in Memorandum in Support of Defendants' Motion to Dismiss |
| **EXHIBIT K-1 – K-4** | Copies of Court Documents Referenced in Memorandum in Support of Defendants' Motion to Dismiss |

## INTRODUCTION

In this case, two types of indirect purchasers of Automotive Bearings (automobile dealers and end payors) each seek to bring a massive class action lawsuit based on an empty shell of a complaint that cannot survive a motion to dismiss.  While Plaintiffs claim in grandiose fashion that there was a sweeping nine-year conspiracy to fix the prices of *all* Automotive Bearings sold by *all* Defendants to *all* customers in the United States (*see* AD CCC ¶ 3; EP CCAC ¶ 2), they offer no factual allegations that would come close to plausibly supporting such a conclusion.

Among many fatal pleading defects, Plaintiffs do not come close to pleading the specific facts that this Court previously found sufficient in the *Wire Harnesses* case.  In this case, unlike *Wire Harnesses*, Plaintiffs fail to allege even the most basic facts concerning their purchases, the claimed price-fixing conspiracy, the role of any of the eleven Defendants in that conspiracy, or the impact of that conspiracy on Plaintiffs personally.  Plaintiffs instead rely primarily on vague references to ongoing government investigations of possible price fixing of certain limited types of Bearings sold to particular automobile manufacturers (*see* AD CCC ¶¶ 181-212; EP CCAC ¶¶ 124-158), while pleading no facts to indicate that they even bought Automotive Bearings that were the subject of the investigations.  Plea agreements entered into by only two of the eleven Defendants cannot save the Complaints given that, amongst other reasons, these deals reflect on their face limited conduct that was confined to Japanese OEMs and identify only Toyota.  Neither these plea deals nor any factual allegations in Plaintiffs' Complaints support the wholly conclusory allegation that the eleven named Defendants participated in a broad conspiracy to fix the price of all Automotive Bearings that Plaintiffs indirectly purchased.  The Complaints here thus fundamentally differ from those sustained in *Wire Harnesses*, where the allegations included specific facts that supported the scope of the conspiracy that was alleged.

1

Further, because they are missing critical factual allegations, the Plaintiffs' claims of injury are legally insufficient for purposes of both Article III of the Constitution and the federal antitrust laws.  Plaintiffs' failure to allege any facts regarding the who, what, when, where and how of their alleged purchases of Automotive Bearings make it impossible for this Court to find that they have met their burden to prove that they have standing to bring these claims.  Those Plaintiffs whose basis for claiming injury is that they purchased a car containing Automotive Bearings, which is one of tens of thousands of components that are found in a car, also lack standing for additional reasons, as they make no factual allegations supporting the assertion that they actually bought an allegedly affected part or even a car by an allegedly affected auto manufacturer.  Likewise, they fail to allege any facts regarding how any overcharge allegedly resulting from the purported price fixing of Automotive Bearings was passed through the (lengthy) supply chain to them.  The Complaints should be dismissed for lack of standing because these and other deficiencies in Plaintiffs' allegations make it impossible to find that Plaintiffs suffered any injury traceable to Defendants' alleged anticompetitive conduct.

Plaintiffs have also pleaded themselves out of, or failed to allege essential elements of, causes of action under most of the state laws they invoke.  (*See* Exhibits A-I.)  These claims are also subject to statutes of limitations ranging from two years to six years, and any damages that Plaintiffs seek to recover prior to the applicable statute of limitations period in each state are not recoverable.  Plaintiffs' attempt to get around this bar by claiming fraudulent concealment of the relevant facts cannot succeed in light of their failure to plead the elements of that claim under applicable state laws with the particularity required by Rule 9(b).

Finally, Plaintiffs' claim for federal injunctive relief must be rejected, as Plaintiffs have not pleaded any facts to support a threat of future injury or of a continuing conspiracy.

2

## <u>ARGUMENT</u>

I.    **IPPS HAVE FAILED TO ALLEGE FACTS TO SUPPORT THEIR CLAIM THAT A UNIVERSAL CONSPIRACY BY ALL DEFENDANTS AFFECTED ALL AUTOMOTIVE BEARINGS SOLD IN THE UNITED STATES OVER A NINE-YEAR PERIOD**

A complaint must at the very least "include[] allegations that inform Collective Defendants what wrongdoing they are alleged to have committed and . . . enable Collective Defendants to respond [to them]." *In re Automotive Parts Antitrust Litig.*, No. 2:12–cv–00101, 2013 WL 2456584, at *5 (E.D. Mich. June 6, 2013) (Battani, J.) ("*Wire Harnesses I*") (Exh. J-1). A complaint that merely consists of "labels and conclusions, and a formulaic recitation of the elements of a cause of action" cannot survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *In re Automotive Parts Antitrust Litig.*, No. 2:12–cv–00101, 2013 WL 2456612, at *6 (E.D. Mich. June 6, 2013) (Battani, J.) ("*Wire Harnesses II*") (Exh. J-2). Nor is it sufficient to make "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a complaint must contain enough factual content not only to show that its claims are "conceivable" but also "plausible." *Id.* at 680. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678.

Courts are required to perform a thorough analysis of antitrust conspiracy claims "*before* parties are forced to engage in protracted litigation and bear excessive discovery costs." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 909 (6th Cir. 2009) (citing *Twombly*, 550 U.S. at 558-59) (emphasis in original) ("*Travel Agent II*"). While conspiracy allegations need not be pleaded in detail (*Wire Harnesses I*, 2013 WL 2456584, at *4), there must be *some* facts to identify the relevant "who, what, where, when, how or why." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008). Likewise, the IPPs

3

may not rely on "[g]eneric pleading, alleging misconduct against defendants without specifics as to the role each played in the alleged conspiracy." *Id.* at 436; *see also Travel Agent II*, 583 F.3d at 905; *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09–md–02042, 2012 WL 2114997, at *8 (E.D. Mich. June 11, 2012) (plaintiffs cannot "reference 'Defendants' without specific factual allegations as to" each defendant) ("*Compressors*") (Exh. J-33); *Michigan Division-Monument Builders v. Michigan Cemetery Ass'n*, 458 F. Supp. 2d 474, 485 (E.D. Mich. 2006) (dismissing complaint that "contain[ed] a 'laundry list' of general allegations, without any references to conduct by any specific … defendant") ("*Monument Builders*").

The IPPs cannot meet their burden merely by referring to ongoing government investigations of unclear scope and relevance, and must instead supply additional specific factual allegations to bolster their claims. *See* DPP CAC ¶¶ 128-32, 134-37, *Wire Harnesses I* (No. 2:12–cv–00101); *see also Compressors*, 2012 WL 2114997, at *8; *Superior Offshore Int'l, Inc. v. Bristow Group, Inc.*, 738 F. Supp. 2d 505, 517 (D. Del. 2010); *Wire Harnesses I*, 2013 WL 2456584, at *3. In testing the sufficiency of a complaint, courts do not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and should "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680; *see also Wire Harnesses II*, 2013 WL 2456612, at *6; *Superior Offshore*, 738 F. Supp. 2d at 512 (conclusory assertions that defendants "agreed" or "conspired" "are not entitled to a presumption of truth on a motion to dismiss").

The IPPs' Complaints in this action do not come close to providing the level of factual allegations deemed sufficient in the *Wire Harnesses* actions. The *Wire Harnesses* plaintiffs alleged *facts* from eleven plea agreements entered into by individuals and companies representing 90% of the wire harnesses market. The *Wire Harnesses* plaintiffs also pleaded *facts*

4

regarding multiple admissions made by named individuals relating to collusion allegedly affecting the U.S. during specified periods of time and at specified locations, and who admitted to certain "methods of communications used by Defendants and meetings between competitors," along with amounts of purportedly non-competitive bids. *See Wire Harnesses I*, 2013 WL 2456584, at *6-7; CAC ¶¶ 191, 198, 238, *Wire Harnesses II* (No. 2:12–cv–00101); CAC at ¶¶ 176, 212, 213, 215, *Wire Harnesses II* (No. 2:12–cv–00101). Here, IPPs allege no comparable facts that would allow the Court plausibly to infer the existence of a broad, industry-wide conspiracy. The Complaints contain no *facts* concerning the formation, scope, or operation of the alleged conspiracy, the "methods" by which the alleged conspiracy raised prices, or the roles of any one of the eleven named Defendants or their personnel in the alleged conspiracy. IPPs rely instead on nothing more than mere *conclusions* throughout their Complaints, which are insufficient as a matter of law.

The recent plea agreements entered into by two of the eleven Defendants do not alter this conclusion. Those pleas only related to conduct by those two Defendants with respect to certain Japanese OEMs; they do not implicate any Defendants who have not entered pleas and, significantly, contain no factual admissions sufficient to supply the allegations missing from the Complaints to plausibly support the industry-wide conspiracy affecting all types of Automotive Bearings that has been alleged. Instead, the criminal informations accompanying the two plea agreements only assert that JTEKT Corporation and NSK Ltd. conspired with respect to certain sales to unnamed *Japanese* automobile and automobile component manufacturers until "as late as" July 2011, and only mention Toyota as a specific victim. *See* Information ¶ 6, *United States v JTEKT Corp.*, No. 1:13-cr-00104-HJW, ECF No. 2 (S.D. Ohio Sept. 26, 2013) (Exh. K-2); Information ¶ 6, *United States v. NSK Ltd.*, No. 1:13-cr-00103-HJW, ECF No. 2 (S.D. Ohio Sept.

26, 2013) (Exh. K-3).  This undermines, rather than supports, the much broader conspiracy the IPPs have chosen to allege in which *all* eleven Defendants purportedly entered into a conspiracy regarding *each* Automotive Bearing sold to *every* manufacturer of automobiles in the United States, including non-Japanese OEMs and Japanese OEMs other than Toyota.

For example, time and again, IPPs simply assert that unspecified "Defendants" collectively "agreed, combined, and conspired to inflate, fix, raise, maintain, or artificially stabilize prices of Automotive Bearings" (*see*, *e.g.*, AD CCC ¶ 6; EP CCAC ¶ 5); that Defendants collectively "allocate[d] customers and markets for Automotive Bearings in the United States in furtherance of their agreements" (*see*, *e.g.*, AD CCC ¶ 278(b); EP CCAC ¶ 211(b)); and that "Plaintiffs and the members of the Classes paid supracompetitive prices for [Automotive] Bearings, as a result of Defendants' conspiracy" (*see*, *e.g.*, AD CCC ¶ 233; EP CCAC ¶ 183).  These self-serving allegations—repeated by IPPs in generic, rote-like fashion— are not only insufficient under *Twombly*, but also fly in the face of controlling Sixth Circuit precedent requiring the IPPs to identify the role that each Defendant played in the alleged conspiracy.  *See*, *e.g.*, *Travel Agent II*, 583 F.3d at 905 (bare references to "defendants" "represent precisely the type of naked conspiratorial allegations rejected by the Supreme Court in *Twombly*"); *see also Monument Builders*, 458 F. Supp. 2d at 485 ("Plaintiffs cannot escape their burden of alleging that each defendant participated in or agreed to join the conspiracy by using the term 'defendants' to apply to numerous parties without any specific allegations as to any individual … defendant"); *Superior Offshore*, 738 F. Supp. 2d at 512.

IPPs' references to various ongoing government investigations do nothing to cure these pleading defects.  *See*, *e.g.*, *Compressors*, 2012 WL 2114997, at *6 (finding that "government investigations carry *no weight* in pleading an antitrust conspiracy claim") (emphasis added);

6

*Superior Offshore*, 738 F. Supp. 2d at 516-17 (allegation that the DOJ had subpoenaed certain defendants did not bolster plaintiffs' defective claims); *In re Florida Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1316 (S.D. Fla. 2010) (references to foreign and state criminal investigations did not render plaintiffs' claims more plausible) ("*Florida Concrete*"). To the contrary, courts take a very dim view of pleadings that do little more than summarize government investigations and essentially state, "me too." *See*, *e.g., Superior Offshore*, 738 F. Supp. 2d at 517. Further, putting aside the lack of factual context that the IPPs provide about these investigations, the fact that certain Defendants may be under investigation in Europe, South Korea, and Singapore is irrelevant because the IPPs do not even allege that any Defendants have been accused of wrongdoing in those jurisdictions. *Cf. Compressors*, 2012 WL 2114997, at *6; *Superior Offshore*, 738 F. Supp. 2d at 517; *Florida Concrete*, 746 F. Supp. 2d at 1316.

IPPs' conclusory allegations regarding charges filed against certain of the Defendants in Japan, Canada, and Australia fare no better, as there are no allegations about the scope of the conduct charged or how conduct relating to sales in foreign countries affected sales in the United States.[2] Such allegations about alleged foreign law violations are insufficient to support a conspiracy claim relating to the United States. *See Compressors*, 2012 WL 2114997, at *6 (dismissing complaint in spite of alleged foreign investigations and charges with respect to the defendants' conduct); *Florida Concrete*, 746 F. Supp. 2d at 1316 (dismissing complaint where "Plaintiffs d[id] not allege any connection between the international investigations and

---

[2] The proceedings in foreign jurisdictions referred to by the IPPs describe a conspiracy very different from the one the IPPs want to pursue. In Canada, for instance, only the Defendant JTEKT has executed a statement of admissions. That statement only indicates that JTEKT entered into bilateral agreements with one other Defendant, and only concerning certain bids to Toyota that affected certain sales of Automotive Bearings in Canada between 2007 and 2012. (EP CAC ¶ 154; Statement of Admissions ¶¶ 10-15, JTEKT Corp., July 11, 2013. (Exh. K-1).)

2:12-cv-00502-MOB-MKM   Doc # 82   Filed 12/02/13   Pg 46 of 133   Pg ID 575

Defendants' conduct alleged in the DSCAC."); *see also In re Travel Agent Commission Antitrust Litig.*, No. 1:03 CV 30000, 2007 WL 3171675, at *11-12 (N.D. Ohio Oct. 29, 2007) (prior and ongoing government investigations irrelevant to sufficiency of plaintiffs' allegations) ("*Travel Agent I*") (Exh. J-34); *In re Bath and Kitchen Fixtures Antitrust Litig.*, No. 05-cv-00510 MAM, 2006 WL 2038605, at *2 (E.D. Penn. 2006) (Exh. J-35) (holding that references to European and DOJ investigations were insufficient); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 52 (2d Cir. 2007) ("Allegations of anticompetitive wrongdoing in Europe—absent any evidence of linkage between such foreign conduct and conduct here—is merely to suggest (in defendants' words) that 'if it happened there, it could have happened here'").[3]

In a final attempt to bolster their conspiracy claims, the IPPs allege that the Defendants were presented with various "opportunities to conspire." (*See, e.g.*, AD CCC ¶¶ 175-180; ED CCAC ¶¶ 159-166.) Unlike the plaintiffs in *Wire Harnesses*, however, the IPPs do not name any individuals who supposedly took part in these opportunities, nor do they specify the times or locations of such meetings. Thus, they do not provide the necessary "who, what, where, when, how or why." *See Total Benefits*, 552 F.3d at 436-37; *Travel Agent II*, 583 F.3d at 905; *Monument Builders*, 458 F. Supp. 2d at 485. Moreover, "a mere opportunity to conspire does not, standing alone, plausibly suggest an illegal agreement." *Travel Agent*, 583 F.3d at 911

---

[3] For the same reason, IPPs' allegations regarding alleged past Bearings industry conspiracies or separate alleged conspiracies involving completely different products and defendants in the automotive parts industry (*see* AD CCC ¶¶ 192-94, 213; EP CCAC ¶ 168) are completely irrelevant. *See Travel Agent I*, 2007 WL 3171675, at *11-12 (collecting authority); *see also Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1317-18 (3d Cir. 2003) (noting in the summary judgment context that the "law generally disfavors use of such 'historical' information" and that plaintiffs "had failed to direct it to any precedent for holding such to be indicative of a present antitrust violation") (internal citations and quotation marks omitted).

8

(rejecting the sufficiency of plaintiffs' allegations that the defendants had numerous "opportunities" to conspire).[4]

Defendants are not asking the Court to "to nitpick the [Complaints] line by line, paragraph by paragraph." *Cf. Wire Harnesses I*, 2013 WL 2456584, at *6. Defendants urge the Court to find that these Complaints, taken as a whole, simply do not meet the Court's articulation of the pleading standards set forth in *Wire Harnesses*. *See Twombly*, 550 U.S. at 570; *Wire Harnesses I,* 2013 WL 2456584, at *3.[5] Viewing all of the allegations of the Complaints together, and giving the IPPs the benefit of all favorable inferences, the factual allegations are simply insufficient to support the conspiracy that IPPs have alleged.

## II.   IPPS HAVE FAILED TO ALLEGE FACTS SUFFICIENT TO ESTABLISH CONSTITUTIONAL STANDING

To satisfy constitutional standing requirements, the IPPs must plead facts sufficient to establish that they have suffered an injury-in-fact as a result of the alleged conspiracy. *Allen v. Wright*, 468 U.S. 737, 751 (1984) (Plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief"). The

---

[4] *See also Philip Morris*, 346 F.3d at 1319 (same); *Florida Concrete*, 746 F. Supp. 2d at 1316 (same); *Superior Offshore*, 738 F. Supp. 2d at 516 (same); *In re Nat'l Ass'n of Music Merchants, Musical Instruments & Equipment Antitrust Litig.*, MDL No. 2121, 2012 WL 3637291, at *2, *5 (S.D. Cal. Aug. 20, 2012) (Exh. J-36) ("Simply alleging that Defendants on a number of occasions had the opportunity to agree, is insufficient," and "it is commonplace for industry leaders to attend the same trade shows, open meetings, and the like. The opportunity to meet and conspire that such meetings would give rise to isn't suspicious.").

[5] For example, IPPs make the conclusory allegation of "continuing agreement" at some unidentified point between 2004 and the present. (AD CCC ¶ 261; EP CCAC ¶ 199.) ("[a]t least as early as January 2004, and continuing until at least the filing of this Complaint, the exact dates being unknown to Plaintiffs, Defendants and their co-conspirators entered into a continuing agreement . . . ."). The Supreme Court rejected an almost identical formulation in *Twombly*, holding that "a defendant seeking to respond to plaintiffs' conclusory allegations in the § 1 context would have little idea where to begin." *Twombly*, 550 U.S. at 565 n.10; *see also Total Benefits*, 552 F.3d at 436 ("nowhere did Plaintiffs allege when Defendants joined the Anthem conspiracy, where or how this was accomplished, and by whom or for what purpose").

9

alleged injury must be both "concrete and particularized" and "actual or imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations omitted). The Complaints fall well short of satisfying these standards.

### A.      IPPs Do Not Sufficiently Allege That They Purchased Affected Products

To establish injury-in-fact, the IPPs must allege facts showing, as a threshold matter, that they purchased a product impacted by the alleged conspiracy. *See, e.g.*, *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972) (holding that the 'injury in fact' test "requires that the party seeking review be himself among the injured"). The IPPs fail to meet this standard because they do not allege the necessary facts to define either the scope or impact of any alleged conspiracy. The ADs merely allege generally that they purchased Automotive Bearings and vehicles containing Automotive Bearings from unspecified Defendants during the class period without alleging any facts concerning such purchases. (AD CCC ¶¶ 25-110.) The EPs' allegations provide even less detail: they allege only that they purchased "Automotive Bearings indirectly from one or more Defendants," without even identifying the auto manufacturer from which they allegedly made such purchases. (EP CCAC ¶¶ 21-68.)[6] The IPPs' claims thus amount to the bare assertion that each Plaintiff purchased some vehicle, which by necessity contained Automotive Bearings, or some unidentified type of Replacement Automotive Bearing, which Bearings may or may not have been manufactured by one of the Defendants. These allegations leave the Court with no basis on which to conclude that any IPP was injured by any alleged conspiracy and thus are insufficient to establish Article III standing.

---

[6] Nor do EPs allege any facts regarding whether or how they have suffered injury due to their purchase of a vehicle containing Automotive Bearings or their purchase of Replacement Automotive Bearings.

**B.      IPPs Have Not Sufficiently Alleged a Causal Connection Between Any Claimed Injury and the Alleged Conspiracy**

The IPPs also fail to establish Article III standing because they do not plead sufficient facts to demonstrate that the "threatened loss or damage proximately result[ed] from the antitrust violation."  *In re N.J. Title Ins. Litig.*, Civil Action No. 08-1425, 2010 WL 2710570, at *5 (D.N.J. July 6, 2010) (Exh. J-37).   The IPPs do not sufficiently plead that (1) all direct purchasers (who acted as middle-men between Defendants and the IPPs) were subject to overcharges from the conspiracy, and (2) those direct purchasers (and subsequent intermediaries) then passed on any alleged overcharge at each level of the distribution chain until it caused injury to the named IPPs.  While the IPPs assert this in conclusory fashion (*see* AD CCC ¶¶ 232-235; EP CCAC ¶ 180), they do not allege any facts about how or why the alleged overcharge was passed through to them.  Recent authority has explicitly rejected "the proposition that to plead antitrust injury, all a claimant must allege is that he paid for a product at a supra-competitive price."  *Nat'l ATM Council, Inc. v. Visa Inc.*, 922 F. Supp. 2d 73, 83 (D.D.C. 2013).  Such allegations are critical here given that each IPP is not only numerous steps removed from the Defendants in the supply chain, but also buys or leases, for a single price, a vehicle comprised of tens of thousands of parts—each of which is subject to various outside pricing influences. *See In re Refrigerant Compressors Antitrust Litig.*, No. 2:09–md–02042, 2013 WL 1431756, at *14 (E.D. Mich. Apr. 9, 2013) ("*Compressors II*") (noting that finished products containing price-fixed component "contain numerous other components, all of which collectively determine the final price paid").  The IPPs' claims must therefore be dismissed for lack of Article III standing.

**C.      IPPs Lack Article III Standing to Invoke the Laws of States in Which No Plaintiff Allegedly Resides or Suffered Injury**

The IPPs lack standing to bring claims under the laws of states in which none of them resides or allegedly suffered injury.  *See, e.g.*, *In re Refrigerant Compressors Antitrust*

11

*Litigation*, 2012 WL 2917365, at *4-5 (E.D. Mich. July 17, 2012) ("*Compressors I*") (Exh. J-3) (granting motion to dismiss non-resident state law claims after rejecting contention that Court should defer the issue until later and "follow[ing] what it finds to be the better-reasoned opinions on this issue which recognize and refused to abandon the fundamental prudential standing requirements of Article III").  No named EP is alleged to reside or to have suffered injury in the District of Columbia, and no named AD is alleged to reside or to have suffered injury in either Hawaii or North Dakota; nor do the EPs or ADs allege that any relevant purchases occurred in these locations.  Accordingly, EPs' claims under District of Columbia law and ADs' claims under the laws of Hawaii and North Dakota must be dismissed.[7]  *See, e.g.*, *Compressors I*, 2012 WL 2917365, at *7 (dismissing claims under various states' laws because "no named [indirect purchaser] Plaintiff resides in or was injured in those states"); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657-59 (E.D. Mich. 2011) ("*Packaged Ice*") (same); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 924 (N.D. Ill. 2009) ("*In re Potash*") (dismissing state law claims in every state in which no named plaintiff resided), *vacated and remanded on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 657 F.3d 650 (7th Cir. 2011).[8]

---

[7] The fact that the IPPs are seeking class certification does not alter this conclusion.  "[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n. 20 (1976); *see also Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000) ("[E]ach claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim."); *Smith v. Lawyers Title Ins. Corp.*, Civil Case No. 07-12124, 2009 WL 514210, at *3 (E.D. Mich. Mar. 2, 2009) (Exh. J-29).

[8] *Accord In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1026-27 (N.D.Cal. 2007) ("*GPU I*"); *In re Flonase Antitrust Litig.*, 610 F. Supp. 2d 409, 418-19 (E.D. Pa. 2009) ("*Flonase I*"); *Smith*, 2009 WL 514210, at *3; *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 157 (E.D. Pa. 2009) ("*Wellbutrin*"); *In re Ditropan XL*, 529 F. Supp. 2d 1098, 1007 (N.D. Cal. 2007).

III.   **DUE PROCESS REQUIRES DISMISSAL OF THE END PAYORS' STATE LAW CLAIMS BECAUSE NO NAMED PLAINTIFF HAS ALLEGED WHERE ANY PURPORTED INJURY OCCURRED**

For a state's law to apply to a claim, the state "'must have a significant contact or significant aggregation of contacts' to the claims asserted by each member of the Plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [a state's] law is not arbitrary or unfair." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818-19 (1985) (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981) (plurality opinion)). A state "may not abrogate the rights of parties beyond its borders having no relation to anything done or to be done within them." *Shutts*, 472 U.S. at 822 (quoting *Home Ins. Co. v. Dick*, 281 U.S. 408, 410 (1930)).[9] "[I]n order to invoke the various state laws at issue, plaintiffs must be able to allege that 'the occurrence or transaction giving rise to the litigation'—plaintiffs' purchases of allegedly price-fixed goods—occurred in the various states." *In re TFT-LCD* (*Flat Panel*) *Antitrust Litig.*, Nos. M 07–1827 SI, C 09–4997 SI, 2010 WL 2609434, at *3 (N.D. Cal. June 28, 2010) ("*LCD III*") (Exh. J-38); *GPU I*, 527 F. Supp. 2d at 1028 (refusing to allow claims under California law arising from purchases made in other states).

EPs do not allege that they purchased any of the allegedly supra-competitively priced Automotive Bearings in any of the states whose laws they invoke, or even that any acts in furtherance of the conspiracy occurred in any of those states. Thus, there are no allegations of any relevant contacts in the states at issue. Both the purchases and the conspiratorial acts could have occurred in states in which indirect purchasers may not recover for antitrust injuries. The residency of the named Plaintiffs in the various states (EP CCAC ¶¶ 21-68), which is not alleged

---

[9] The Commerce Clause, for similar reasons, also prohibits the wholly extraterritorial application of state law. *See Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336-37 (1989).

13

to coincide with the Class Period, is insufficient to justify the application of those states' laws.

*See Allstate*, 449 U.S. at 310-11 (finding that that residency in a state, particularly residency only

after the occurrence, is insufficient to justify application of that state's law).  Accordingly, EPs'

state law claims must be dismissed.

## IV.    IPPS' ALLEGATIONS FALL FAR SHORT OF ESTABLISHING ANTITRUST STANDING UNDER VARIOUS STATE ANTITRUST LAWS

The doctrine of antitrust standing allows only certain claimants to seek redress for an

alleged antitrust injury.  *See Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of*

*Carpenters*, 459 U.S. 519, 535 n. 31 (1983) ("*AGC*") ("Harm to the antitrust plaintiff is sufficient

to satisfy the constitutional standing requirement of injury in fact, but the court must make a

further determination whether the plaintiff is a proper party to bring a private antitrust action.");

*Ross v. Bank of Am., N.A.*, 524 F.3d 217, 222, 224-25 (2d Cir. 2008) ("Antitrust standing

demands a much more detailed and focused inquiry into a plaintiff's antitrust claims than

constitutional standing."); *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007) (en banc)

("[A]ntitrust standing is a threshold, pleading-stage inquiry and when a complaint by its terms

fails to establish this requirement we must dismiss it as a matter of law . . . .").[10]

The *Wire Harnesses II* decision recognized that *AGC* must factor into the standing

analysis in reviewing the sufficiency of state law antitrust claims.  2013 WL 2456612, at *14.  In

*AGC*, the Supreme Court articulated five factors that courts must weigh to determine whether a

plaintiff is a proper party: (1) the nature of the plaintiff's alleged injury, including the status of

the plaintiff as a consumer or competitor in the relevant market; (2) the directness of the claimed

---

[10] The plaintiff bears the burden of establishing standing at each stage of the litigation.  *See Lujan,* 497 U.S. at 883-89; *School Dist. Of City of Pontiac v. Secretary of U.S. Dept. of Educ.*, 584 F.3d 253, 260 (6th Cir. 2009).

injury; (3) whether the claimed damages are speculative; (4) the complexity of apportioning damages; and (5) the potential for duplicative recovery and whether more direct victims of the alleged antitrust violation exist.   459 U.S. at 536-45.[11]   With respect to IPPs who allegedly acquired Automotive Bearings solely by purchasing or leasing a vehicle in which Automotive Bearings were one of more than tens of thousands of components ("Component IPPs"), all of the *AGC* factors strongly support dismissal; with respect to IPPs who allegedly purchased stand-alone Replacement Automotive Bearings ("Replacement IPPs"), the *AGC* factors on balance support dismissal.[12]

_____

[11] *See also Southhaven Land Co. v. Malone & Hyde, Inc.*, 715 F.2d 1079, 1085 (6th Cir. 1983) (citing the "Supreme Court's directive to consider [antitrust standing] on a case by case basis by applying the criteria mandated by *Associated General Contractors*").  The factors identified by the Supreme Court in AGC are not exhaustive.  *See, e.g.*, *Southhaven Land Co.*, 715 F.2d at 1085 ("*McCready* and *Associated General Contractors* exemplify that innumerable elements, including proximity and directness, constitute proper areas of inquiry in identifying a 'person' injured by reason of a violation of the antitrust laws."); *Pinney Dock & Transport Co. v. Penn Cent. Corp.,* 838 F.2d 1445, 1462 (6th Cir. 1988) ("[W]hile the *AGC* checklist is the starting point of antitrust standing analysis, a consideration of earlier cases is relevant to the interpretation of the *AGC* factors.").

[12] As detailed in Section VII *infra*, *AGC* (or a similar analysis) applies to determine standing under each of the 25 state antitrust laws invoked by the IPPs except one (Minnesota).  *D.R. Ward Constr. Co. v. Rohm & Hass Co.*, 470 F. Supp. 2d 485, 496 (E.D. Pa. May 30, 2006) ("[T]o determine whether a diversity plaintiff possesses federal prudential standing to bring a claim under a state antitrust statute, this Court looks to the treatment of standing under the relevant state antitrust statutes."); *see also Compressors II*, 2013 WL 1431756, at *11 (applying *AGC* to dismiss indirect purchaser claims under various states' antitrust laws); *In re Dynamic Random Access Memory Antitrust Litig.*, 516 F. Supp. 2d 1072, 1089-93 (N.D. Cal. 2007) ("*DRAM I*") (same).

A.      **Component IPPs Did Not Participate in the Relevant Market**[13]

The first *AGC* factor—plaintiffs' participation in the relevant market—is a "significant element of the . . . standing inquiry." *Compressors II*, 2013 WL 1431756, at \*11; *Southaven*, 715 F.2d at 1086; *see also In re Dynamic Random Access Memory Antitrust Litig.*, 516 F. Supp. 2d 1072, 1136 (N.D. Cal. 2007) ("The most critical *AGC* factor . . . is antitrust injury," which "require[s] that plaintiffs be participants in the relevant market").  To satisfy this factor, plaintiffs must be "direct participants" in the market allegedly affected by the conspiracy or show that their alleged injury is "inextricably intertwined" with the injury sought to be inflicted on the relevant market.  *Province v. Cleveland Press Publ'g Co.*, 787 F.2d 1047, 1052 (6th Cir. 1986); *see also Re/Max Int'l, Inc., v. Realty One, Inc.*, 173 F.3d 995, 1023 (6th Cir. 1999); *Bodie-Rickett & Assocs. v. Mars, Inc.*, 957 F.2d 287, 291 (6th Cir. 1992).

Plaintiffs like the Component IPPs who buy products in a downstream market that simply incorporate an allegedly price-fixed good are not direct participants in the market for that good.  *See, e.g.*, *DRAM I*, 516 F. Supp. 2d at 1086, 1089-91 ("Plaintiffs who are purchasing products in which DRAM is a component, rather than DRAM itself, are participating in a secondary market that is incidental to the primary price-fixed market (*i.e.,* the market for DRAM module

---

[13] IPPs' failure to plead any facts regarding the purchase of stand-alone Replacement Automotive Bearings leave Defendants and this Court unable to determine whether Replacement IPPs are participants in the relevant market.  If Replacement IPPs purchased stand-alone *replacement* Automotive Bearings from automobile manufacturers that were originally procured via a standard RFQ process, it is possible that Replacement IPPs may be deemed participants in the relevant market.  However, to the extent that Replacement IPPs purchased Automotive Bearings on the aftermarket or via distinct distribution and sales channels, Defendants submit that Replacement IPPs are not participants in the Automotive Bearing market allegedly targeted by Defendants.

themselves)");[14] *In re Potash*, 667 F. Supp. 2d at 939-40 (downstream buyers of products containing potash "failed to show they are participants in the relevant market, and, as a result, [did] not satisf[y] the antitrust injury requirement"). Indeed, while IPPs identify the relevant antitrust market as the "market for Automotive Bearings" (AD CCC ¶23; EP CCAC ¶19), they admit that Component IPPs are only participants in the "vehicle market" (AD CCC ¶235; EP CCAC ¶ 181). The Component IPPs are thus neither consumers nor competitors in the market in which trade was alleged restrained. *AGC* at 538-39.

The Component IPPs' assertion that the markets for Automotive Bearings and cars are "inextricably linked and intertwined because the market for [Automotive] Bearings exists to serve the vehicle market" (AD CCC ¶ 235; EP CCAC ¶ 181) is insufficient as a matter of law. Component IPPs do not (and cannot) allege that Defendants "manipulated or utilized them" to "injure competitors or participants in the [Bearings] market." *See Bodie-Rickett & Assocs.*, 957 F.2d at 291-292 (6th Cir. 1992) (holding that "[a] plaintiff is 'inextricably intertwined' when it is 'manipulated or utilized' by [defendant] as a fulcrum, conduit or market force to injure competitors or participants in the relevant . . . markets'" and finding that plaintiff was not so manipulated) (quoting *Southaven*, 715 F.2d at 1086)); *Compressors II*, 2013 WL 1431756, at *12 (finding allegation that "[c]ompressors exist to be incorporated into end products . . . without which the end products themselves would not function" did not suffice to show that the two markets were "intertwined" for standing purposes). Further, IPPs concede that Bearings have

---

[14] In *DRAM I*, the court held that indirect purchasers of computers or other products containing allegedly price-fixed DRAM chips lacked standing under the *AGC* factors. Plaintiffs' attempts to amend their complaint to overcome this and other pleading deficiencies were unsuccessful. *In re Dynamic Random Access Memory Antitrust Litig.*, 536 F. Supp. 2d 1129, 1136-37 (N.D. Cal. 2008) ("*DRAM II*") (holding that antitrust standing was lacking because the DRAM and finished product markets simply could not be viewed as one and the same under established legal precedent).

alternative uses outside the automotive industry that drive demand (AD CCC ¶ 162; EP CCAC ¶ 107) (indicating that 62% of Bearings are incorporated into other types of machinery); *see also* AD CCC ¶ 235; EP CCAC ¶ 181("Ball bearing manufacturers rely heavily on several key industries to purchase their products.")).

The *Wire Harnesses II* ruling does not alter this conclusion.  In that case, the Court relied on two decisions issued by the Northern District of California—*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1121 (N.D. Cal. 2008) ("*LCD I*") and *In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1098 (N.D.Ca. 2007) ("*GPU II*")—in holding that Component IPPs' allegations favored standing under the first *AGC* factor.  2013 WL 2456612, at *15-16.  However, the allegations made by the Component IPPs in this case fall far short of the allegations deemed sufficient in those decisions and in *Wire Harnesses II*.  For instance, in *GPU II*, the court emphasized plaintiffs' allegations that consumers of the finished products (computers) containing the allegedly affected component parts (graphics cards) were explicitly told that the computers contained a graphics card of a certain type and that a graphics card with certain specifications could be a selling point to a consumer.  *GPU II*, 540 F. Supp. 2d at 1098 (finding that even these allegations ultimately only "slightly favor[ed] standing").[15]  IPPs have made no such allegations here.  Nor could they; consumers of automobiles are not explicitly told (nor would they inquire) what type or brand of Automotive Bearing has been incorporated into automobiles.

_____

[15] The *LCD I* decision cites extensively to *GPU II* in reaching a similar finding.  *See LCD I,* 586 F. Supp. 2d at 1120-24.

18

**B.**     **IPPs' Alleged Injuries are Indirect, Attenuated, and Inherently Speculative**

The second and third *AGC* factors also favor dismissal of IPPs' claims.  First, "vaguely defined links" in an alleged chain of causation from Defendants' conduct to the alleged injury are insufficient to establish the required directness of the claimed injury.  *AGC*, 459 at 540.[16] IPPs themselves cite the multiple manufacturing, distribution, and retail channels that separate their Automotive Bearings and automobile purchases—and thus, their alleged injuries—from Defendants' alleged anticompetitive conduct.  (AD CCC ¶158, ¶232; EP CCAC ¶¶103-106.)  As this Court has acknowledged, federal courts have repeatedly found antitrust standing lacking where, as here, the distribution chain for a component part is complex and the prices paid for that part are affected by numerous market factors.   2013 WL 2456612, at *16 (citing cases).[17] Further, under the third *AGC* factor, IPPs must be able to demonstrate "concrete and measurable evidence of direct damages."  *See Re/max Int'l*, 173 F.3d at 1023.   Here, any such showing

---

[16] Where a "complaint does not, and as a practical matter could not, contain any factual allegations regarding whether or not the parties from whom they purchased their finished products actually passed on any overcharges that they may have paid," then "the causal nexus between the alleged conspiracy" and plaintiffs' alleged injury "is too remote and attenuated to support antitrust standing."   *Compressors II*, 2013 WL 1431756 at *13 ("If the alleged conspiracy caused manufacturers to pay increased prices . . . then the manufacturers would have to actually pass on those overcharges in order for end-payors of finished products to have suffered any injury.").

[17] *See also Compressors II*, 2013 WL 1431756, at *14 (finding alleged injury "too remote and attenuated to support antitrust standing" because product passes through "multiple distribution and retail channels" before reaching plaintiff); *DRAM I*, 516 F. Supp. 2d at 1092 (directness factor not met because products containing DRAM contain many other components, all of which "collectively determine" the final price paid, and no facts were alleged to show that ultimate DRAM cost was "somehow directly traceable and/or distinguishable"); *cf. Lorenzo v. Qualcomm Inc.*, 603 F. Supp. 2d 1291, 1301 (S.D. Cal. 2009) (dismissing indirect purchaser claims for lack of antitrust standing where the alleged anticompetitive conduct affected only a single component in the end-product plaintiffs purchased and plaintiffs' injury would require "trac[ing] through three levels of the supply chain" and "disaggregat[ion] from a multitude of other manufacturing and component factors.").

19

would require tracing the amount of any alleged overcharge through multiple levels of numerous distinct supply chains, from the direct purchase of Automotive Bearings through their sale as stand-alone Replacement Automotive Bearings or their incorporation into automobiles (each often following multiple indirect Automotive Bearings purchases).  The Component IPPs must then further show that any alleged overcharge continued to be passed on through additional indirect purchases until finished automobiles reached the Component IPPs.  This is a task that the Sixth Circuit has found to be highly speculative, if not impossible.  *See Bodie-Rickett*, 957 F.2d at 292 ("[I]ndirect injuries may render damages highly speculative or create situations of complexity that would foreclose an equitable determination and apportionment of damages."); *DRAM I*, 516 F. Supp. 2d at 1092.[18]

*Wire Harnesses II* distinguished wire harnesses from component parts "that mingle with the finished product to the extent that the manufacturers could not be identified."  2013 WL 2456612, at *17.  In contrast to wire harnesses—alleged by the IPPs in *Wire Harnesses II* to comprise the "central nervous system" of an automobile (*see* AD CAC ¶ 130; EP CAC ¶ 124 from *Wire Harnesses I*, No. 2:12–cv–00101, ECF No. 87)—Automotive Bearings are very small parts that account for an extremely minor portion of the cost and composition of an automobile.[19] This distinguishes Automotive Bearings from the products at issue in *Wire Harnesses II*, as well as *LCD I, In re Flash Memory* and *GPU II*, the cases relied on by this Court in finding that the

---

[18] In *AGC*, the Supreme Court identified two indicators of unduly speculative harm: (1) an indirect causal connection between the claimed injury and the anticompetitive conduct; and (2) the existence of many independent factors other than the claimed overcharge that could have impacted the prices plaintiffs paid.  459 U.S. at 542.  Both indicators are present here.

[19] *See* AD CCAC ¶ 149; EP CCAC ¶ 102; *cf.* AD CAC ¶ 159; EP CAC ¶ 157 from *Wire Harnesses I*, No. 2:12–cv–00101, ECF Nos. 85, 86, 87 ("OEMs design the features of their vehicles so that the Automotive Wire Harness System they purchase for a vehicle is then integrated with the electronics, mechanics, thermal distribution and other features of the particular vehicle model.").

*Wire Harnesses II* plaintiffs had pleaded allegations sufficient for purposes of the second and third *AGC* factors.  Those decisions emphasize plaintiffs' allegations regarding the significant cost and short distribution chains of the products at issue.  For instance, the *In re Flash Memory Antitrust Litigation* court held that plaintiffs sufficiently pleaded facts to satisfy the *AGC* factors where plaintiffs alleged that the component part at issue was a "central component of finished products" and the cost "ma[de] up an overwhelming majority of the cost of [the finished products] and a substantial portion of the [finished products] in which [the component product] is packaged to be sold as a component."  643 F. Supp. 2d 1133, 1154-55 (N.D. Cal. 2009) ("*In re Flash Memory*").[20]  No such allegations have been made, or could be made, here.  Instead, the IPPs weakly assert that "Bearings comprise *a not insignificant* portion of the cost of a vehicle" (AD CCC ¶242) (emphasis added), and, as noted above, themselves acknowledge the lengthy and complex distribution chain for Automotive Bearings (AD CCC ¶158, ¶232; EP CCAC ¶¶103-106).  The IPPs do not allege a single fact to support their conclusory assertion that the cost of Automotive Bearings is a "not insignificant" portion, or otherwise make any allegations clarifying what "not insignificant" really means.  This was likely no oversight.  The IPPs are no doubt well aware that if they included actual numbers comparing the cost of Automotive Bearings to the overall cost of an automobile, it would negate even their weak and empty assertion that Automotive Bearings are a "not insignificant" portion of that cost.

---

[20] Similarly, the *LCD I* court deemed the *AGC* factors satisfied where the plaintiffs alleged that "LCD panels make up 60-70% of the cost of an LCD television or computer monitor," that "the distribution chain for LCD panels is short," and that "a large percentage of LCD products were sold by the first purchaser of LCD panels…directly to [the indirect purchaser] class members." *LCD I*, 586 F. Supp. 2d at 1124.  *Cf. In re Magnesium Oxide,* 2011 WL 5008090, at *7 (stating with regard to the *AGC* factors that "the price of [component products] would have a minimal foreseeable effect on the price of products containing trace amounts of them, but a significant foreseeable effect on the price of products in which they are major ingredients").

### C.   IPPs' Claims Would Require an Unreasonably Complex Apportionment of Damages and Are Potentially Duplicative

The same difficulties plague the IPPs' claims under the fourth *AGC* factor, the complexity of apportioning damages. "[T]he task of disentangling overlapping damages claims is not lightly to be imposed upon potential antitrust litigants, or upon the judicial system." 459 U.S. at 545, n.51. In this case, the Court would not only have to determine the specific price increase of each Automotive Bearing that resulted from the alleged price-fixing, but also identify the amount of this overcharge that was actually passed on to each indirect purchaser through multiple levels of distribution. IPPs' naked assertion that they will be able to do so—without making any specific allegations regarding the cost of Automotive Bearings or the amount of any overcharge that may have resulted from the alleged conspiracy—is patently insufficient, particularly with regard to the Component IPPs, given the relatively low cost of Bearings as automotive components. The ultimate prices the Component IPPs paid for their vehicles were affected by countless factors having nothing to with any alleged overcharge an OEM may have paid for Automotive Bearings, which are one of tens of thousands of parts in those vehicles—and an extremely insignificant one at that—making the task of showing the amount of any purported overcharge extremely difficult at best. *See, e.g.*, *Compressors II*, 2013 WL 1431756, at *14; *see also* Section II.B., *supra*.

Finally, the risk of duplicative recovery—the fifth *AGC* factor—also supports finding that the IPPs lack standing. The Bearings cases involve three different groups of plaintiffs seeking overlapping damages for the same conduct. "The existence of an identifiable class of persons who would have the necessary incentives to vindicate the public interest by pursuing [an] antitrust claim" diminishes the justification for allowing a more remote party to enforce the antitrust laws. *In re Potash*, 667 F. Supp. 2d at 941. As this Court has recognized, when

22

"plaintiffs have only suffered an indirect injury as a result of the alleged antitrust violations, the danger of duplicative recovery is highly relevant." *Compressors II*, 2013 WL 1431756, at *14. The specific allegations regarding cost and traceability made by indirect purchaser plaintiffs in *In re Flash Memory, LCD I,* and *GPU II*—each of which emphasized that the risk of duplicative recovery is less where alleged overcharges are distinct and traceable—distinguish those cases from the case at hand.[21]

## V.    IPPS HAVE FAILED TO ADEQUATELY PLEAD THEIR STATE LAW UNJUST ENRICHMENT CLAIMS

### A.    IPPs Do Not Identify the Unjust Enrichment Laws of Any Particular State

IPPs' unjust enrichment claims fail, first, because they do not identify the laws of any particular state.  "[F]ailure to identify the unjust enrichment laws of any particular jurisdiction subjects the causes of action to dismissal.  There is no federal common law of unjust enrichment, and courts have recognized that a federal remedy would be contrary to the Supreme Court's holding in *Illinois Brick*."  *Wire Harnesses II*, 2013 WL 2456612, at *31 (dismissing indirect purchasers' unjust enrichment claims); *see also Packaged Ice*, 779 F. Supp. 2d at 667 (dismissing unjust enrichment claims where plaintiffs "fail[ed] to identify any specific state unjust enrichment law under which the IP Plaintiffs purport to proceed"); *Compressors II*, 2013

---

[21] Further, Defendants respectfully disagree with the conclusion in *Wire Harnesses II* that "[t]he risk of duplicative recovery analysis is impacted by the fact that state statutes authorize indirect purchasers to bring these claims," leading it to "declin[e] to undermine what the state legislatures have condoned."  *Wire Harnesses II*, 2013 WL 2456612, at *18.  The fact that some states have chosen to enact "*Illinois Brick* repealer statutes" does not alter the antitrust standing inquiry; indeed, the *Illinois Brick* repealer statutes of several states contain clauses explicitly authorizing courts to do what is necessary to avoid duplicative liability, and many states have explicitly acknowledged the applicability of the *AGC* factors. *See, e.g.*, *Int'l Bhd. Of Teamsters*, 196 F.3d 818, 828 (7th Cir. 1999); *In re Intel Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 408-09 (D. Del. 2007); *DRAM I*,  516 F. Supp. 2d at 1088-89; *Orr v. Beamon*, 77 F. Supp. 2d 1208, 1211 (D. Kan. 1999).

WL 1431756, at *24.  The EPs here have done nothing to correct for the deficiencies noted by the Court in *Wire Harnesses II*.  There is thus no basis for a different outcome here.

The ADs' catch-all allegation that they are bringing their unjust enrichment claims under the laws of "all states listed in the Second and Third Claims, *supra*," plus the laws of "Missouri, Massachusetts and Illinois" (AD CCC ¶ 321), is insufficient.  *See, e.g.*, *Wellbutrin*, 260 F.R.D. at 167 ("[C]obbling together the elements of a claim of unjust enrichment from the laws of the fifty states is no different from applying federal common law.").

### B.     IPPs' Unjust Enrichment Claims Also Fail Because IPPs Do Not Satisfy State Law Pleading Requirements

As described in detail in Section VII *infra*, the IPPs' unjust enrichment claims also fail under the various state laws under which they are brought for numerous reasons.

### 1.     IPPs Do Not Plead Sufficient Factual Allegations

The IPPs' barebones allegations that "Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits"; that "Defendants have benefited from their unlawful acts"; and that "it would be inequitable for Defendants to be permitted to retain any of the" benefit (AD CCC ¶¶ 322-323; EP CCAC ¶¶ 256-257) are deficient as a matter of law.  Neither the ADs nor the EPs plead the specific elements of any state's unjust enrichment law or any factual allegations to support recovery under those laws.  Although, as detailed below, *see infra* Section VII, "[s]tate law requirements under unjust enrichment law vary widely," *Compressors II*, 2013 WL 1431756, at *24, IPPs include no such state-specific pleading.  *Twombly* and *Iqbal* make clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[.]"  *Iqbal*, 556 U.S. at 678.  This applies with equal force to the IPPs' unjust enrichment claims here.  *See Eivaz v. Edwards*, No. 12-C-910, 2013 WL 989843, at *2–3 (E.D. Wis. Mar. 13, 2013) (Exh. J-39)

(dismissing unjust enrichment claim that was based on allegations that were conclusory and amounted to a formulaic recitation of the elements of the claim); *Packaged Ice*, 779 F. Supp. 2d at 667–68; *Compressors II*, 2013 WL 1431756, at *24.

### 2. IPPs Do Not Satisfy the Direct Benefit Requirement of Certain States

IPPs cannot proceed with an unjust enrichment claim under the laws of Arizona, Florida, Iowa, Kansas, Maine, Michigan, Minnesota, New York, North Carolina, North Dakota, Rhode Island, South Carolina, Utah, or D.C. (collectively, the "Direct Benefit States") in light of the "direct" benefit pleading requirement imposed by these laws. *See, e.g.*, *In re Potash*, 667 F. Supp. 2d at 948; *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2010 WL 1416259, at *2–3 (N.D. Ill. Apr. 1, 2010) ("*Aftermarket Filters*") (Exh. J-23). In these states, a plaintiff asserting an unjust enrichment claim must allege that the plaintiff conferred some "direct" advantage on the defendants. The IPPs, however, do not allege any direct contact with Defendants. Indeed, the EPs admit they "had no direct contact or interaction with any of the Defendants in this case[.]" (EP CCAC ¶ 186.) All the IPPs offer is the legally insufficient conclusory allegation that "Defendants have benefited[.]" (AD CCC ¶ 323; EP CCAC ¶ 257.)

### 3. IPPs Do Not Satisfy the Benefit of the Bargain Limitation of Certain States

Courts in Arizona, Arkansas, California, Florida, Illinois, Iowa, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, Utah and D.C. ("Benefit of the Bargain States") reject unjust enrichment claims in cases like this one, "where parties voluntarily have negotiated, entered into and fully performed their bargain" (the "Benefit of the Bargain Limitation"). *See In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160, 210 (D. Me. 2004) (rejecting unjust enrichment claims in case involving

indirect purchasers of vehicles) ("*NMV I*"); *see also* Rstmt. (First) of Restitution § 107(1) (1937). Under this standard, there can be no unjust enrichment where the plaintiff received the product or service he expected at the price he agreed to pay—*i.e.,* the benefit of his bargain.  The IPPs "paid their purchase prices and obtained their" products (*see NMV I*, 350 F. Supp. 2d at 210) under contracts they voluntarily negotiated and entered.  (*See* AD CCC ¶¶ 25–110; EP CCAC ¶ 21–68.)  The IPPs do not assert that they failed to receive the benefits for which they bargained, nor do they allege that they sought to rescind their purchases.  Rather, the IPPs allege only that they overpaid.  (*See* AD CCC ¶ 15; EP CCAC ¶ 9.)  That assertion, however, is insufficient under the laws of the Benefit of the Bargain States, which preclude unjust enrichment claims where the plaintiff obtained the products bargained for at the agreed prices.  *See, e.g.*, *Dist. 1199P Health & Welfare Plan v. Janssen*, *LP*, 784 F. Supp. 2d 508, 532–33 (D.N.J. 2011); *Prohias v. Pfizer*, *Inc.*, 485 F. Supp. 2d 1329, 1335 (S.D. Fla. 2007) ("*Prohias I*").[22]  For these reasons, and as explained in Section VII *infra*, the IPPs' unjust enrichment claims fail in the Benefit of the Bargain States.

### 4. Defendants Provided Consideration for Any Benefit

Florida, Kansas, Massachusetts, Missouri, Nevada, New Hampshire, South Dakota, Tennessee, Utah, Vermont and Wisconsin (the "Consideration States") do not permit unjust enrichment claims where the defendant provided consideration for the benefit it received. Retention of the benefit under such circumstances is not considered to be "unjust" (the "Consideration Limitation").  *See, e.g.*, *Ray Reilly's Tire Mart, Inc. v. F.P. Elnicki, Inc.*, 537

---

[22] This is true whether the plaintiff entered into the bargain with the defendant, or, as here, with a third party.  *See, e.g.*, *High v. Davis*, 584 P.2d 725, 736 (Or. 1978) (en banc); *Howard v. Turnbull*, 316 S.W.3d 431, 438 (Mo. Ct. App. 2010); *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331–32 (Fla. Dist. Ct. App. 2007); *Winters v. Cnty. of Clatsop*, 150 P.3d 1104, 1108 (Or. Ct. App. 2007).

A.2d 994, 995 (Vt. 1987) ("'[I]f the [defendant] has given any consideration to any person for the [benefit], it would not be unjust for him to retain the benefit without paying the furnisher.'") (quoting *Paschall's v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966)).[23]   The IPPs allege that Defendants gave consideration (*i.e.,* Bearings) to direct customers for a benefit (*i.e.,* money). (AD CCC ¶¶ 6.)  The IPPs may not bring unjust enrichment claims in the Consideration States.

### C.   IPPs Cannot Use Unjust Enrichment to Recover on Failed Antitrust and Consumer Protection Theories

Even if the IPPs had properly pleaded their unjust enrichment claims, and were able to satisfy the elements of unjust enrichment, the IPPs cannot evade the restrictions of federal and state law by resorting to the doctrine of unjust enrichment.  Where the law precludes a plaintiff from seeking damages under a claim at law, that plaintiff may not seek those same damages vis-à-vis an equitable claim for restitution, such as unjust enrichment.  *Cf. INS v. Pangilinan*, 486 U.S. 875, 883 (1988) ("[I]t is well established that courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law.").  Antitrust and consumer protection statutes reflect each state legislature's policy choices concerning how to regulate economic conduct in that state.  Courts do not permit plaintiffs to circumvent these legislative choices by repackaging failed antitrust theories under the common law of unjust enrichment.  *See In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1380 (S.D. Fla. 2001) ("State legislatures and courts that adopted the *Illinois Brick* rule against indirect purchaser antitrust suits did not intend to allow an end run around the policies allowing

---

[23] *See also Senne & Co. v. Simon Capital Ltd. P'ship*, No. 93-302, 2007 WL 1175858, at *8 (Kan. Ct. App. Apr. 20, 2007) (underlying premise of a claim for unjust enrichment is that the defendant received a benefit without providing consideration); *Ferola v. Allstate Life Ins. Co.,* No 050996, 2007 WL 2705534, at *14 (Mass. Super. Ct. Aug. 30, 2007) (per curiam) (unjust enrichment will not lie where defendant provided valuable consideration).

only direct purchasers to recover.") (internal quotations omitted).  To do so would undermine "a relatively comprehensive state and federal statutory and common-law scheme [which] exists to proscribe the conduct of which [p]laintiffs complain."  *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 412 (S.D.N.Y. 2011); *see also NMV I*, 350 F. Supp. 2d at 209.

There is no cause of action for unjust enrichment based on anticompetitive conduct separate and apart from the predicate causes of action (either antitrust or consumer protection). *See Digital Music*, 812 F. Supp. 2d at 412 (dismissing all autonomous unjust enrichment claims); *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 542 (E.D. Pa. 2010) ("*Flonase II*"), (dismissing unjust enrichment claims where the predicate causes of action were dismissed); *In re Potash*, 667 F. Supp. 2d at 948 (finding same under Mississippi law).  The necessary premise of a freestanding unjust enrichment claim would have to be that, "even if the defendants' conduct is blameless under the substantive requirements of federal and state antitrust statutes and state consumer protection statutes, the plaintiffs nevertheless can still obtain restitution of some part of their . . . purchase price."  *NMV I*, 350 F. Supp. 2d at 209.  But that is not what IPPs allege; instead, the Complaints reflect the position that Defendants were unjustly enriched as a result of alleged anticompetitive conduct.  (*See, e.g.*, AD CCC ¶ 322; EP CCAC ¶ 256.)  Permitting any such claim would circumvent legal limits of substantive antitrust and consumer protection law.

## VI.  IPPS' STATE-LAW CLAIMS ARE BARRED IN WHOLE OR IN PART BY STATE STATUTES OF LIMITATIONS

The IPPs' state law antitrust and consumer protection claims are subject to statutes of limitations ranging from two to six years.  In each state, the statute of limitations applied to these statutory claims will also be applied to equitable claims, including unjust enrichment.  *See, e.g.*, *Walker v. Armco Steel Corp.*, 446 U.S. 740, 745 (1980); *Stuart & Sons, L.P. v. Curtis Publ'g Co.*, 456 F. Supp. 336, 343 (D. Conn. 2006) (to prevent opportunistic pleading, where a plaintiff

asserts an equitable claim based on the same conduct used to support a statutory claim, both claims are controlled by the statute of limitations applicable to the statutory claim).  The first indirect purchaser complaint against any of the Defendants was a class action filed on May 23, 2012.  *See* Kaufman Class Action Complaint, No. 2:12-cv-12263-MOB-MKM (May 23, 2012) (Exh. K-4).[24]  Thus, any alleged violations on which the IPPs attempt to recover prior to the applicable statute of limitations period in each state, running from May 23, 2012 at the earliest, are not actionable.

The IPPs attempt to toll the applicable limitations periods by alleging in conclusory fashion that the equitable doctrine of fraudulent concealment applies.  (AD CCC ¶¶ 220–28; EP CCAC ¶¶ 148–54; *see also* AD CCC ¶¶ 251-258; EP CCAC ¶¶ 189-195.)  The elements required to plead fraudulent concealment, which are essentially the same in all of the jurisdictions whose laws IPPs invoke, are:  (i) affirmative fraudulent conduct designed to avoid detection of the conspiracy; (ii) IPPs' exercise of due diligence to uncover their alleged claims; and (iii) lack of constructive knowledge of the facts upon which they now rely in asserting their claims.  Rule 9(b) requires that these elements be pleaded with particularity, including "distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see whether, by ordinary diligence, the discovery might not have been before made."  *Pinney Dock & Transport Co.*, 838 F.2d at 1465; *see also*

---

[24]  A complaint was first filed on behalf of End-Payor Plaintiffs against JTEKT Corporation, Nachi-Fujikoshi Corp., NSK Ltd., Schaeffler AG, AB SKF, NTN Corp., and NTN USA Corporation on May 23, 2012; against Koyo Corp. of U.S.A. (now d/b/a JTEKT North America Corp.) on June 19, 2012; and against NSK Americas, Nachi America, Schaeffler Group USA, and SKF USA on August 21, 2013.

A complaint was first filed on behalf of Dealership Plaintiffs against JTEKT Corporation, Nachi-Fujikoshi Corp., NSK Ltd., Schaeffler AG, AB SKF, NTN Corp., and NTN USA Corporation on June 15, 2012; and against NSK Americas, Koyo Corp. of U.S.A. (now d/b/a/ JTEKT North America Corp.), Nachi America, Schaeffler Group USA, and SKF USA on August 21, 2013.

*Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 850 (6th Cir. 2006). As discussed below (and on a state-by-state basis in Section VII *infra*), the IPPs fail to allege *any* facts supporting fraudulent concealment, much less facts that would meet their burden of pleading each of these elements with particularity. *See, e.g.*, *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975).[25]

## 1.    IPPs Have Failed to Plead Affirmative Concealment

To successfully plead "affirmative concealment," the IPPs must allege that Defendants took affirmative steps separate and apart from the alleged conspiratorial conduct in order to cover up their alleged unlawful behavior; simply reciting the conspiratorial allegations or alleging that Defendants did not confess their misconduct is insufficient. *See*, *e.g.*, *Hesse v. Vinatieri*, 302 P.2d 699, 702 (Cal. Dist. Ct. App. 1956) ("[T]here must be some affirmative act calculated to obscure the existence of a cause of action and it must be factually alleged[.]"); *see also In re Refrigerant Compressors Antitrust Litig.*, 795 F. Supp. 2d 647, 663 (E.D. Mich. 2011) (such acts "must be separate from the alleged price-fixing conspiracy itself" and "conceal[] the means for discovering plaintiffs' claims") (citing *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 891 (6th Cir. 2004)); *Hentosh v. Herman M. Finch Univ. of Health Scis.*, 167 F.3d 1170, 1174 (7th Cir. 1999) (fraudulent concealment requires "efforts by the defendant—above and beyond the wrongdoing upon which the plaintiff's claim is founded—to prevent the plaintiff

---

[25] Many states interpret their antitrust laws in accordance with federal principles and thus IPPs' failure to satisfy the federal pleading requirements is equally fatal to their state law fraudulent concealment allegations. *See*, *e.g.*, *In re Magnesium Oxide,* 2011 WL 5008090, at *7 n.9, *20 n.18 ("IP Plaintiffs' state antitrust law claims similarly require dismissal for failure to establish fraudulent concealment.").

from suing in time").[26]  Yet, the IPPs provide only conclusory allegations that their claims were fraudulently concealed with no factual support.  (*See e.g.*, AD CCC ¶ 253 ("carried out in a manner that precluded detection"), ¶ 255 ("inherently self-concealing"), ¶ 256 ("deceptive practices"); EP CCAC ¶ 191 ("carried out in a manner that precluded detection"), ¶ 192 ("inherently self-concealing").).

The IPPs also cannot invoke fraudulent concealment because they cannot show that any act of concealment was directed at them or prevented them from discovering their claims.  The IPPs must plead facts showing, plausibly, that Defendants' alleged acts of "concealment prevented plaintiff[s] from discovering the cause of action within the limitations period."  *Pinney Dock & Transport Co.*, 838 F.2d at 1465; *see, e.g.*, *Wilkerson v. Christian*, No. 1:06CV00871, 2008 WL 483445, at *12 (M.D. N.C. Feb. 19, 2008) (Exh. J-40) ("Where a plaintiff does not allege reliance on the defendant's misrepresentations or omissions, the plaintiff does not allege an inequity necessitating the tolling of the statute of limitations."); *Orlak v. Loyola Univ. Health Sys.*, 885 N.E.2d 999, 1009 (Ill. 2007) ("A plaintiff must plead and prove that the defendant made misrepresentations or performed acts which were known to be false, with the intent to deceive the plaintiff, and upon which the plaintiff detrimentally relied."); *Friends Univ. v. W.R. Grace & Co.*, 608 P.2d 936, 941 (Kan. 1980).  The IPPs admit that they "had no means of obtaining any facts or information concerning any aspect of Defendants' dealings with OEMs or

---

[26] Mere silence or the failure to disclose the purported conspiracy is not affirmative concealment. *See, e.g. Hesse*, 302 P.2d at 702; *Tovrea Land & Cattle Co. v. Linsentneyer*, 412 P.2d 47, 63 (Ariz. 1966) ("[T]here must be some 'trick or contrivance intended to exclude suspicion and prevent inquiry."); *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446-47 (6th Cir. 2012) (internal quotation omitted).  Allegations that a price fixing conspiracy was "inherently self-concealing" or that the conspirators met secretly or kept silent are insufficient.  *See*, *e.g.*, *Dry Cleaning & Laundry Inst. of Detroit, Inc. v. Flom's Corp.*, 841 F. Supp. 212, 217-18 (E.D. Mich. 1993) ("Such [allegations] of clandestine meetings and telephone conversations [are] not sufficient to establish the requisite 'affirmative acts' of fraudulent concealment.").

other direct purchasers, much less the fact that they had engaged in the combination and conspiracy alleged herein."  (AD CCC ¶ 249; EP CCAC ¶ 187.)  Thus, the IPPs do not, and cannot, allege that they were misled or thwarted from discovering their claims by any act or other conduct of Defendants.[27]

### 2.    IPPs Have Failed to Allege That They Exercised Due Diligence

The IPPs' invocation of fraudulent concealment also fails because they allege no facts to show that they exercised due diligence to discover their claims.  *See, e.g.*, *Refrigerant*, 795 F. Supp. 2d at 666 ("[T]he 'mere allegation of due diligence without asserting what steps were taken is insufficient.'") (quoting *Dayco*, 523 F.2d at 394); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 138 F. Supp. 2d 25, 28-29 (D. Me. 2001) (same); *Iron Workers Local Union No. 70 Ins. Fund v. Philip Morris Inc.*, 29 F. Supp. 2d 801, 809 (N.D. Ohio 1998) (plaintiff failed to plead due diligence with specificity and thus, "cannot use the fraudulent concealment exception to escape the statute of limitations"); *Snapp & Assocs. Ins. Servs. Inc. v. Robertson*, 96 Cal. App. 4th 884, 890-91 (2002) ("A plaintiff is under a duty to reasonably investigate[.]"); *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 858 P.2d 66, 74 (N.M. 1993).  Rather than allege facts to show that they "diligently sought" to discover the price-fixing

---

[27] "Application of equitable estoppel should be premised on a defendant's improper conduct as well as a plaintiff's actual and reasonable reliance thereon."  *Bridgeport*, 371 F.3d at 891 (internal quotation omitted); *see In re Magnesium Oxide*, Civ. No. 10-5943 (DRD), 2012 WL 1150123, at *9 (D.N.J. Apr. 5, 2012) ("IP Plaintiffs could not plausibly have been misled by Defendants' justifications or any self-concealing aspect of the MgO conspiracy."); *see also Sinclair Oil Corp. v. Atl. Richfield Co.*, 720 F. Supp. 894, 896 (D. Utah 1989) ("The defendant must act to hide the cause of action and the plaintiff must not find it *because* it was hidden.  Only in such a causal circumstance does the equitable fraudulent concealment tolling principle make sense.") (emphasis in original); *In re Ford Motor Co. E-350 Van Products Liab. Litig. (No. II)*, Civil Action No. 03-4558 (GEB), 2010 WL 2813788, at *22 (D.N.J. July 9, 2010) (finding no fraudulent concealment under Illinois law where plaintiffs did not receive any representations from the defendant or see any marketing materials or media reports, and therefore did not detrimentally rely on the alleged affirmative acts of concealment).

conspiracy for which they now seek damages, the IPPs claim that they would not have discovered the alleged conspiracy *even if* they had been diligent.  (AD CCC ¶ 251; EP CCAC ¶ 189.)  Thus, the IPPs do not, nor can they, provide any of the particulars supporting their conclusory allegation of due diligence, as required by Rule 9(b).[28]

## VII.  AUTOMOBILE DEALERS' AND END PAYORS' STATE LAW CLAIMS MUST BE DISMISSED ON STATUTORY OR OTHER GROUNDS

In addition to the analysis set forth above, the IPPs' state antitrust, consumer protection, and unjust enrichment claims are deficient on numerous state-specific grounds that require dismissal of these claims in whole or in part.  Specifically, amongst other deficiencies, the IPPs (1) lack antitrust standing in states adopting *AGC* (or a similar standard) (Exh. B); (2) have failed to satisfy the intrastate nexus requirements of certain state antitrust laws (Exh. C); (3) have failed to satisfy the requirements of certain state consumer protection laws (Exh. D); (4) have failed to state a claim for unjust enrichment in certain states because they cannot meet state-specific pleading requirements (Exh. E), meet the Direct Benefit requirement (Exh. F), avoid the Benefit of the Bargain Limitation (Exh. G), and/or avoid the Consideration Limitation (Exh. H); and (5) are barred in whole or in part by state statutes of limitations (Exh. I).

---

[28] The IPPs' claim that they "did not discover and could not discover" the alleged price fixing conspiracy earlier is belied by their allegations that publicly available data and information reveal significant increases in Automotive Bearing prices during the putative Class Period and by their contention that certain structural conditions made the Automotive Bearings market susceptible to collusion among suppliers.  (*See*, *e.g.*, AD CCC ¶¶ 164-80; EP CCAC ¶¶ 109-23.)  Specifically, the IPPs allege in their complaint that substantial barriers to entry, high and increasing market concentration, inelastic demand, homogenous or commoditized products, and opportunities to conspire in the Automotive Bearings industry support their claims.  (AD CCC ¶¶ 166-80; EP CCAC ¶¶ 115-19.)  None of these structural and historical factors were concealed from the IPPs and if, as the IPPs contend, they are indicative of possible collusion by Defendants, they should have put the IPPs on notice of their claims and prompted them to investigate their alleged cause of action.

### A.     Arizona

#### 1.     IPPs Lack Antitrust Standing Under Arizona Antitrust Law

Arizona's harmonization statute authorizes courts to "use as a guide interpretations given by the federal courts to comparable federal antitrust statutes."  Ariz. Rev. Stat. Ann. § 44-1412.  *AGC* thus applies to IPPs' Arizona antitrust claims, as recognized by the courts of Arizona, courts of this District, and other federal courts.  *See Luscher v. Bayer AG*, No. 2004-014835, slip op. at 2-3 (Ariz. Super. Ct. Sept. 14, 2005) (Exh. J-60); *Compressors II*, 2013 WL 1431756, at *10-15; *DRAM II*, 536 F. Supp. 2d at 1134-42.  As explained in Section IV, *supra*, because the *AGC* factors weigh against standing, the IPPs' Arizona claims should be dismissed.

#### 2.     IPPs' Arizona Unjust Enrichment Claims Fail for Three Reasons

First, to state an Arizona unjust enrichment claim, a party must plead, *inter alia*, "the absence of a legal remedy."  *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 48 P.3d 485, 491 (Ariz. Ct. App. 2002).  The IPPs have not done so here.

Second, Arizona unjust enrichment law requires the IPPs to allege that they conferred a benefit on Defendants.  *See Yee v. Nat'l Gypsum Co.*, No. CV-09-8189-PHX-DGC, 2010 WL 2572976, at *4 (D. Ariz. June 22, 2010) (Exh. J-61); *Laborers' & Operating Eng'rs' Util. Agreement Health & Welfare Trust Fund for Ariz. v. Philip Morris, Inc.*, 42 F. Supp. 2d 943, 951 (D. Ariz. 1999).   Absent such allegations, Arizona unjust enrichment claims by indirect purchasers have been dismissed.  *See, e.g.*, *Compressors II*, 2013 WL 1431756, at *25–26; Section V.B.2, *supra*.

Third, the IPPs do not allege that they failed to receive what they bargained for: Bearings at the agreed prices.  *See Brooks v. Valley Nat'l Bank*, 548 P.2d 1166, 1171 (Ariz. 1976) (en banc); *USLife Title Co. v. Gutkin*, 732 P.2d 579, 585 (Ariz. Ct. App. 1986); Section V.B.3, *supra*.

34

### 3. IPPs' Antitrust and Unjust Enrichment Claims Are Also Barred in Whole or in Part by Arizona's Statute of Limitations

A four-year statute of limitations applies to IPPs' Arizona antitrust and unjust enrichment claims. Ariz. Rev. Stat. Ann. § 44-1410. The IPPs' claims cannot extend beyond this period as they fail to properly allege with particularity "positive acts of concealment done to prevent detection" beyond "[m]ere silence," *Tovrea Land & Cattle Co. v. Linsentneyer*, 412 P.2d 47, 63 (Ariz. 1966), that misled the IPPs from recognizing a legal wrong or seeking timely legal redress within the limitation period. *Porter v. Spader*, 239 P.3d 743, 747 (Ariz. Ct. App. 2010). Arizona's statute of limitations thus bars IPPs' claims for damages based on purchases prior to May 23, 2008.

## B. Arkansas

### 1. ADs' Price Fixing Claims Are Not Actionable Under the Consumer Protection Laws of Arkansas

The ADs have alleged a claim under the Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. § 4-88-101. (AD CCC ¶ 311.) However, that statute, which prohibits "deceptive" and "unconscionable" conduct, does not address pricing issues. Moreover, statutory context makes clear that it was not intended to do so. For instance, Subchapter 3 of the Act prohibits "unfair pricing practices," but only in the event of a "state of emergency." Ark. Code Ann. §4-88-303. Further, the Arkansas legislature has passed a separate Unfair Practices Act. Ark. Code Ann. §§ 4-75-201, *et seq.* ("AUPA"). If the Arkansas legislature had intended for price fixing to be actionable, it would have provided for a private right of action under AUPA, which specifically prohibits price fixing. *Id.* § 4-75-309. The fact that it did not indicates that the Arkansas legislature did not intend to permit plaintiffs to maintain price-fixing claims under the more general ADTPA statute. *See Depriest v. Astrazeneca Pharms. L.P.*, No. CV2004-77, 2008 WL 3243562 (Ark. Cir. Ct. July 31, 2008), *aff'd* 351 S.W.3d 168 (Ark. 2009)

(Exh. J-17). This Court should therefore follow other federal courts and dismiss the ADs' ADTPA claim. *See, e.g.*, *GPU I*, 527 F. Supp. 2d at 1030; *LCD I*, 586 F. Supp. 2d at 1125.

### 2. ADs Lack Standing to Assert Consumer Protection Claims Under Arkansas Law Because Their Claims Are Too Remote

The IPPs may not maintain their consumer protection claims under Arkansas law because their injury is too remote. *See Independence Cnty. v. Pfizer, Inc.*, 534 F. Supp. 2d 882, 888 (E.D. Ark. 2008) (plaintiffs' injury was too remote to support claim under Arkansas Deceptive Trade Practices Act), *aff'd*, 552 F.3d 659 (8th Cir. 2009).[29]

### 3. ADs' Consumer Protection Claim Fails Because ADs Do Not Allege "Unconscionable" Conduct

The ADTPA requires the ADs to plead facts that establish that Defendants engaged in unconscionable conduct. Ark. Code Ann. § 4-88-107(a); *GPU I*, 527 F. Supp. 2d at 1029–30. That means that the ADs must allege "grossly unequal bargaining power" compared to Defendants. *Id.* at 1030. The ADs have not alleged any facts from which the Court could plausibly infer that this was the case. *Id; see also Twombly*, 550 U.S. at 570.[30]

### 4. ADs' Arkansas Unjust Enrichment Claim Fails Because They Received the Benefit of Their Bargains

Under Arkansas law, a plaintiff may not recover for unjust enrichment if he has received that for which he bargained. *See Frein v. Windsor Weeping Mary, LP*, 366 S.W.3d 367, 372 (Ark. Ct. App. 2009). As explained in Section V.B.3, *supra*, the IPPs do not allege that they have failed to receive the benefit of their bargains—in this case, Bearings at the agreed prices.

_____

[29] While the Court rejected the "remoteness" argument under *AGC* in *Wire Harnesses II*, Defendants respectfully submit that the specific Arkansas case law cited herein, which is independent of *AGC*, justifies a different conclusion.

[30] Moreover, the ADs expressly allege that they purchased Bearings or vehicles exclusively from parties other than Defendants, meaning no bargaining ever took place between the ADs and Defendants, much less bargaining that could be characterized as "unequal." (AD CCC ¶ 161.)

### 5.     ADs' Consumer Protection and Unjust Enrichment Claims Are Also Barred in Whole or in Part by Arkansas's Statute of Limitations

ADs' Arkansas claims are subject to a five-year statute of limitations.  Ark. Code Ann. § 4-88-115.  As explained in Section VI, *supra*, ADs' claims cannot extend beyond this period as they fail to properly allege with particularity "(1) a positive act of fraud (2) that is actively concealed and (3) is not discoverable by reasonable diligence."  *Bomar v. Moser*, 251 S.W.3d 234, 241-42 (Ark. 2007).  Arkansas's statute of limitations thus bars ADs' claims for damages based on purchases prior to May 23, 2007.

### C.     California

### 1.     IPPs Lack Antitrust Standing Under California Antitrust Law

The *AGC* factors apply to claims brought under California's antitrust statute.  *See Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811, 1814 n.1 (1995) ("Because the Cartwright Act has objectives identical to the federal antitrust acts, the California courts look to cases construing the federal antitrust laws for guidance in interpreting the Cartwright Act."); *Compressors II*, 2013 WL 1431756, at \*10-15.  Since the *AGC* factors weigh against antitrust standing, *see* Section IV, *supra*, the Court should dismiss the IPPs' claims under California law.

### 2.     EPs' Consumer Protection Claim Is Prohibited Due to an Insufficient California Nexus

California consumer protection law requires that the "alleged misconduct or injuries occur[] in California" and any "specific intrastate misconduct" be alleged in the complaint.  *See Meridian Project Sys., Inc. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214, 1225 (E.D. Cal. 2005).  The EPs do not allege *any* California misconduct by Defendants.  Nor do they allege where any EP bought Bearings or vehicles (*see, e.g.*, EP CCAC ¶¶ 21–68, 242) or, hence, where they suffered injury.  Defendants acknowledge that *Wire Harnesses II* rejected arguments seeking to dismiss claims under California law where there were no allegations of challenged conduct

37

taking place in California.  However, Defendants respectfully submit that their arguments here differ from those put forth by the *Wire Harnesses II* Defendants.  In *Packaged Ice*, 779 F. Supp. 2d at 664, a case relied on in *Wire Harnesses II*, there were allegations in each affected state that plaintiffs located *in that state* purchased products in that state at artificially inflated prices. Those critical allegations are missing here, as the EPs do not allege either misconduct in California or any purchases in California.

### 3.     California Does Not Recognize a Cause of Action for Unjust Enrichment

A cause of action for unjust enrichment *does not exist* under California law.  *See, e.g.*, *Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1174 (E.D. Cal. 2007) ("Because California law does not recognize [p]laintiff's claim for unjust enrichment, there are no facts [p]laintiff could prove to support this claim."), *aff'd sub nom. Walker v. GEICO Gen. Ins. Co.*, 558 F.3d 1025 (9th Cir. 2009); *Melchior v. New Line Prods. Inc.*, 131 Cal. Rptr. 2d 347, 357 (Ct. App. 2003) ("Unjust enrichment is a general principle, underlying various legal doctrines and remedies, rather than a remedy itself.") (internal quotation omitted).  *Dunkel v. eBay, Inc.*, No. 5:12-CV-01452-EJD, 2013 WL 415584, at *11 (N.D. Cal. Jan. 31, 2013) (Exh. J-41); *Hill v. Roll Int'l Corp.*, 128 Cal. Rptr. 3d 109, 118 (Cal. Ct. App. 2011).

### 4.     Alternatively, the IPPs' California Unjust Enrichment Claims Fail Because They Received the Benefit of Their Bargains

Even if the IPPs could maintain their unjust enrichment claims under California law, they still should be dismissed because the IPPs do not allege that they failed to receive the benefit of their bargains:  Bearings at the agreed prices.  *See Peterson v. Cellco P'ship*, 80 Cal. Rptr. 3d 316, 323 (Ct. App. 2008); Section V.B.3, *supra*.

**5.     IPPs' Antitrust, Consumer Protection, and Unjust Enrichment Claims Are Also Barred in Whole or in Part by California's Statute of Limitations**

A four-year statute of limitations applies to California antitrust, consumer protection, and unjust enrichment claims.  Cal. Bus. & Prof. Code §§ 16750.1; 17208; Section VI, *supra*.  The IPPs have failed to meet California's requirement that, in order to toll the statute of limitations by pleading fraudulent concealment, the IPPs must sufficiently allege both factually and with particularity:  (i) an "affirmative act calculated to obscure the existence of a cause of action" *Hesse v. Vinatieri*, 302 P.2d 699, 702 (Cal. Dist. Ct. App. 1956); (ii) that the IPPs fulfilled their "duty to reasonably investigate" *Snapp & Assocs. Ins. Servs. Inc. v. Robertson*, 96 Cal. App. 4th 884, 890-91 (Cal. Ct. App. 2002); and (iii) that the failure to have notice of their alleged claim "was the result of the affirmative conduct by the defendant."  *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1100 (C.D. Cal. 2009).  Thus, California's statute of limitations bars the IPPs' claims for damages based on purchases prior to May 23, 2008.

**D.     District of Columbia**

**1.     IPPs Lack Antitrust Standing Under D.C. Antitrust Law**

The District of Columbia Antitrust Act ("DCAA") authorizes a "court of competent jurisdiction . . . [to] use as a guide interpretations given by federal courts to comparable antitrust statutes."  D.C. Code § 28-4515.  *AGC* applies to DCAA claims.  *See, e.g.*, *Peterson v. Visa U.S.A. Inc.*, No. 03-8080, 2005 WL 1403761, at *4-6 (D.C. Super. Ct. Apr. 22, 2005) (Exh. J-14); *Compressors II,* 2013 WL 1431756, at *10-15.  Because the *AGC* factors weigh against antitrust standing, the Court should dismiss the IPPs' claims under D.C. law.  *See* Section IV, *supra*.

2. **IPPs Cannot Successfully Allege Antitrust Claims Under D.C. Law Because They Fail to Allege a Sufficient Nexus to Intrastate Commerce**

In order to state a claim under D.C. antitrust law, the IPPs must allege facts sufficient to show that there were "sales in the District of Columbia that did *not* have an *interstate* aspect." *Sun Dun, Inc. v. Coca-Cola Co.*, 770 F. Supp. 285, 289 (D. Md. 1991) (emphasis added).[31] Here, no named EP resides in the District of Columbia, and there is no allegation in either the AD or EP Complaint that there were sales of allegedly price-fixed Bearings in D.C. with only intrastate aspects. Rather, the Complaints repeatedly refer to conduct that occurred throughout the United States and globally, highlighting the interstate nature of the alleged conspiracy. (*See, e.g.*, AD CCC ¶¶ 20, 262; EP CCAC ¶ 16.). IPPs' D.C. antitrust claims must be dismissed.

3. **ADs' Consumer Protection Claim Fails Under D.C. Law Because the ADs Are Not Consumers**

The ADs' consumer protection claim under D.C.'s Consumer Protection Procedures Act ("CPPA") should be dismissed because the ADs are not "consumers." The CPPA protects only "consumer[s]," defined as persons "who receive[] or demand[] goods or services that are primarily for personal, household, or family use." *See Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1043–44 (D.C. Cir. 2010) (citing authority from D.C. Court of Appeals). As such, "[t]he CPPA does not reach transactions intended primarily to promote business or professional interests" and "does not apply to commercial dealings outside the consumer sphere."

_____

[31] Defendants respectfully submit that the ruling with respect to D.C. law in *Wire Harnesses II* was in error due to its reliance on an earlier *Sun Dun* decision, *Sun Dun, Inc. of Washington v. Coca Cola Co.*, 740 F. Supp. 381, 397 (D. Md. 1990), cited for the opposite proposition. As the cited *Sun Dun* decision makes clear, purely intrastate sales are necessary for jurisdiction. Moreover, the decision cited in *Wire Harnesses II* specifically stated that the only claims . . . to which the DC code might possibly apply are those . . . which do not involve any interstate link . . . ."

*Compressors II*, 2013 WL 1431756, at *22 (internal quotations omitted).   The court in *Compressors II* dismissed a claim brought by a limited liability company under the CPPA because it failed to allege "how it used the product" or "that the entity purchased the product primarily for personal, household, or family use."   *Id.*   The ADs here similarly do not allege that a single plaintiff was a "consumer" or used Bearings for personal, household, or family use.

### 4.   IPPs' D.C. Unjust Enrichment Claims Fail for Two Reasons

A claim of unjust enrichment under D.C. law requires that a plaintiff confer a *direct* benefit to the defendant.   *See Minebea Co. Ltd. v. Pabst*, 444 F. Supp. 2d 68, 186 (D.C. 2006) (denying D.C. unjust enrichment claim where neither plaintiff "ever afforded any direct benefit to [the defendant]"); *Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1076 (D.C. 2008).   Thus, the IPPs' D.C. unjust enrichment claims should be dismissed.   *See Compressors II*, 2013 WL 1431756, at *25–26; Section V.B.2, *supra*.

Further, D.C. law does not allow a plaintiff to bring an unjust enrichment claim where she has received the benefit of her bargain.   *See Dahlgren v. Audiovox Commc'ns Corp.*, No. 2002 CA 007884 B, 2012 WL 2131937, at *14-15 (D.C. Super. Ct. Mar. 15, 2012) (Exh. J-21).   As in *Dahlgren*, the IPPs here voluntarily purchased products, and they do not allege that they did not receive that for which they bargained:   Bearings at the agreed prices.   *See* Section V.B.3, *supra*.

### 5.   IPPs' Antitrust, Consumer Protection, and Unjust Enrichment Claims Are Also Barred in Whole or in Part by D.C.'s Statute of Limitations

A four-year statute of limitations applies to D.C. antitrust claims, D.C. Code § 28-4511, and a three-year statute of limitations applies to D.C. consumer protection and unjust enrichment claims.   *Id.* § 12301(8).   In order to toll the statute of limitations by pleading fraudulent concealment, the IPPs must sufficiently allege either "something of an affirmative nature

41

designed to prevent discovery of a cause of action," or that they have satisfied their duty of due diligence, which they have failed to do here. *See Cevenini v. Archbishop of Wash.*, 707 A.2d 768, 773-74 (D.C. 1998). Thus, D.C.'s statutes of limitations bar IPPs' claims for damages based on purchases prior to May 23, 2008 (antitrust), and May 23, 2009 (consumer protection and unjust enrichment).

### E. Florida

#### 1. IPPs' Florida Unjust Enrichment Claims Fail for Three Reasons

The IPPs' Florida unjust enrichment claims are inadequate for many of the reasons discussed in Section V.B., *supra*. To state such claims, plaintiffs must plead, *inter alia*, "that no adequate legal remedy exists." *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) (dismissing unjust enrichment claims predicated on same facts as FDUTPA claim because existence of FDUTPA claim shows an adequate remedy at law); *see also Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1236–37 (S.D. Fla. 2007) ("*Prohias II*"). The IPPs not only do not plead the absence of a legal remedy; they specifically seek out a legal remedy.

Second, the IPPs' Florida unjust enrichment claims fail because the IPPs do not allege that they conferred a "direct" benefit on defendants. *See Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. Dist. Ct. App. 2009); Section V.B.2, *supra*.[32] Third, the IPPs' Florida unjust enrichment claims fail because "plaintiffs must plead . . . at a minimum,

---

[32]*See also In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 842–44 (S.D. Ohio 2012) (dismissing unjust enrichment claim because "[w]ithout establishing a link between the unidentified seller of his vehicle and [the manufacturer], Florida [p]laintiff fails to allege that he conferred a direct benefit on [defendant] as Florida law requires"); *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 551–52 (D. Md. 2011); *Szymczak v. Nissan N. Am., Inc.*, No. 10 CV 7493, 2011 WL 7095432, at *20 (S.D.N.Y. Dec. 16, 2011) (Exh. J-45).

that they did not get the 'benefit of their bargain' when they purchased [the product]." *Prohias I*, 485 F. Supp. at 1335; *see also Am. Safety Ins. Serv. Inc. v. Griggs*, 959 So. 2d 322, 331-32 (Fla. Dist. Ct. App. 2007). The IPPs do not allege that they failed to receive that for which they voluntarily bargained: Bearings at the agreed prices. *See* Section V.B.3, *supra*.

### 2. IPPs' Consumer Protection and Unjust Enrichment Claims Are Also Barred in Whole or In Part by Florida's Statute of Limitations

A four-year statute of limitations applies to Florida consumer protection and unjust enrichment claims, Fla. Stat. Ann. § 95.11(3); *see* Section VI, *supra*. In order to toll the statute of limitations by pleading fraudulent concealment, Florida requires that the IPPs plead both affirmative acts and due diligence with particularity. *See First Fed. Savings & Loan Ass'n of Wisconsin v. Dade Fed. Savings & Loan Ass'n*, 403 So.2d 1097, 1100 (Fla. Dist. Ct. App. 1981); *Delco Oil, Inc. v. Pannu*, 856 So. 2d 1070, 1073 (Fla. Dist. Ct. App. 2003); *Fox v. City of Pompano Beach*, 984 So.2d 664, 668 (Fla. Dist. Ct. App. 2008). The IPPs have failed to do so. Florida's statute of limitations thus bars the IPPs' claims for damages based on purchases prior to May 23, 2008.

### F. Hawaii

### 1. IPPs Lack Antitrust Standing Under Hawaii Antitrust Law

Hawaii's Antitrust Act incorporates most of Sherman Act § 1 verbatim. Haw. Rev. Stat. § 480-4(a), and Hawaii's harmonization statute expressly directs that Hawaii's antitrust law "shall be construed in accordance with judicial interpretations of similar federal antitrust statutes." Haw. Rev. Stat. § 480-3; *see also Davis v. Four Seasons Hotel Ltd.*, 228 P.3d 303, 324 (Haw. 2010); *Bartleys Town & Country Shops, Inc. v. Dillingham Corp.*, 530 F. Supp. 499 (D. Haw. 1982) (citing *Island Tobacco Co., Ltd. v. R. J. Reynolds Tobacco Co.*, 63 Haw. 289, 627

P.2d 260 (1981)).  Thus, as discussed in Section IV, *supra*, the Court should apply *AGC* to the IPPs' Hawaii antitrust claims and dismiss them for lack of antitrust standing.

<div align="center">

**2. IPPs' Hawaii Unjust Enrichment Claims Fail Because the IPPs Have an Adequate Remedy at Law**

</div>

The IPPs' unjust enrichment claims under Hawaii law should be dismissed because Hawaii permits such claims only where legal remedies are inadequate.  *See, e.g.*, *Porter v. Hu*, 169 P.3d 994, 1006–07 (Haw. Ct. App. 2007).  Where, as here, a statutory claim is available, Hawaii courts do not permit unjust enrichment claims.  *Davis v. Four Seasons Hotel Ltd.,* CIV. 08-00525 HG-BMK, 2011 WL 5025521, at *6 (D. Haw. Oct. 20, 2011) (Exh. J-42).  Because the IPPs' Hawaiian statutory claims are premised on the same factual predicates as their unjust enrichment claims, their unjust enrichment claims should be dismissed.

<div align="center">

**3. ADs' Antitrust, EPs' Consumer Protection, and IPPs' Unjust Enrichment Claims Are Also Barred in Whole or in Part by Hawaii's Statute of Limitation**

</div>

A four-year statute of limitations applies to Hawaii antitrust, consumer protection, and unjust enrichment claims.  Haw. Rev. Stat. § 480-24; s*ee* Section VI, *supra*.  In order to toll the statute of limitations by pleading fraudulent concealment, Hawaii requires that the IPPs plead affirmative acts with particularity, which they have failed to do.  *See Rundgren v. Bank of New York Mellon,* 777 F. Supp. 2d 1224, 1230 (D. Haw. 2011); *Au v. Au*, 626 P.2d 173, 178 (Haw. 1981).  Hawaii's statute of limitations thus bars the IPPs' claims for damages based on purchases prior to May 23, 2008.

**G.    Illinois**

<div align="center">

**1.    ADs Lack Antitrust Standing under Illinois Antitrust Law**

</div>

Illinois' harmonization statute mandates that "[w]hen the wording of this [Antitrust] Act is identical or similar to that of a federal antitrust law, the courts of this State shall use the

<div align="center">44</div>

construction of the federal law by the federal courts as a guide in construing this Act."  740 Ill. Comp. Stat. § 10/11; *accord Laughlin v. Evanston Hosp.*, 550 N.E.2d 986, 990 (Ill. 1990).  *AGC* therefore must be applied to the ADs' Illinois antitrust claim.  *See, e.g.*, *O'Regan v. Arbitration Forms, Inc.*, 121 F.3d 1060, 1066 (7th Cir. 1997) ("Federal antitrust standing rules apply under the Illinois Antitrust Act."); *Gutnayer v. Cendant Corp.*, 116 F. Appx. 758, 761 (7th Cir. 2004); *Int'l Bhd. Of Teamsters, Local 734 Health & Welfare Trust Fund v. Philip Morris Inc.*, 196 F.3d 818, 827-28 (7th Cir. 1999).  Thus, as discussed in Section IV, *supra*, the Court should apply the *AGC* factors to the ADs' Illinois antitrust claims and dismiss for lack of antitrust standing.

### 2.     Illinois Antitrust Law Bars ADs' Class Action State Law Claims

ADs brought an indirect purchaser class action on behalf of themselves and all similarly situated automotive dealers.  (AD CCC ¶¶ 1, 222-23.)  However, Illinois antitrust law bars indirect purchaser plaintiffs from maintaining class actions.  *See* 740 Ill. Comp. Stat. Ann. 10/7(2) ("[N]o person shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under this Act, with the sole exception of this State's Attorney General . . . .").  Accordingly, courts have consistently dismissed private class actions brought by indirect purchasers.  *See, e.g.*, *Wire Harnesses II*, 2013 WL 2456612, at *21 ("Illinois does not allow an indirect purchaser plaintiff to maintain an antitrust claim as a class action."); *In re Magnesium Oxide*, 2011 WL 5008090, at *8 n.10.

### 3.     ADs' Illinois Unjust Enrichment Claim Fails for Two Reasons

"For a cause of action based on a theory of unjust enrichment to exist [under Illinois law], there must be an independent basis that establishes a duty on the part of the defendant to act and the defendant must have failed to abide by that duty." *Martis v. Grinell Mut. Reinsurance Co.*, 388 Ill. App. 3d 1017, 1025 (2009) (citing *Lewis v. Lead Industries Ass'n, Inc*., 793 N.E.2d 869, 877 (2003)).  The ADs allege no duty owed to them by Defendants.

The ADs' unjust enrichment claim under Illinois law also fails because they do not allege that they failed to receive the benefit of their bargains:  Bearings at the agreed prices.  *See La Throp v. Bell Fed. Sav. & Loan Ass'n*, 370 N.E.2d 188, 195 (Ill. 1977); Section V.B.3, *supra*.

### 4.  ADs' Antitrust and Unjust Enrichment Claims Are Also Barred by the Illinois Statute of Limitations

A four-year statute of limitations applies to Illinois antitrust and unjust enrichment claims. 740 Ill. Comp. Stat. Ann. 10/7(2); *see* Section VI, *supra*.  The ADs' claims cannot extend beyond this period because they fail to sufficiently allege with particularity "affirmative acts designed to prevent the discovery of a cause of action or ground for relief" *Bank of Ravenswood v. Domino's Pizza*, 646 N.E.2d 1252, 1261 (Ill. App. Ct. 1995); upon which "the plaintiff[s] detrimentally relied" *Orlak v. Loyola Univ. Health Sys.*, 885 N.E.2d 999, 1009 (Ill. 2007); or "factual allegations demonstrating [Plaintiffs'] good faith and reasonable diligence in trying to uncover [the alleged grounds for relief] . . . within the limitations period." *People v. Coleman*, 794 N.E.2d 275, 293 (Ill. 2002) (quotation omitted); *see also In re Ford Motor Co. E-350 Van Products Liab. Litig. (No. II)*, CIV. A. 03-4558, 2010 WL 2813788, at *22 (D.N.J. July 9, 2010) (Exh. J-43).  Illinois's statute of limitations thus bars ADs' claims for damages based on purchases prior to May 23, 2008.

### H.  Iowa

### 1.  IPPs Lack Antitrust Standing Under Iowa Antitrust Law

Iowa Code § 553.2 requires courts to "achieve uniform application of the state and federal laws prohibiting restraints of economic activity."  Iowa Code Ann. § 553.2; *see also Next Generation Realty v. Iowa Realty Co.*, 686 N.W.2d 206, 208 (2004).  The Iowa Supreme Court has therefore held that "we apply the *AGC* factors to determine whether the plaintiffs may recover under Iowa law." *Southard v. Visa U.S.A., Inc.*, 734 N.W.2d 192, 198 (Iowa 2007); *see*

*also Compressors II*, 2013 WL 1431756, at *10-15. Since the *AGC* factors weigh against finding antitrust standing (*see* Section IV, *supra*), the Court should dismiss the IPPs' claims under Iowa law.

### 2.    IPPs' Iowa Unjust Enrichment Claims Fail for Two Reasons

First, under Iowa law, the IPPs must allege a direct relationship between the IPPs and the Defendants. *See Southard v. Visa U.S.A., Inc.*, No. LACV 031729, 2004 WL 3030028, at *5 (Iowa Dist. Ct. Nov. 17, 2004), *aff'd*, 734 N.W.2d 192 (Iowa 2007) (Exh. J-27) (dismissing consumers' unjust enrichment claims because their "damages are too remote and derivative"); *Commercial Fed. Bank v. Qwest Corp.*, No. 03-0634, 2004 WL 2296370, at *5 (Iowa Ct. App. Oct. 14, 2004) (Exh. J-44); *cf. Henning v. Sec. Bank*, 564 N.W.2d 398, 403–04 (Iowa 1997). The IPPs do not and cannot allege such a relationship. *See* Section V.B.2, *supra*.

Second, under Iowa law, a plaintiff may not recover for unjust enrichment if she has received that for which she bargained. *See Smith v. Stowell*, 125 N.W.2d 795, 800 (Iowa 1964) ("[A] person is not entitled to compensation on the ground of unjust enrichment if he received . . . that which it was agreed between them the other should give in return.") (internal quotations omitted), *overruled on other grounds by Lamp v. Am. Prosthetics, Inc.*, 379 N.W.2d 909, 910 (Iowa 1986); *see also Crandell v. Wall Lake View Auburn Bd. of Educ.*, No. 00-2013, 2002 WL 987665, at *1–2 (Iowa Ct. App. May 15, 2002) (Exh. J-30). IPPs do not allege that they failed to receive the benefit of their bargains: Bearings at the agreed prices. *See* Section V.B.3, *supra*.

### 3.    IPPs' Antitrust and Unjust Enrichment Claims Are Also Barred in Whole or in Part by Iowa's Statute of Limitations

A four-year statute of limitations applies to Iowa antitrust and unjust enrichment claims. Iowa Code Ann. § 553.16(1); *see* Section VI, *supra*. The IPPs' claims cannot extend beyond this period because they fail to sufficiently allege with particularity both affirmative concealment—

an "affirmative act to conceal the plaintiff's cause of action independent of and subsequent to the liability-producing conduct"—and the "use of ordinary care and diligence" to discover the cause of action. *Christy v. Miulli,* 692 N.W.2d 694, 702 (Iowa 2005). The IPPs also fail to allege they relied on any alleged affirmative concealment. *Id.* (noting that plaintiff's reliance on the affirmative acts must be reasonable); *Baier v. Ford Motor Co.*, No. C04-2039, 2005 WL 928615, at *4-5 (N.D. Iowa Apr. 21, 2005) (Exh. J-31). Iowa's statute of limitations thus bars IPPs' claims for damages based on purchases prior to May 23, 2008.

## I.   Kansas

### 1.   IPPs Lack Antitrust Standing Under Kansas Antitrust Law

The *AGC* factors apply to Kansas antitrust claims. *See Compressors II*, 2013 WL 1431756, at *10-15; *Orr v. Beamon*, 77 F. Supp. 2d 1208, 1211 (D. Kan. 1999) ("[S]tanding under the Kansas antitrust statutes requires an antitrust injury similar to that required under the Sherman and Clayton Acts."); *In re Magnesium Oxide,* 2011 WL 5008090, at *7, n.9 (Kansas antitrust claims are construed in accordance with federal antitrust principles); *DRAM II*, 536 F. Supp. 2d at 1134-42. Since the *AGC* factors weigh against finding antitrust standing, the Court should dismiss IPPs' Kansas antitrust claims. *See* Section IV, *supra*.

### 2.   IPPs' Kansas Unjust Enrichment Claims Fail for Two Reasons

A claim of unjust enrichment in Kansas requires that a plaintiff confer a direct benefit upon a defendant. *See Spires v. Hosp. Corp. of Am.*, 289 F. App'x 269, 273 (10th Cir. 2008) ("[N]othing in Kansas law . . . supports an indirect unjust enrichment claim"); *Haz-Mat Response, Inc. v. Certified Waste Servs., Ltd.*, 910 P.2d 839, 847 (Kan. 1996) (under Kansas law, without privity, an unjust enrichment claim can only be brought in very limited circumstances). Federal courts, including courts in this District, thus have consistently dismissed Kansas unjust enrichment claims by indirect purchasers in antitrust cases. *See*, *e.g.*, *Compressors II*, 2013 WL

48

1431756, at *25–26; *In re Potash*, 667 F. Supp. 2d at 948.  Because the IPPs do not and cannot allege that they conferred any direct benefit upon Defendants, their Kansas unjust enrichment claims should be dismissed.  *See* Section V.B.2, *supra*.

Second, the IPPs' Kansas unjust enrichment claims should be dismissed because there is no unjust enrichment where the defendant provided consideration for the benefit it received.  *See*, *e.g.*, *Tradesmen Int'l, Inc. v. U.S. Postal Serv.*, 234 F. Supp. 2d 1191, 1205–06 (D. Kan. 2002); *Senne & Co. v. Simon Capital Ltd. P'ship*, No. 93-302, 2007 WL 1175858, at *8 (Kan. Ct. App. Apr. 20, 2007) (Exh. J-26).  Because the IPPs concede that Defendants provided consideration (Bearings) for the benefit they received (money), *see* Section V.B.4, *supra*, the IPPs' Kansas unjust enrichment claims fail.

### 3.  IPPs' Antitrust and Unjust Enrichment Claims Are Also Barred in Whole or in Part by Kansas's Statute of Limitations

A three-year statute of limitations applies to Kansas antitrust and unjust enrichment claims.  Kan. Stat. Ann. § 60-512(2); *see* Section VI, *supra*.  The IPPs' claims cannot extend beyond this period because they fail to sufficiently allege with particularity "some affirmative act of concealment" and due diligence.  *Friends Univ. v. W.R. Grace & Co.*, 608 P.2d 936, 941 (Kan. 1980).  The IPPs also cannot allege fraudulent concealment as they admit there was no reliance on any alleged concealment.  *Doe v. St. Benedict's Abbey*, 189 P.3d 580, No. 98,675, 2008 WL 3368248, at *9 (Kan. Ct. App. Aug. 8, 2008) (Exh. J-32).  Kansas's statute of limitations thus bars IPPs' claims for damages based on purchases prior to May 23, 2009.

### J.  Maine

#### 1.  IPPs Lack Antitrust Standing Under Maine Antitrust Law

The *AGC* factors apply to Maine antitrust claims.  *See, e.g.*, *Knowles v. Visa U.S.A. Inc.*, No. Civ.A CV-03-707, 2004 WL 2475284, at *8 (Me. Super. Ct. Oct. 20, 2004) (Exh. J-13)

("[T]he court has weighed the [*AGC*] factors and has concluded that notwithstanding Maine's enactment of an *Illinois Brick* repealer, the factors that militate against standing outweigh those in favor of standing."); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 235 F.R.D. 127, 134 (D. Me. 2006) (noting that, in *Knowles*, Justice Warren found that "Maine would follow the factors set forth in [*AGC*]"); *Compressors II*, 2013 WL 1431756, at *10-15. Accordingly, the Court should dismiss IPPs' Maine antitrust claims for lack of antitrust standing under *AGC*. *See* Section IV, *supra*.

### 2.   IPPs' Antitrust and Unjust Enrichment Claims Are Also Barred in Whole or in Part by Maine's Statute of Limitations

A six-year statute of limitations applies to Maine antitrust and unjust enrichment claims. 14 Me. Rev. Stat. Ann. § 752; *see* Section VI, *supra*. The IPPs' claims cannot extend beyond this period because they fail to sufficiently allege with particularity any affirmative concealment, detrimental reliance, and due diligence. *McKinnon v. Honeywell Int'l, Inc.*, 977 A.2d 420, 426 (Me. 2009); *Harkness v. Fitzgerald*, 701 A.2d 370, 372 (Me. 1997); *Kobritz v. Severance*, 912 A.2d 1237, 1241 (Me. 2007). Maine's statute of limitations thus bars IPPs' claims for damages based on purchases prior to May 23, 2006.

### K.   Massachusetts

### 1.   IPPs' Massachusetts Unjust Enrichment Claims Fail for Three Reasons

IPPs' unjust enrichment claims under Massachusetts law should be dismissed because Massachusetts only permits unjust enrichment claims where the plaintiff has no legal remedy. *See Fernandes v. Havkin*, 731 F. Supp. 2d 103, 114 (D. Mass. 2010). Here, the IPPs allege statutory claims under the very same statute (Chapter 93A) that *precluded* a claim for unjust enrichment in *Fernandes*.

Further, the IPPs may not recover because they do not allege that they have failed to receive the benefit of their bargains:  in this case, Bearings at the agreed price.  *See Cmty. Builders, Inc. v. Indian Motocycle Assocs., Inc.*, 692 N.E.2d 964, 979 (Mass. App. Ct. 1998); *Ferola v. Allstate Life Ins. Co.,* No 050996, 2007 WL 2705534, at *14 (Mass. Super. Ct. Aug. 30, 2007) (Exh. J-22); *see also* Section V.B.3, *supra*.  There is also no unjust enrichment where, as here, Defendants provided consideration (Bearings) for the benefit they received (money).  *See*, *e.g.*, *Ferola*, 2007 WL 2705534, at *14; *see also* Section V.B.4, *supra*.

## 2. EPs' Antitrust Claim and IPPs' Unjust Enrichment Claims Are Also Barred in Whole or in Part by Massachusetts's Statute of Limitations

A four-year statute of limitations applies to Massachusetts antitrust and unjust enrichment claims.  Mass. Gen. Laws Ann. Ch. 93 § 13; *see* Section VI, *supra*.  The EPs' claims cannot extend beyond this period because they fail to sufficiently allege with particularity "affirmative act[s] done with intent to deceive" *Stark v. Advanced Magnetics, Inc.*, 736 N.E.2d 434, 442 (Mass. App. Ct. 2000), and the "exercise of reasonable diligence." *Frank Cooke, Inc. v. Hurwitz*, 406 N.E.2d 678, 683 (Mass. App. Ct. 1980); *see also Puritan Med. Ctr., Inc. v. Cashman*, 596 N.E.2d 1004, 1010 (Mass. 1992).  Massachusetts's statute of limitations thus bars IPPs' claims for damages based on purchases prior to May 23, 2008.

## L. Michigan

### 1. IPPs Lack Antitrust Standing Under Michigan Antitrust Law

Michigan's antitrust law requires courts to "give due deference to interpretations given by the federal courts to comparable antitrust statutes."  Mich. Comp. Laws Ann. ("MARA") § 445.784(2); *see also Am. Council of Certified Podiatric Physicians v. Am. Bd. Podiatry Surgery, Inc.*, 185 F.3d 606, 619 n.4 (6th Cir. 1999) ("Because Michigan antitrust law follows federal precedents, our reasoning regarding the federal antitrust claims applies equally to the state

antitrust claims."); *Zuccarini v. Hoescht (In re Cardizem CD Antitrust Litig.)*, 200 F.R.D. 326, 331 n.4 (E.D. Mich. 2001) ("Michigan courts have observed that federal court interpretation of the Sherman Antitrust Act is persuasive authority as to the meaning of the Michigan Antitrust Reform Act.").  Consistent with that instruction, Michigan and federal courts, including courts in this District, have held that the *AGC* factors apply to Michigan antitrust law claims.  *See, e.g.*, *Stark v. VISA USA, Inc.*, No. 03-055030-CZ, 2004 WL 1879003, at *4 (Mich. Cir. Ct. July 23, 2004)) (Exh. J-15); *Compressors II*, 2013 WL 1431756, at *10-15.  Because the *AGC* factors weigh against antitrust standing, the Court should dismiss IPPs' Michigan antitrust claims.  *See* Section IV, *supra*.

### 2.    IPPs' Michigan Unjust Enrichment Claims Fail for Two Reasons

To maintain a claim for unjust enrichment under Michigan law, "the defendant must have received a benefit directly from the plaintiff."  *Munson v. Countrywide Home Loans, Inc.*, No. 08-13244, 2008 WL 5381866, at *9 (E.D. Mich. Dec. 17, 2008) (Exh. J-25).  Because the IPPs do not and cannot allege that they conferred a direct benefit on Defendants, *see* Section V.B.2, *supra*, their Michigan unjust enrichment claims must be dismissed.  *See Compressors II*, 2013 WL 1431756, at *25–26; *Aftermarket Filters*, 2010 WL 1416259, at *2–3; *In re Potash*, 667 F. Supp. 2d at 948–49; *A & M Supply Co. v. Microsoft Corp.*, No. 274164, 2008 WL 540883, at *2 (Mich. Ct. App. Feb. 28, 2008) (per curiam) (Exh. J-46); *Niemi v. Am. Axle Mfg. & Holding. Inc.*, No. 269155, 2007 WL 29383, at *6 (Mich. Ct. App. Jan. 4, 2007) (per curiam) (Exh. J-47).

The IPPs' claims also fail because, as explained in Section V.B.3, *supra*, the IPPs may not recover for unjust enrichment under Michigan law if they have received the benefit of their bargains.  *See Isom v. NE Lots LLC*, No. 288378, 2010 WL 143470, at *6 (Mich. Ct. App. Jan. 14, 2010) (per curiam) (Exh. J-24).  As in *Isom*, the IPPs here do not allege that they failed to receive that for which they voluntarily bargained:  Bearings at the agreed prices.

52

### 3.   IPPs' Antitrust and Unjust Enrichment Claims Are Also Barred in Whole or in Part by Michigan's Statute of Limitations

A four-year statute of limitations applies to Michigan antitrust and unjust enrichment claims.  Mich. Comp. Laws Ann. § 445.781; *see* Section VI, *supra*.  The IPPs' claims cannot extend beyond this period because they fail to sufficiently allege with particularity "affirmative acts or misrepresentations that were designed to prevent subsequent discovery" *Sills v. Oakland Gen. Hosp.*, 559 N.W.2d 348, 352 (Mich. Ct. App. 1997), and "due diligence until discovery of the facts."  *Chandler v. Wackenhut Corp.*, 1:08-CV-1197, 2010 WL 307908, *4-5 (W.D. Mich. Jan. 19, 2010) *aff'd*, 465 F. App'x 425 (6th Cir. 2012) (Exh. J-48); *see also McNaughton v. Rockford State Bank*, 256 N.W. 84, 86 (Mich. 1933).  Michigan's statute of limitations thus bars IPPs' claims for damages based on purchases prior to May 23, 2008.

### M.   Minnesota

### 1.   IPPs' Minnesota Unjust Enrichment Claims Fail for Three Reasons

IPPs' unjust enrichment claims under Minnesota law should be dismissed because "[i]t is well settled in Minnesota that one may not seek a remedy in equity when there is an adequate remedy at law."  *Southtown Plumbing, Inc. v. Har-Ned Lumber Co.*, 493 N.W.2d 137, 140 (Minn. Ct. App. 1992).  The IPPs do not plead the absence of a legal remedy; indeed, they actively seek legal remedies under the antitrust and consumer protection laws of dozens of states.

Dismissal is also warranted because the IPPs must allege that they conferred a direct benefit on Defendants, *see Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. Ct. App. 2001), which they do not and cannot, *see* Section V.B.2, *supra*.  Further, as explained in Section V.B.3, *supra*, the IPPs may not recover where, as here, they do not allege that they have failed to receive the benefit of their bargains:  Bearings at the agreed prices.  *See Zinter v. Univ. of Minn.*, 799 N.W.2d 243, 247 (Minn. Ct. App. 2011), *review denied* (Aug. 16, 2011).

### 2. IPPs' Antitrust and Unjust Enrichment Claims Are Also Barred in Whole or in Part by Minnesota's Statute of Limitations

A four-year statute of limitations applies to Minnesota antitrust and unjust enrichment claims. Minn. Stat. Ann. § 325D.64; *see* Section VI, *supra*. The IPPs' claims cannot extend beyond this period because they fail to sufficiently allege with particularity an "affirmative act designed to and which does prevent the discovery of the cause of action" *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 572 N.W.2d 321, 325 (Minn. Ct. App. 1997); due diligence, *Hanna Mining Co. v. InterNorth, Inc.*, 379 N.W.2d 663, 667 (Minn. Ct. App. 1986); or any reliance. *Appletree Square 1 Ltd. P'ship v. W.R. Grace & Co.*, 815 F. Supp. 1266, 1275 (D. Minn. 1993) *aff'd sub nom.*, 29 F.3d 1283 (8th Cir. 1994). Minnesota's statute of limitations thus bars IPPs' claims for damages based on purchases prior to May 23, 2008.

### N. Mississippi

### 1. IPPs Lack Antitrust Standing Under Mississippi Antitrust Law

Mississippi's Supreme Court has held that federal precedent should be applied to determine standing under Mississippi antitrust law. *See Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So.2d 331, 344 (Miss. 2004) (applying federal law to find claims too remote to confer antitrust standing); *see also In re Potash*, 667 F. Supp. 2d at 945. Accordingly, the Court should dismiss the IPPs' Mississippi antitrust claims under *AGC* based upon the standing discussion in Section IV, *supra*.

### 2. IPPs Fail to Allege Conduct Taking Place Wholly Within Mississippi

Mississippi antitrust law requires that the IPPs allege "at least some conduct by [Defendants] which was performed *wholly* intrastate." *In re Microsoft Corp. Antitrust Litig.*, Nos. MDL 1332, Civ. JFM 03-741 through 03-748, 2003 WL 22070561, at *2 (D. Md. Aug. 22, 2003) (emphasis added) (Exh. J-11); *see also California v. Infineon Techs. AG.*, 531 F. Supp. 2d

54

1124, 1158–59 (N.D. Cal. 2007) (dismissing plaintiffs' claims under the Mississippi Antitrust Act because (i) the Act "require[s] allegations of at least some activity or conduct occurring in intrastate commerce or trade"; and (ii) plaintiffs' complaint was "wholly devoid of any allegations relating to intrastate trade or commerce," and thus "fail[ed] to properly allege a claim under the Mississippi Antitrust Act").  As in *Microsoft*, the IPPs' conclusory allegations here do not establish conduct within Mississippi that was wholly intrastate.  Instead, the IPPs repeatedly refer to the *interstate* nature of the conduct, which allegedly occurred throughout the United States.  (*See*, *e.g.*, AD CCC ¶¶ 20, 262; EP CCAC ¶ 16.)  The EPs do not even allege that they purchased Bearings in Mississippi.  (*See* EP CCAC ¶ 222.)  Though the ADs do allege purchases of vehicles and Bearings in Mississippi (AD CCC ¶ 92), they do not allege that the sellers were located in Mississippi or that the Defendants' alleged conduct occurred wholly within Mississippi as is required under Mississippi law.  *See Microsoft*, 2003 WL 22070561, at *2.

Wire Harnesses II cited *GPU II*, 540 F. Supp. 2d at 1099 and *Standard Oil Co. of Ky. v. State*, 65 So. 468, 471 (Miss. 1914), *overruled in part on other grounds by Mladinich v. Kohn*, 164 So. 2d 785 (Miss. 1964), in determining whether the intrastate nexus requirement of Mississippi law was satisfied.  2013 WL 2456612, at *20.  The *GPU II* plaintiffs alleged that defendants "promoted and sold GPUs and graphics cards in [Mississippi]."  540 F. Supp. 2d at 1099.  Similarly, the *Standard Oil* plaintiffs alleged that defendants "engaged in the sale and distribution of petroleum products in [Mississippi]."  65 So. at 469-70.  Here, by contrast, the IPPs do not plead such a nexus to Mississippi.

### 3.    IPPs' Mississippi Unjust Enrichment Claims Fail

Mississippi's highest court recently ruled that unjust enrichment in Mississippi means "[m]oney paid to another by a *mistake* of fact."  *Willis v. Rehab Solutions, PLLC*, 82 So. 3d 583, 588 (Miss. 2012) (en banc); *see also Union Nat'l Life Ins. Co. v. Crosby*, 870 So. 2d 1175, 1180

(Miss. 2004) ("mistake" is the "ground on which [unjust enrichment] recovery is allowed") (internal quotations omitted).  The IPPs do not allege any facts that plausibly suggest that they have mistakenly paid Defendants.

### 4.   IPPs' Antitrust and Unjust Enrichment Claims Are Also Barred in Whole or in Part by Mississippi's Statute of Limitations

A three-year statute of limitations applies to Mississippi antitrust and unjust enrichment claims.  Miss. Code Ann. § 15-1-49; *see* Section VI, *supra*.  The IPPs' claims cannot extend beyond this period because they fail to sufficiently allege with particularity "some affirmative act or conduct . . . [that] prevented discovery of the claim," and "due diligence . . . performed [by the plaintiffs]," *Stephens v. Equitable Life Assurance Soc'y of U.S.*, 850 So. 2d 78, 84 (Miss. 2003); *Spann v. Diaz*, 987 So. 2d 443, 449 (Miss. 2008).  Mississippi's statute of limitations thus bars IPPs' claims for damages based on purchases prior to May 23, 2009.

### O.   Missouri

### 1.   IPPs' Missouri Unjust Enrichment Claims Fail For Two Reasons

The IPPs may not recover for unjust enrichment because they do not allege that they have failed to receive the benefit of their bargains:  Bearings at the agreed prices.  *See Howard*, 316 S.W.3d at 438 (Mo. Ct. App. 2010); Section V.B.3, *supra*.  Further, as explained in Section V.B.4, *supra*, there is no unjust enrichment where Defendants provided consideration (Bearings) for the benefit they received (money).  *See*, *e.g.*, *Cnty. Asphalt Paving, Co. v. Mosley Constr., Inc.*, 239 S.W.3d 704, 710 (Mo. Ct. App. 2007).

### 2.   EPs' Consumer Protection and IPPs' Unjust Enrichment Claims Are Also Barred in Whole or in Part by Missouri's Statute of Limitations

A five-year statute of limitations applies to Missouri antitrust and unjust enrichment claims.  Mo. Rev. Stat. § 516.120; *see* Section VI, *supra*.  The EPs' claims cannot extend beyond this period because they fail to sufficiently allege with particularity affirmative acts of

concealment and due diligence.  *See e.g.*, *Owen v. Gen. Motors Corp.*, 533 F.3d 913, 919-20 (8th Cir. 2008); *Batek v. Curators of the Univ. of Mo.*, 920 S.W.2d 895, 900 (Mo. 1996).  Missouri's statute of limitations thus bars claims for damages based on purchases prior to May 23, 2007.

### 3.    EPs Cannot Maintain Their Consumer Protection Claim as a Class Action under Montana Law

*Wire Harnesses II* rejected the argument that Montana law barred plaintiffs' consumer protection class action claims, ostensibly because defendants there failed to "provide any analysis or support post *Shady Grove* to support their position."  2013 WL 2456612, at \*30 (citing *Shady Grove Orthopedic Assocs. v. Allstate Ins.*, 559 U.S. 393 (2010)).  In *Shady Grove*, a five-member majority of the Supreme Court held that New York Civil Practice Law section 901(b), "which precludes a suit to recover a 'penalty' from proceeding as a class action," did not apply to New York state-law claims brought in federal court.  *Id.* at 397 (citation omitted).  However, Justice Stevens' controlling concurrence[33] made clear that New York's law "is a procedural rule that is not part of New York's substantive law" and therefore, according to long-held *Erie* principles, did not apply in federal court.  *Id.* at 416.  Justice Stevens' concurrence made clear that federal courts should still apply a state law class action bar that is "so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Id.* at 423.[34]

---

[33] *See, e.g.*, *Packaged Ice*, 779 F. Supp. 2d at 660 ("Courts interpreting the *Shady Grove* decision, and searching for guidance on this issue, have concluded that Justice Stevens' concurrence is the controlling opinion by which interpreting courts are bound.").

[34] As further clarified by a court in this district, "[a]pplying Justice Stevens' approach, several courts have distinguished [the New York law at issue in *Shady Grove*] and have concluded that statutory restrictions on class actions which appear in the very statutes that define the substantive rights at issue survive *Shady Grove* and should continue to be enforced." *Packaged Ice*, 779 F. Supp. 2d at 661 n.4.

The EPs bring a claim under "the Montana Unfair Trade Practices and Consumer Protection Act of 1970, Mont. Code Ann., §§ 30-14-103, *et seq.*, and §§ 30-14-201, *et. seq.*" (EP CCAC ¶ 249.) In that statute, Montana specifically bars any consumer protection claim from proceeding as a class action. *See* Mont. Code Ann. § 30-14-133(1) ("A consumer who suffers any ascertainable loss of money or property . . . as a result of the use or employment by another person of a method, act, or practice declared unlawful by 30-14-103 may bring an individual *but not a class action* . . . ." ) (emphasis added). Because Montana's prohibitions on consumer protection law class actions "appear in the very statutes that define the substantive rights at issue" they "survive *Shady Grove* and should continue to be enforced." *Packaged Ice*, 779 F. Supp. 2d at 661 n.4.

### 4. EPs Fail to Allege a Sufficient Nexus Between Defendants' Conduct and Intrastate Commerce Under Montana Law

To state a claim under the consumer protection laws of Montana, the EPs must allege a specific nexus between Defendants' conduct and intrastate commerce. *See DRAM I*, 516 F. Supp. 2d at 1104. While recognizing this authority from *DRAM I*, this Court did not dismiss EPs' claims in *Wire Harnesses II* because plaintiffs there had alleged they "purchased new vehicles containing [wire harnesses] themselves from OEMs . . . in each state having laws permitting recovery of damages by indirect purchasers" and that the "challenged conduct was 'intentionally directed at the market for [wire harnesses] in all states allowing indirect purchasers to collect damages." 2013 WL 2456612, at *29 (ellipsis in original) (internal quotations omitted). No similar allegation appears in the EPs' complaint here. Moreover, although one EP is allegedly from Montana, there is no allegation that she purchased a vehicle or Bearings in Montana. (*See* EP CCAC at ¶ 46.) The EPs' Montana consumer protection claim should be dismissed because they have failed to allege "any conduct or activity taking place within [Montana] that sets forth a

basis for connecting individual claims with representative claims under . . . Montana . . . statutes." *DRAM I*, 516 F. Supp. 2d at 1104.

### 5.   EPs' Consumer Protection and Unjust Enrichment Claims Are Also Barred in Whole or in Part by Montana's Statute of Limitations

A two-year statute of limitations applies to Montana antitrust and unjust enrichment claims. Mont. Code Ann. § 27-2-11; *see* Section VI, *supra*.  The IPPs' claims cannot extend beyond this period because they fail to sufficiently allege with particularity "an affirmative act . . . calculated to obscure the existence of the cause of action" *Yarbro, Ltd. v. Missoula Fed. Credit Union*, 50 P.3d 158, 163 (Mont. 2002), and the "exercise [of] ordinary diligence to discover the facts constituting the fraud[.]" *Holman v. Hansen*, 773 P.2d 1200, 1203 (Mont. 1989); *see also Rucinsky v. Hentchel*, 881 P.2d 616, 618 (Mont. 1994); Mont. Code Ann. § 27-2102(3).  The EPs' failure to allege due diligence is all the more obvious because they allege that certain Defendants were inspected in July 2011, *before* Montana's statute of limitations would have run. (EP CCAC ¶ 126.)  Montana's statute of limitations thus bars the EPs' claims for damages based on purchases prior to May 23, 2010.

### P.   Nebraska

### 1.   IPPs Lack Antitrust Standing Under Nebraska Antitrust Law

Nebraska's antitrust law mandates that when its provisions are "the same or similar to the language of a federal antitrust law," courts, in construing such provisions, "shall follow the construction given to the federal law by the federal courts."  Neb. Rev. Stat. Ann. § 59-829.  This includes applying the *AGC* factors to determine whether plaintiffs have antitrust standing.  *See Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293, 298 (Neb. 2006); *Compressors II*, 2013 WL 1431756, at *10-15.  Since the IPPs lack antitrust standing under the *AGC* factors, as discussed in Section IV, *supra*, the Court should dismiss the IPPs' claims under Nebraska antitrust law.

### 2. IPPs' Nebraska Unjust Enrichment Claims Fail Because IPPs Received the Benefit of Their Bargains

The IPPs' Nebraska unjust enrichment claims warrant dismissal because, as explained in Section V.B.3, *supra*, there can be no unjust enrichment where, as here, the IPPs do not allege that they have failed to receive the benefit of their bargains: Bearings at the agreed prices. *See Washa v. Miller*, 546 N.W.2d 813, 819 (Neb. 1996).

### 3. IPPs' Antitrust and Unjust Enrichment Claims Are Also Barred in Whole or in Part by Nebraska's Statute of Limitations

A four-year statute of limitations applies to Nebraska antitrust and unjust enrichment claims. Neb. Rev. Stat. Ann. § 59-1612; *see* Section VI, *supra*. The IPPs' claims cannot extend beyond this period because they fail to sufficiently allege with particularity "some affirmative act of fraudulent concealment which prevent[ed] the [Plaintiffs] from discovering [their] cause of action" and the that they "they exercised due diligence to discover [their] cause of action before the statute of limitations expired . . . ." *Upah v. Ancona Bros. Co.*, 521 N.W.2d 895, 902 (Neb. 1994). Nebraska's statute of limitations thus bars the IPPs' claims for damages based on purchases prior to May 23, 2008.

## Q. Nevada

### 1. IPPs Lack Antitrust Standing Under Nevada Antitrust Law

Nevada's harmonization statute expressly requires that the state antitrust law "shall be construed in harmony with prevailing judicial interpretations of the federal antitrust statutes." Nev. Rev. Stat. Ann. § 598A.050; *see also Boulware v. Nevada*, 960 F.2d 793, 800-01 (9th Cir.1992). Thus, the *AGC* factors must be applied to dismiss IPPs' Nevada antitrust claims. *See In re Magnesium Oxide*, 2011 WL 5008090, at *7 n.9; *DRAM II*, 536 F. Supp. 2d at 1134-42; Section IV, *supra*.

2.     **IPPs' Claims under Nevada Antitrust Law Fail Because IPPs Fail to Allege Conduct Taking Place within Nevada**

Nevada antitrust law requires that the IPPs allege that at least some unlawful conduct occurred in Nevada.  *See* Nev. Rev. Stat. Ann. § 598A.060 ("[I]t is unlawful to conduct any part of [a conspiracy in restraint of trade] *in this State*.") (emphasis added).  Here, the IPPs plead no facts suggesting that the alleged conspiracy took place in Nevada.  Only the ADs even allege that they purchased Bearings in Nevada; the EPs make no such allegation, and the ADs do not allege that they purchased Bearings *from the Defendants* in Nevada.  (*See* AD CCC ¶ 293(a); EP CCAC ¶ 224.)  In *Wire Harnesses II*, 2013 WL 2456612, at *21, the Court relied on *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1189 (N.D. Cal. 2009) ("*LCD II*"), to determine whether the Nevada intrastate nexus requirement was satisfied.  However, the cases cited in *LCD II* all involved more extensive allegations regarding defendants' conduct, including allegations of sales of price-fixed products in Nevada by the defendant or by co-conspirators.  Such allegations are absent here.

3.     **IPPs' Nevada Unjust Enrichment Claims Fail Because Defendants Provided Consideration**

IPPs' Nevada unjust enrichment claims should be dismissed because there is no unjust enrichment where Defendants provided consideration (Bearings) for the benefit they received (money).  *See Bowyer v. Davidson*, 584 P.2d 686, 687 (Nev. 1978); Section V.B.4, *supra*.

4.     **IPPs' Antitrust and Unjust Enrichment Claims Are Also Barred in Whole or in Part by Nevada's Statute of Limitations**

A four-year statute of limitations applies to Nevada antitrust and unjust enrichment claims.  Nev. Rev. Stat. Ann. § 598A.220; *see* Section VI, *supra*.  The IPPs' claims cannot extend beyond this period because they fail to sufficiently allege with particularity affirmative concealment and "reasonable diligence."  *Winn v. Sunrise Hosp. & Med. Ctr.*, 277 P.3d 458, 466 (Nev. 2012).

Nevada's statute of limitations thus bars IPPs' claims for damages based on purchases prior to May 23, 2008.

**R.    New Hampshire**

**1.    IPPs Lack Antitrust Standing Under New Hampshire Antitrust Law**

New Hampshire's harmonization provision instructs that courts "may be guided by interpretations of the United States' antitrust laws."  N.H. Rev. Stat. Ann. § 356:14; *see also Minuteman, LLC v. Microsoft Corp.*, 147 N.H. 634, 641 (N.H. 2002) (New Hampshire's antitrust law "should be construed consistent with the *Illinois Brick* rule").  Consistent with that instruction, federal courts, including courts in this District, have applied the *AGC* factors to dismiss New Hampshire antitrust claims brought by indirect purchasers.  *See Donovan v. Digital Equip. Corp.*, 883 F. Supp. 775, 785 (D. N.H. 1994); *Compressors II*, 2013 WL 1431756, at *10-15.  Accordingly, the Court should dismiss the IPPs' New Hampshire antitrust claims for the reasons discussed in Section IV, *supra*.

**2.    IPPs' New Hampshire Unjust Enrichment Claims Fail for Two Reasons**

New Hampshire courts have held that a plaintiff may not recover for unjust enrichment if she has received that for which she bargained.  *See Clapp v. Goffstown Sch. Dist.*, 977 A.2d 1021, 1025–26 (N.H. 2009).  As explained in Section V.B.3, *supra*, the IPPs do not allege that they have failed to receive the benefit of their bargains:  Bearings at the agreed prices.  The IPPs' claims also fail because New Hampshire does not permit unjust enrichment claims where Defendants provided consideration (Bearings) for the benefit they received (money).  *See*, *e.g.*, *Axenics, Inc. v. Turner Constr. Co.*, 62 A.3d 754, 766–67 (N.H. 2013); Section V.B.4, *supra*.

3.   **IPPs Cannot Assert Antitrust Claims for Conduct Occurring Prior to New Hampshire's 2008 Statutory Amendment, and IPPs' Antitrust and Unjust Enrichment Claims Are Also Barred in Whole or in Part by New Hampshire's Statute of Limitations**

The IPPs seek damages for allegedly anticompetitive conduct occurring from January 1, 2004 to the present or such time as the anticompetitive effects ceased. (AD CCC ¶ 3; EP CCAC ¶ 2.) However, much of that time period is prior to New Hampshire's amendment of its antitrust statute to permit indirect purchaser recovery, effective January 1, 2008. N.H. Rev. Stat. Ann. § 356:11. Anticompetitive conduct prior to that amendment cannot be the basis for legally cognizable indirect purchaser claims. *See Wire Harnesses II*, 2013 WL 2456612, at *19.

Further, a four-year statute of limitations applies to New Hampshire antitrust and unjust enrichment claims. N.H. Rev. Stat. Ann. § 356:12; *see* Section VI, *supra*. The IPPs' claims cannot extend beyond this period because they fail to sufficiently allege with particularity affirmative concealment that "actively misled" them of their alleged cause action and due diligence. *Portsmouth Country Club v. Town of Greenland*, 15883 A.2d 298, 304-05 (N.H. 2005); *see also Lamprey v. Britton Const., Inc.*, 37 A.3d 359, 367 (N.H. 2012). New Hampshire's statute of limitations thus bars IPPs' claims for damages based on purchases prior to May 23, 2008.

S.   **New Mexico**

1.   **IPPs Lack Antitrust Standing Under New Mexico Antitrust Law**

New Mexico's harmonization provision mandates that its state antitrust act (the "NMAA") "shall be construed in harmony with judicial interpretations of the federal antitrust laws . . . to achieve uniform application of the state and federal laws prohibiting restraints of trade and monopolistic practices." N.M. Stat. Ann. § 57-1-15; *see also Romero v. Philip Morris Inc.*, 242 P.3d 280, 291 (N.M. 2010) ("It is therefore the duty of the courts to ensure that New

Mexico antitrust law does not deviate substantially from federal interpretations of antitrust law."). New Mexico and federal courts, including courts in this District, have accordingly recognized that the *AGC* factors apply to determine standing under the NMAA. *See, e.g.*, *Nass-Romero v. Visa U.S.A. Inc.*, 279 P.3d 772, 777-81 (N.M. Ct. App. 2012); *Compressors II*, 2013 WL 1431756, at *10-15. Since the *AGC* factors weigh against antitrust standing as discussed in Section IV, *supra*, the Court should dismiss the IPPs' New Mexico antitrust claims.

### 2. IPPs' New Mexico Consumer Protection Claims Fail Because IPPs Do Not Allege "Unconscionable" Conduct

The IPPs plead no facts to establish that Defendants engaged in "unconscionable" conduct, as defined and required by New Mexico's consumer protection law. *See* N.M. Stat. Ann. § 57-12-2(E) (unconscionable conduct constitutes acts or practices that "take[] advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree" or "result[] in a gross disparity between the value received by a person and the price paid"). Pleading unconscionability under New Mexico law "requires something more than merely alleging that the price of a product was unfairly high." *GPU I*, 527 F. Supp. 2d at 1029. While the IPPs parrot the language of the statute, (AD CCC ¶ 315; EP CCAC ¶ 250), they have not alleged any *facts* from which the Court could plausibly conclude that they were subjected to inequitable bargaining power or that there existed a "gross disparity" between the prices the IPPs paid for vehicles or Bearings and the value they received. *See Twombly*, 550 U.S. at 570. For example, neither complaint alleges *anything* about the specific prices that the IPPs paid for vehicles or Bearings, or the amount of the alleged overcharges. This failure distinguishes the IPPs' Complaints from those in the cases relied upon on in *Wire Harnesses II*, 2013 WL 2456612, at *27. In those cases, the plaintiffs quantified in some way the alleged "gross disparity." *See In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 552–53

64

(M.D. Pa. 2009) (detailing three series of price increases and the percentage by which each defendant increased price); *NMV I*, 350 F. Supp. 2d at 196 (prices up to 30% higher). The IPPs' "formulaic recitation" of the elements of New Mexico's consumer protection law is not enough to survive dismissal, and neither *Chocolate* nor *NMV I* suggest otherwise. Any effort by the IPPs to argue that their New Mexico claims survive because they have pleaded unequal bargaining power likewise fails because the IPPs admit that they purchased vehicles or Bearings exclusively from parties *other than* Defendants and thus *did not bargain* with Defendants. (AD CCC ¶ 161; EP CCAC ¶¶ 21–68, 106.).

### 3.   IPPs' New Mexico Unjust Enrichment Claims Fail Because IPPs Received the Benefit of Their Bargains

New Mexico courts have held that a plaintiff may not recover for unjust enrichment if it has received that for which it bargained. *See Arena Res., Inc. v. OBO, Inc.*, 238 P.3d 357, 361 (N.M. Ct. App. 2010). As explained in Section V.B.3, *supra*, the IPPs do not allege that they have failed to receive the benefit of their bargains: Bearings at the agreed prices.

### 4.   IPPs' Antitrust, Consumer Protection, and Unjust Enrichment Claims Are Also Barred in Whole or in Part by New Mexico's Statute of Limitations

A four-year statute of limitations applies to New Mexico antitrust, consumer protection, and unjust enrichment claims. N.M. Stat. Ann. § 57-1-12; *see* Section VI, *supra*. The IPPs' claims cannot extend beyond this period because they fail to sufficiently allege with particularity that they "exercised due diligence and that some affirmative act of fraudulent concealment frustrated discovery notwithstanding such diligence." *Cont'l Potash,* 858 P.2d at 74. Thus, New Mexico's statute of limitations bars claims for damages based on purchases prior to May 23, 2008.

T.     **New York**

    1.     **IPPs Lack Antitrust Standing Under New York Antitrust Law**

The *AGC* factors are applied to New York antitrust claims to determine whether indirect purchasers have standing.  *See Ho v. Visa U.S.A. Inc.*, Index No. 112316/00, 2004 WL 1118534, at *2-3 (N.Y. Sup. Ct. Apr. 21, 2004), *aff'd*, 16 A.D.3d 256 (N.Y. App. Div. 2005) (Exh. J-9); *Compressors II*, 2013 WL 1431756, at *10-15.  The Court should therefore dismiss IPPs' claims under New York antitrust law.  *See* Section IV, *supra*.

    2.     **IPPs Cannot Successfully Allege Antitrust Claims Under New York Law Because They Fail to Allege a Sufficient Impact on Intrastate Commerce**

A claim is not cognizable under New York antitrust law "[w]here the conduct complained of principally affects interstate commerce, with little or no impact on local or intrastate commerce."  *H-Quotient, Inc. v. Knight Trading Grp., Inc.*, No. 03 Civ. 5889(DAB), 2005 WL 323750, at *4 (S.D.N.Y. Feb. 9, 2005) (Exh. J-8); *see also In re Digital Music Antitrust Litig.,* 812 F. Supp. 2d 390, 416-17 (S.D.N.Y. 2011) ("*Digital Music*").   That requirement reflects the language of the New York statute, which prohibits agreements for monopoly or in restraint of trade "in the conduct of any business trade or commerce or in the furnishing of any service *in this state*."  N.Y. Gen. Bus. Law § 340(1) (emphasis added).

In *H-Quotient*, the court found no effect on intrastate commerce because the defendants "did not limit it's [sic] business to any particular state" and were "dealing with the sale of stock of a Virginia company . . . ."  *Id.* at *5.  This conclusion was reached by the court even though the defendants in part were based in New York.  *Id.*; *see also In re Wiring Device Antitrust Litig.*, 498 F. Supp. 79, 82 (E.D.N.Y. 1980) ("Where, as here, all defendants are unquestionably engaged in interstate commerce, those who are damaged from an alleged restraint of trade find a remedy in the federal, not the state, antitrust laws." ).

*Wire Harnesses II* found allegations under New York law to be sufficient where the plaintiffs alleged anticompetitive effects to have occurred in every state. 2013 WL 2456612, at *21. However, Defendants respectfully submit that this finding does not address the *H-Quotient* analysis. In that case, there is no question but that there were effects in New York. The question addressed in *H-Quotient* was whether the misconduct "primarily affected interstate commerce" and was therefore not subject to the New York state law, or, alternatively, "w[as] limit[ed] to any particular state." *Id.* at *5. No such limits are alleged here. Nor is there any allegation of a monopoly or restraint of trade occurring "in this state," i.e. New York, because there are no allegations that any particular IPP made purchases in New York at supra-competitive prices.

### 3. An Insufficient New York Nexus Prohibits the EPs' Consumer Protection Claim

To state a claim under the consumer protection laws of New York, a plaintiff must allege a specific nexus between defendants' alleged conduct and intrastate commerce. *See Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190, 1195 (N.Y. 2002). The court in *Goshen* held that the language of the statute "unambiguously evinces a legislative intent to address commercial misconduct occurring within New York," and thus, to be a prohibited act under the statute, "the transaction in which the consumer is deceived must occur in New York." *Id.* Again, while two EPs allegedly reside in New York, no EP alleges that she or he purchased vehicles or Bearings in New York (*see* EP CCAC ¶¶ 51–52), nor do the EPs allege any transaction in New York involving deceit or deception.

### 4. IPPs' New York Consumer Protection Claims Fail Because IPPs Have Not Alleged a Deceptive Act Directed Towards Consumers Or a Deceptive Transaction That Occurred In New York

IPPs' New York consumer protection claims also fail because the New York statute at issue confers a private right of action only on a "person who has been injured by reason of" a

deceptive act or practice.  N.Y. Gen. Bus. Law § 349(h).  Thus, as New York's highest court has held, the IPPs must allege "both a deceptive act or practice *directed toward consumers* and that such act or practice resulted in actual injury to [them]."  *Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 818 N.E.2d 1140, 1143 (2004) (emphasis added); *see also Wire Harnesses II*, 2013 WL 2456612, at *28.  The IPPs fail to meet these requirements.

First, New York courts consistently dismiss consumer protection claims where, as here, indirect purchasers allege they overpaid due to an antitrust violation but do not allege any misrepresentations directed *at them*.  *See, e.g.*, *State ex rel. Spitzer* v. *Daicel Chem. Indus.*, 840 N.Y.S.2d 8, 12 (App. Div. 2007); *Paltre v. Gen. Motors Corp.*, 810 N.Y.S.2d 496, 498 (App. Div. 2006).  The IPPs do not allege any deceptive communications from the Defendants to any of the IPPs or directed at any of the IPPs.

Second, there are no allegations that any such purported deception caused the IPPs to overpay for Bearings or vehicles containing Bearings.  *Wire Harnesses II* found that the indirect purchaser plaintiffs had stated a claim under the New York statute based on allegations "that defendants took efforts to conceal their agreement *from New York plaintiffs and the indirect class*."  *Wire Harnesses II*, 2013 WL 2456612, at *28 (emphasis added).  No such allegations are present here.  In fact, in this case, the IPPs' admission that they had no direct contact with Defendants, nor any means by which to obtain information from Defendants (*see, e.g.*, EP CCAC ¶ 186), is wholly inconsistent with New York's requirement that the IPPs allege a misrepresentation directed *at them* to state a viable consumer protection claim. (AD CCC ¶ 161; EP CCAC ¶¶ 21–68, 106.)

Further, New York's consumer protection statute "unambiguously evinces a legislative intent to address commercial misconduct occurring within New York" and, to be a prohibited act

under the statute, "the transaction in which the consumer is deceived must occur in New York." *Goshen*, 774 N.E.2d at 1195; *see also Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5, 8-9, n.1 (2d Cir. 2012) (dismissing claims of non-New York plaintiffs in reliance not on "the non-New York plaintiffs' residency but on the lack of any plausible claim that they engaged in a transaction with [defendant] within New York"). The EPs make no such allegations; they do not even allege where they made their allegedly price-fixed purchases. (EP CCAC ¶¶ 51–52, 251.)

### 5.      IPPs' New York Unjust Enrichment Claims Fail for Two Reasons

First, under New York law, unjust enrichment only exists where the plaintiff either engaged in an "actual, substantive relationship" with the defendant *or* conferred a "direct" benefit upon it. *See Carmona v. Spanish Broad. Sys., Inc.*, No. 08 Civ. 4475, 2009 WL 890054, at *6 (S.D.N.Y. Mar. 30, 2009) (Exh. J-20); *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000); *Brenner v. Brenner*, 821 F. Supp. 2d 533, 540–41 (E.D.N.Y. 2011). The attenuated relationship between a manufacturer and an indirect purchaser precludes unjust enrichment claims against the manufacturer of one of those parts. *See, e.g.*, *Sperry v. Crompton Corp.*, 863 N.E.2d 1012, 1018 (N.Y. 2007) (finding that "the connection between the purchaser of tires and the producers of chemicals used in the rubber-making process is simply too attenuated to support" an unjust enrichment claim); *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 737-38 (S.D.N.Y. 2013); *Bristol Vill., Inc. v. La.-Pac. Corp.*, 916 F. Supp. 2d 357, 367 (W.D.N.Y. 2013); *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 747 (N.Y. 2012); *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1111 (N.Y. 2011). Federal courts, including courts in this District, have consistently dismissed New York unjust enrichment claims in such circumstances. *See, e.g.*, *Compressors II*, 2013 WL 1431756, at *25– 26; *M+J Savitt, Inc. v. Savitt*, No. 08 Civ. 8535 (DLC), 2009 WL 691278, at *10 (S.D.N.Y. Mar. 17, 2009) (Exh.

J-50); *Kaye*, 202 F.3d at 616; *Brenner*, 821 F. Supp. 2d at 540–41. As explained in Section V.B.2, *supra*, this Court should do the same here.

Second, the IPPs' New York unjust enrichment claims also require dismissal because, as explained in Section V.B.3, *supra*, there can be no unjust enrichment where the IPPs do not allege that they have failed to receive the benefit of their bargains: Bearings at the agreed prices. *See One Step Up, Ltd. v. Webster Bus. Credit Corp.*, 925 N.Y.S.2d 61, 70 (App. Div. 2011).

### 6. IPPs' Antitrust, Consumer Protection, and Unjust Enrichment Claims Are Also Barred in Whole or in Part by New York's Statute of Limitations

A four-year statute of limitations applies to New York antitrust claims, N.Y. Gen. Bus. Law § 340(5), and a three-year statute of limitations applies to New York consumer protection and unjust enrichment claims. N.Y. C.P.L.R. § 214(2); *see* Section VI, *supra*. The IPPs' claims cannot extend beyond this period because they fail to sufficiently allege with particularity affirmative acts of concealment, "reasonable reliance," and "due diligence . . . in ascertaining the facts." *Pahlad v. Brustman*, 33 A.D.3d 518, 519-20 (N.Y. App. Div. 2006); *Zoe G. v. Frederick F. G.*, 208 A.D.2d 675, 675 (N.Y. App. Div. 1994). New York's statute of limitations thus bars the IPPs' claims for damages based on purchases prior to May 23, 2008 (antitrust), and May 23, 2009 (consumer protection and unjust enrichment).

### U. North Carolina

#### 1. IPPs Lack Antitrust Standing Under North Carolina Antitrust Law

North Carolina courts apply an *AGC*-like standing analysis to claims brought by antitrust plaintiffs. This test examines: (1) whether plaintiff has adequately alleged causation; (2) the speculative nature of plaintiff's claims; and (3) the complexity of apportioning damages. *Teague v. Bayer AG*, 671 S.E.2d 550, 557-58 (N.C. Ct. App. 2009); *see also Weaver v. Cabot Corp.*, No. 03 CVS 04760, 2004 WL 3406119, at *1 (N.C. Super. Ct. Mar. 26, 2004) (Exh. J-51) (holding

that plaintiffs' alleged injury was too remote).  In *Teague*, the court found the indirect purchaser

plaintiff had standing where the plaintiff alleged that the price-fixed product was a "significant

component part" of the finished product that he purchased.  *Teague*, 671 S.E.2d at 558 (noting

that the "significant component part" at issue allegedly made up 80-85% of the finished good

plaintiff bought).  Here, as discussed in Section IV, *supra*, Bearings account for only an

extremely minor portion of the overall make-up and cost of an automobile, as ADs' meager

allegation that "Bearings comprise *a not insignificant* portion of the cost of a vehicle" belies.

(AD CCC ¶241.) (emphasis added).  Due to the failure to sufficiently allege causation and the

inherently speculative nature of their allegations, the IPPs' North Carolina antitrust claims must

be dismissed.

> **2.    IPPs Fail to Allege a Sufficient Nexus Between Defendants' Conduct and Intrastate Commerce and Thus Cannot State a Consumer Protection Claim Under North Carolina Law**

The consumer protection laws of North Carolina address "primarily local concerns."

*Duke Energy Int'l, L.L.C. v. Napoli*, 748 F. Supp. 2d 656, 677 (S.D. Tex. 2010) (quoting *ITCO*

*Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 48, n.9 (4th Cir. 1983)); *see also "In" Porters, S.A. v.*

*Hanes Printables, Inc.*, 663 F. Supp. 494, 502 (M.D.N.C. 1987) (same).  These local concerns

must have no more than "an occasional incidental, but not excessive, effect on interstate

commerce . . . ." *ITCO*, 722 F.2d at 48, n.9; *see also "In" Porters*, 663 F. Supp. at 50.  Thus, no

claim can be stated under the North Carolina consumer protection laws unless any effects are

primarily intrastate, and only incidentally interstate.  Of course, as discussed above, that is not

what the IPPs allege.  They address nationwide effects, effects that reach North Carolina no more

than any other state.  Nor do the Complaints allege misconduct in North Carolina or any

transactions involving the Defendants in North Carolina.

3.    **IPPs' North Carolina Unjust Enrichment Claims Fail for Two Reasons**

First, with exceptions not applicable here, North Carolina courts "ha[ve] limited the scope of a claim of unjust enrichment such that the benefit conferred must be conferred directly from plaintiff to defendant, not through a third party." *Baker Constr. Co. v. City of Burlington*, No. COA09-13, 2009 WL 3350747, at *6 (N.C. Ct. App. Oct. 20, 2009) (Exh. J-19).  The IPPs do not and cannot allege that they conferred a direct benefit on Defendants.  *See* Section V.B.2, *supra*; *see also Aftermarket Filters*, 2010 WL 1416259, at *2–3; *Flonase II*, 692 F. Supp. 2d at 546; *cf. In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 287 (D. Mass. 2004) ("*Relafen I*").

Further, the IPPs' unjust enrichment claims should be dismissed because the IPPs do not allege that they have failed to receive that for which they bargained:  Bearings at the agreed prices.  *See Britt v. Britt*, 359 S.E.2d 467, 471 (N.C. 1987), *overruled on other grounds by Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 374 S.E.2d 385 (N.C. 1988); Section V.B.3, *supra*.

4.    **IPPs' Antitrust, Consumer Protection, and Unjust Enrichment Claims Are Also Barred in Whole or In Part by North Carolina's Statute of Limitations**

A four-year statute of limitations applies to North Carolina antitrust, consumer protection, and unjust enrichment claims.  N.C. Gen. Stat. § 75-16.2; *see* Section VI, *supra*.  The IPPs' claims cannot extend beyond this period because they fail to sufficiently allege with particularity affirmative acts of concealment, "reasonable and detrimental reliance" and due diligence.  *Yancey v. Remington Arms Co., LLC*, Nos. 1:12CV477, 1:12CV437, 1:12CV918, 2013 WL 5462205, at *5 (M.D. N.C. Sept. 30, 2013) (Exh. J-5); *Wilkerson*, 2008 WL 483445, at *12; *Crawford v. Paul Davis Restoration Triad Inc.*, No. COA02-1040, 2003 WL 21436156, at *4 (N.C. App. June 17, 2003) (Exh. J-52); *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 317

S.E.2d 41, 44 (N.C. Ct. App. 1984). North Carolina's statute of limitations thus bars claims for damages based on purchases prior to May 23, 2008.

### 5.   IPPs Lack Antitrust Standing Under North Dakota Antitrust Law

The *AGC* factors apply to North Dakota antitrust law. In *Beckler v. Visa U.S.A., Inc.*, a North Dakota District court applied all five *AGC* factors to dismiss claims as "far too remote to provide antitrust standing." No. 09-04-C-00030, 2004 WL 2475100, at *6 (N.D. Dist. Ct. Sept. 21, 2004) (Exh. J-6). Since the *AGC* factors weigh against antitrust standing, as discussed in Section IV, *supra*, the Court should dismiss the IPPs' claims under North Dakota antitrust law.

### 6.   IPPs' North Dakota Unjust Enrichment Claims Fail for Three Reasons

As an initial matter, the IPPs' North Dakota unjust enrichment claims are deficient because they fail to allege the five required elements, including, *inter alia*, "[a]bsence of a justification for the enrichment and the impoverishment," and "absence of a remedy provided by law." *Schroeder v. Buchholz*, 622 N.W.2d 202, 207 (N.D. 2001); *Apache Corp. v. MDU Res. Grp., Inc.*, 603 N.W.2d 891, 894–95 (N.D. 1999). Further, the IPPs must allege that they conferred a "direct" benefit on Defendants, *see Apache Corp.*, 603 N.W.2d at 895; *cf. In re Relafen Antitrust Litig.*, 225 F.R.D. 14, 28 (D. Mass. 2004) ("*Relafen II*"). The IPPs do not and cannot do so here. *See* Section V.B.2, *supra*. The IPPs' claims also should be dismissed because there can be no unjust enrichment where, as here, the IPPs do not allege that they have failed to receive the benefit of their bargains: Bearings at agreed prices. *See Jerry Harmon Motors, Inc. v. Heth*, 316 N.W.2d 324, 328 (N.D. 1982); Section V.B.3, *supra*.

### 7.   IPPs' Antitrust and Unjust Enrichment Claims Are Also Barred in Whole or in Part by North Dakota's Statute of Limitations

A four-year statute of limitations applies to North Dakota antitrust and unjust enrichment claims. N.D. Cent. Code § 51-08.1-10(1); *see* Section VI, *supra*. The IPPs' claims cannot

extend beyond this period because they fail to sufficiently allege with particularity "some affirmative act or representation designed to prevent, and which does in fact prevent, discovery of the cause of action," and the use of "reasonable diligence." *Roether v. Nat'l Union Fire Ins. Co.*, 200 N.W. 818, 822 (N.D. 1924). North Dakota's statute of limitations thus bars the IPPs' claims for damages based on purchases prior to May 23, 2008.

## V.    Oregon

### 1.    IPPs Lack Antitrust Standing Under Oregon Antitrust Law

Oregon's harmonization statute requires courts to interpret Oregon antitrust law consistent with federal law and, hence, in accordance with *AGC*. *See* Or. Rev. Stat. Ann. § 646.715(2) ("The decisions of federal courts in construction of federal law relating to the same subject shall be persuasive authority in the construction of [Oregon's Sherman Act § 1 analog]."); *see also N.W. Med. Labs., Inc. v. Blue Cross & Blue Shield of Or., Inc.*, 794 P.2d 428, 433 (Or. 1990) (requiring courts to "look to federal caselaw" when interpreting and applying Oregon antitrust law); *In re Magnesium Oxide*, 2011 WL 5008090, at *7 n.9. Accordingly, the Court should dismiss the Oregon antitrust claims for the reasons articulated in Section IV, *supra*.

### 2.    IPPs' Oregon Unjust Enrichment Claims Fail Because IPPs Received the Benefit of Their Bargains

Oregon courts also bar recovery for unjust enrichment where a plaintiff has received that for which it bargained. *See Winters v. Cnty. of Clatsop*, 150 P.3d 1104, 1108 (Or. Ct. App. 2007); *see also High v. Davis*, 584 P.2d 725, 736 (Or. 1978) (en banc). As explained in Section V.B.3, *supra*, the IPPs do not allege that they have failed to receive the benefit of what they bargained and paid for: Bearings at the agreed prices.

### 3. IPPs' Antitrust and Unjust Enrichment Claims Are Also Barred in Whole or in Part by Oregon's Statute of Limitations

A four-year statute of limitations applies to Oregon antitrust and unjust enrichment claims. Or. Rev. Stat. Ann. § 646.140; *see* Section VI, *supra.* The IPPs' claims cannot extend beyond this period because they fail to sufficiently allege with particularity affirmative acts of concealment and due diligence. *Chaney v. Fields Chevrolet Co*, 503 P.2d 1239, 1241 (Or. 1972); *see also Kante v. Nike, Inc.*, CV 07-1407-HU, 2008 WL 5246090, at *5 (D. Or. Dec. 16, 2008) *aff'd sub nom. Azewen-Jik Kante v. Nike, Inc.*, 364 F. App'x 388 (9th Cir. 2010) (Exh. J-53). Thus, Oregon's statute of limitations bars the IPPs' claims for damages based on purchases prior to May 23, 2008.

### W. Rhode Island

#### 1. EPs' Rhode Island Unjust Enrichment Claim Fails for Two Reasons

To establish a Rhode Island unjust enrichment claim, the EPs must allege that they conferred a "direct" benefit on Defendants. *See Bouchard v. Price*, 694 A.2d 670, 673 (R.I. 1997); *Compressors II*, 2013 WL 1431756, at *25–26; Section V.B.2, *supra*.

Further, as explained in Section V.B.3, *supra*, the EPs may not recover for unjust enrichment under Rhode Island law because they do not allege that they have failed to receive the benefit of their bargains: Bearings at the agreed prices. *See Rosetta v. Morretti*, No. 98-89, 2005 WL 1109638, at *8 (R.I. Super. Ct. May 4, 2005) (Exh. J-54).

#### 2. EPs' Consumer Protection and Unjust Enrichment Claims Are Barred in Whole or in Part by Rhode Island's Statute of Limitations

A four-year statute of limitations applies to Rhode Island consumer protection and unjust enrichment claims. R.I. Gen. Laws § 6-36-23; *see* Section VI, *supra*. The EPs' claims cannot extend beyond this period because they fail to sufficiently allege with particularity affirmative acts of concealment, reasonable reliance and due diligence. *Ryan v. Roman Catholic Bishop of*

75

*Providence*, 941 A.2d 174, 182-83 (R.I. 2008) (plaintiff must plead affirmative acts with particularity to toll statute of limitations); *Martin v. Howard*, 784 A.2d 291, 302 (R.I. 2001) (plaintiff must plead due diligence with particularity to toll statute of limitations).   Rhode Island's statute of limitations thus bars the EPs' claims for damages based on purchases prior to May 23, 2008.

> ### X.   South Carolina
>
> #### 1.   ADs Cannot Maintain Their Consumer Protection Claim as a Class Action Under South Carolina Law

The ADs bring a claim under the "South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq.*"   (AD CCC ¶ 318.)   However, South Carolina has barred class action relief under its consumer protection statute.   *See* S.C. Code Ann. § 39-5-140(a) ("Any person who suffers any ascertainable loss of money or property . . . as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by [Section] 39-5-20 may bring an action individually, *but not in a representative capacity*, to recover actual damages.") (emphasis added).

Because South Carolina's prohibitions on consumer protection law class actions "appear in the very statutes that define the substantive rights at issue" they "survive *Shady Grove* and should continue to be enforced."   *Packaged Ice*, 779 F. Supp. 2d at 661 n.4.   Although *Wire Harnesses II* cited *In re Optical Disk Drive Antitrust Litigation*, No. 3:10-md-2143 RS, 2012 WL 1366718 (N.D. Cal. Apr. 19, 2012) (Exh. J-55), as authority that "rejected South Carolina's class prohibition as a basis for dismissal of a class action" in light of *Shady Grove*, *Wire Harnesses II*, 2013 WL 2456612, at *30, the *Optical Disk Drive* decision included no analysis of the issue. *See* 2012 WL 1366718, at *8.   More recent authority from a South Carolina federal district court has applied South Carolina's class action bar to dismiss class action claims in federal court

brought under South Carolina's consumer protection law.  *See In re MI Windows & Doors, Inc. Prods. Liab. Litig.*, No. 2:11-cv-00167-DCN, 2012 WL 5408563, at *5 & n.3 (D.S.C. Nov. 6, 2012) (Exh. J-18).   Thus, the ADs' S.C. consumer protection class action claim should be dismissed.

### 2.    ADs' South Carolina Unjust Enrichment Claim Fails for Three Reasons

First, South Carolina law requires that a "plaintiff . . . establish the existence of a duty owed to him or her by the defendant."  *In re Microsoft Corp. Antitrust Litig.*, 401 F. Supp. 2d 464, 464–65 (N.D. Cal. 1975).  The IPPs do not plead this element of their claim.  They allege only that "Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq*." (AD CCC ¶ 318.)  Thus, their complaint does not state a claim for relief.

Second, under South Carolina unjust enrichment law, the IPPs must also allege they conferred a "direct" benefit on Defendants.  *See Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 532 S.E.2d 868, 873 (S.C. 2000); *Kunzelmann v. Wells Fargo Bank, N.A.*, No. 9:11-cv-81373-DMM, 2013 WL 139913, at *10 (S.D. Fla. Jan. 10, 2013) (Exh. J-49); *Doll,* 814 F. Supp. 2d at 551–52.  The IPPs do not and cannot allege they conferred such a benefit.  *See* Section V.B.2, *supra*.

Third, as explained in Section V.B.3, *supra*, the IPPs may not recover for unjust enrichment where, as here, they do not allege that they have failed to receive the benefit of their bargains:  Bearings at the agreed prices.  *See Johnston v. Brown*, 348 S.E.2d 391, 395 (S.C. Ct. App. 1986), *rev'd on other grounds*, 357 S.E.2d 450 (S.C. 1987).

### 3. ADs' Consumer Protection and Unjust Enrichment Claims Are Also Barred in Whole or in Part by South Carolina's Statute of Limitations

A three-year statute of limitations applies to South Carolina consumer protection and unjust enrichment claims. S.C. Code Ann. § 39-5-150; *see* Section VI, *supra.* The ADs' claims cannot extend beyond this period because they fail to sufficiently allege with particularity: (i) "deliberate acts of deception by a defendant calculated to conceal from a potential plaintiff that he has a cause of action thereby inducing him to postpone institution of suit;" and (ii) that ADs acted with "reasonable diligence." *Strong v. Univ. of S.C. Sch. of Med.*, 447 S.E.2d 850, 852 (S.C. 2002) (quotation omitted). South Carolina's statute of limitations thus bars the ADs' claims for damages based on purchases prior to May 23, 2009.

## Y. South Dakota

### 1. IPPs Lack Antitrust Standing Under South Dakota Antitrust Law

South Dakota courts apply the *AGC* factors to determine antitrust standing. *Cornelison v. Visa U.S.A. Inc.*, Hearing Transcript, No. CIV 03-1350, at 54-55 (S.D. Cir. Ct. 2004) (Exh. J-12); *DRAM II*, 536 F. Supp. 2d at 1134-42; *see also In re S.D. Microsoft Antitrust Litig.*, 707 N.W.2d 85, 99 (S.D. 2005) ("'[B]ecause of the similarity of language between federal and state antitrust statutes and because of the legislative suggestion for interpretation found in S.D. Codified Laws § 37-1-22, great weight should be given to the federal cases interpreting the federal statute.'") (quoting *Byre v. City of Chamberlain*, 362 N.W.2d 69, 74 (S.D. 1985)). Since the IPPs fail to satisfy the antitrust standing requirements under *AGC*, the Court should dismiss the IPPs' South Dakota antitrust claims, as discussed in Section IV, *supra.*

>           2.      **IPPs Cannot Successfully Allege Antitrust Claims under South
>                   Dakota Law Because They Fail to Allege a Sufficient Nexus to
>                   Intrastate Commerce**

Under South Dakota antitrust law, the IPPs must allege that anti-competitive effects have occurred within the state. *See* S.D. Codified Laws § 37-1-3.1 ("[A] contract, combination, or conspiracy between two or more persons in restraint of trade or commerce any part of which is within this state is unlawful."). In *DRAM I*, 516 F. Supp. 2d at 1099, the court dismissed plaintiffs' South Dakota antitrust claims because plaintiffs failed to "specifically allege any conduct or conspiracy that takes place, or has any effect within South Dakota."

In *Wire Harnesses II*, the Court cited *GPU II,* 540 F. Supp. 2d at 1099, to determine whether the intrastate nexus requirement was satisfied in that case. 2013 WL 2456612, at *20. But the *GPU II* plaintiffs alleged that defendants "promoted and sold GPUs and graphics cards in [South Dakota]." *GPU II*, 540 F. Supp. 2d at 1099. The IPPs here have made no such allegation; the EPs do not even allege that affected Bearings were purchased in South Dakota. (*See* EP CCAC ¶ 261.) The IPPs' claims under South Dakota antitrust law thus fail to allege a sufficient nexus to intrastate commerce and should be dismissed.

>           3.      **IPPs' South Dakota Unjust Enrichment Claims Fail Because
>                   Defendants Provided Consideration to IPPs for any Benefit Received**

The IPPs' South Dakota unjust enrichment claims should be dismissed because, as explained in Section V.B.4, *supra*, there can be no unjust enrichment where Defendants provided consideration (Bearings) for the benefit they received (money). *See Parker v. W. Dakota Insurors, Inc.*, 605 N.W.2d 181, 187 (S.D. 2000).

>           4.      **IPPs' Antitrust and Unjust Enrichment Claims Are Also Barred in
>                   Whole or in Part by South Dakota's Statute of Limitations**

A four-year statute of limitations applies to South Dakota antitrust and unjust enrichment claims. S.D. Codified Laws § 37-1-14.4; *see* Section VI, *supra*. The IPPs' claims cannot extend

79

beyond this period because they fail to sufficiently allege with particularity (1) some affirmative act or conduct designed to prevent, and which does prevent, discovery of the cause of action, and (2) the "exercise[] [of] diligence to discover the cause of action." *Hinkle v. Hargens*, 81 N.W.2d 888, 891 (S.D. 1957); *Strassburg v. Citizens State Bank*, 581 N.W.2d 510, 515 (S.D. 1998) (fraudulent concealment requires affirmative acts of concealment, and that the plaintiff "nonetheless exercised diligence to discover the cause of action."). South Dakota's statute of limitations thus bars the IPPs' claims for damages based on purchases prior to May 23, 2008.

> **Z.     Tennessee**

> > **1.     IPPs Lack Antitrust Standing Under Tennessee Antitrust Law**

Tennessee courts apply *AGC* to determine antitrust standing. *See Tenn. Med. Ass'n v. Blue Cross Blue Shield of Tenn., Inc.*, 229 S.W.3d 304, 311 (Tenn. Ct. App. 2007). In that case, the Tennessee Court of Appeals applied *AGC* to determine whether plaintiffs had standing to sue under Tennessee's consumer protection law, and stated, without regard to plaintiffs' status, that "[t]he same proximate cause standard governs Plaintiffs' statutory claims under [the Tennessee antitrust act]." *Id.* at 311. (quoting *Perry v. Am. Tobacco Co.*, 324 F.3d 845, 851 (6th Cir. 2003)); *see also Roberson v. Medtronic*, 494 F. Supp. 2d 864, 870 (W.D. Tenn. 2007) (citing *AGC* for the proposition that "merely alleging violations of the antitrust laws is not enough to sustain a private antitrust claim" and that "Plaintiff must also establish antitrust injury."); *In re Magnesium Oxide*, 2011 WL 5008090, at *7 n.9. Based on the discussion in Section IV, *supra*, the Court should dismiss IPPs' Tennessee antitrust claims.

> > **2.     EPs Cannot Successfully Allege an Antitrust Claim Under Tennessee Law Because They Fail to Allege a Sufficient Nexus to Intrastate Commerce**

*Wire Harnesses II* recognized that in order to state a claim under Tennessee's antitrust law, plaintiffs must allege "substantial effects" in Tennessee. 2013 WL 2456612, at *20. *Wire*

*Harnesses II* accordingly found that the IPPs' allegations under Tennessee antitrust law were sufficient because "in-state IPPs allege they purchased vehicles containing price-fixed products in Tennessee." 2013 WL 2456612, at *20. Here, no EP alleges that he or she bought Bearings in Tennessee. (*See* EP CCAC ¶ 232.) Although there is one named EP who resides in Tennessee, there is no allegation that he purchased affected products *in Tennessee*. (*See* EP CCAC ¶ 60.) The failure of the EPs to allege that any Plaintiff "purchased vehicles containing price-fixed products *in Tennessee*" is fatal to their Tennessee antitrust claim. 2013 WL 2456612, at *20 (emphasis added).

### 3.      IPPs' Tennessee Unjust Enrichment Claims Fail for Two Reasons

In Tennessee, unjust enrichment claimants must allege that they exhausted their remedies against the parties with whom they had privity of contract, or that attempts at exhaustion would have been futile. *See Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525-26 (Tenn. 2005). Here, the IPPs fail to plead either of these elements. The ADs do no more than conclusorily plead "bare allegations" (AD CCC ¶ 325), while the EPs plead nothing at all regarding exhaustion.

Additionally, as explained in Section V.B.4, *supra*, the IPPs may not recover for unjust enrichment under Tennessee law because Defendants provided consideration (Bearings) for any benefit received (money). *See Paschall's Inc.*, 407 S.W.2d at 155; *McKee v. Meltech, Inc.*, No. 10-2730, 2011 WL 1770461, at *10 (W.D. Tenn. May 9, 2011) (Exh. J-56); *Weather Doctor Servs. Co. v. Stephens*, No. E2000-01427-COA-R3-CV, 2001 WL 849540, at *2– 3 (Tenn. Ct. App. July, 27, 2001) (Exh. J-57).

### 4.    IPPs' Antitrust and Consumer Protection Claims Are Barred in Whole or in Part by Tennessee's Statute of Limitations

A three-year statute of limitations applies to Tennessee antitrust and unjust enrichment claims.  Tenn. Code Ann. § 28-3-105; *see* Section VI, *supra.*  The IPPs' claims cannot extend beyond this period because they fail to sufficiently allege with particularity (i) an "affirmative action on the part of the defendant [that is] something more than mere silence or a mere failure to disclose the known facts"; and (ii) "reasonable care and diligence."  *Shadrick v. Coker*, 963 S.W.2d 726, 735 (Tenn. 1998).  Tennessee's statute of limitations thus bars the IPPs' claims for damages based on purchases prior to May 23, 2009.

### AA.    Utah

### 1.    IPPs Lack Antitrust Standing Under Utah Antitrust Law

Utah antitrust law requires that courts "be guided by interpretations given by the federal courts to comparable federal antitrust statutes and by other state courts to comparable state antitrust statutes."  Utah Code Ann. § 76-10-3118.  Considering the acceptance of *AGC* by both federal and state courts, a district court recently applied federal antitrust standing principles to dismiss a claim under Utah law.  *See, e.g.*, *In re Magnesium Oxide*, 2011 WL 5008090, at *7 n.9. Since the *AGC* factors weigh against antitrust standing, as discussed in Section IV, *supra*, the Court should dismiss IPPs' Utah antitrust claims.

### 2.    IPPs' Utah Unjust Enrichment Claims Fail for Four Reasons

Under Utah law, a claim for unjust enrichment is permissible only where there is no adequate remedy at law.  *See, e.g.*, *Mann v. Am. W. Life Ins. Co.*, 586 P.2d 461, 465 (Utah 1978); *Ockey v. Lehmer*, 189 P.3d 51, 61 n.42 (Utah 2008).  Utah courts have explicitly applied this rule to bar unjust enrichment claims where there is a contract addressing the transaction at issue, even when the contract is not between the parties to the litigation.  *See Am. Towers Owners Ass'n, Inc.*

82

*v. CCI Mech., Inc.*, 930 P.2d 1182, 1193 (Utah 1996), *abrogated on other grounds by Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 221 P.3d 234 (Utah 2009); *Nickerson Co. v. Energy W. Mining Co.*, No. 20090221–CA, 2009 WL 4681778, at *2 (Utah Ct. App. Dec. 10, 2009) (Exh. J-58).   Because the IPPs do not allege the absence of an adequate legal remedy nor the absence of a contract governing their purchases of Bearings, the IPPs' Utah unjust enrichment claims should be dismissed.

Second, the IPPs must allege that they conferred a "direct" benefit on Defendants. *Concrete Prods. Co. v. Salt Lake Cnty.*, 734 P.2d 910, 911–12 (Utah 1987); *cf. FTC v. Mylan Labs., Inc.*, 62 F. Supp. 2d 25, 52 (D.D.C. 1999).   Utah's direct benefit requirement has been found satisfied without contractual privity only in limited circumstances not present here, such as when the benefit provided by the plaintiff satisfied a duty owed by the defendant to the recipient.   *See, e.g.*, *Emergency Physicians Integrated Care v. Salt Lake Cnty.*, 167 P.3d 1080, 1086 (Utah 2007). IPPs do not and cannot allege that they conferred a direct benefit of any kind on Defendants.  *See* Section V.B.2, *supra*.

Third, as explained in Section V.B.3, *supra*, there is no unjust enrichment where, as here, the IPPs do not allege that they have failed to receive the benefit of their bargains: Bearings at the agreed prices.   *See S. Title Guar. Co. v. Bethers*, 761 P.2d 951, 955 (Utah Ct. App. 1988); *Bray Lines Inc. v. Utah Carriers, Inc.*, 739 P.2d 1115 (Utah Ct. App. 1987).

Fourth, under Utah law, a claim for unjust enrichment will not lie where the defendant provided consideration for the benefit it received.  *See Am. Movie Classics v. Rainbow Media Holdings*, 508 F. App'x 826, 833–34 (10th Cir. 2013); *Nickerson*, 2009 WL 4681778, at *2. The IPPs concede that Defendants provided consideration (Bearings) for the benefit they received (money).  *See* Section V.B.4, *supra*.

**3.     IPPs Cannot Assert Retroactive Antitrust Claims for Conduct Occurring Prior to Utah's 2006 Statutory Enactment, and IPPs' Unjust Enrichment Claims Are Barred in Whole or in Part by Utah's Statute of Limitations**

Utah enacted its indirect purchaser statute on May 1, 2006, and did not provide for retroactive application. Utah Code Ann. § 76-10-3109; Utah Code Ann. § 68-3-3 ("A provision of the Utah Code is not retroactive, unless the provision is expressly declared to be retroactive."). Courts have subsequently limited damages under Utah's antitrust law to conduct occurring after the statute's effective date. *See Wire Harnesses II*, 2013 WL 2456612, at *19. This Court, therefore, should deny recovery under Utah antitrust law for damages relating to conduct occurring prior to May 1, 2006.

Further, a four-year statute of limitations applies to Utah antitrust and unjust enrichment claims. Utah Code Ann. § 7610-925; *see* Section VI, *supra.* The IPPs' claims cannot extend beyond this period because they fail to sufficiently allege with particularity affirmative acts of concealment and due diligence. *See Russell/Packard Dev., Inc. v. Carson*, 78 P.3d 616, 621, 108 P.3d 741 (Utah 2007); *Colosimo v. Roman Catholic Bishop of Salt Lake City*, 156 P.3d 806, 817 (Utah 2007); *Berenda v. Langford*, 914 P.2d 45, 51–52 (Utah 1996). Utah's statute of limitations thus bars the IPPs' claims for damages based on purchases prior to May 23, 2008.

**BB.     Vermont**

**1.     IPPs Lack Antitrust Standing Under Vermont Antitrust Law**

Vermont's antitrust law is construed exclusively by reference to federal court Sherman Act decisions. Accordingly, Vermont courts apply the *AGC* factors to determine standing under Vermont antitrust and consumer protection law. *See Fucile v. Visa U.S.A. Inc.*, No. S1560-03 CNC, 2004 WL 3030037, at *2-4 (Vt. Super. Ct. Dec. 27, 2004) (Exh. J-7). The Court should

apply *AGC* to dismiss IPPs' Vermont antitrust claims for lack of standing for the reasons explained in Section IV, *supra*.

### 2. IPPs' Vermont Unjust Enrichment Claims Fail Because IPPs Received Consideration for the Benefit Conferred

Vermont courts have held that plaintiffs may not recover for unjust enrichment if they received consideration for the benefit that they conferred.  *See Ray Reilly's Tire Mart, Inc. v. F.P. Elnicki, Inc.*, 537 A.2d 994, 995 (Vt. 1987); *Will v. Mill Condo. Owners Ass'n, Inc.*, No. 457-10-01 WRCV, 2002 WL 34340312 (Vt. Super. Ct. July 5, 2002) (Exh. J-59); *Morrisville Lumber Co. v. Okcuoglu*, 531 A.2d 887, 889 (Vt. 1987).  IPPs here concede that they received consideration (Bearings) for the benefit they conferred (money). *See* Section V.B.4, *supra*.

### 3. IPPs' Antitrust, Consumer Protection, and Unjust Enrichment Claims Are Barred in Whole or in Part by Vermont's Statute of Limitations

A six-year statute of limitations applies to Vermont antitrust, consumer protection, and unjust enrichment claims. 12 Vt. Stat. Ann. § 511; *see* Section VI, *supra*.  The IPPs' claims cannot extend beyond this period because they fail to sufficiently allege with particularity:  (i) an act of concealment with "an affirmative character designed to prevent, and which does prevent, the discovery of the cause of action" and (ii) the "exercise of ordinary diligence."  *Watts v. Mulliken's Estate*, 115 A. 150, 152 (Vt. 1921); *Rodrigue v. Valco Enter.*, 726 A.2d 61, 64 (Vt. 1999).  Vermont's statute of limitations thus bars the IPPs' claims for damages based on purchases prior to May 23, 2006.

### CC. West Virginia

### 1. IPPs Lack Antitrust Standing Under West Virginia Antitrust Law

The West Virginia Antitrust Act instructs courts that it "shall be construed . . . in harmony with ruling judicial interpretations of comparable federal antitrust statutes."  W. Va.

Code Ann. § 47-18-16.  Thus, state and federal courts, including courts in this District, construe West Virginia antitrust law in accordance with federal law, including *AGC*.  *See Kessel v. Monongalia Cnty. Gen. Hosp. Co.*, 648 S.E.2d 366, 374 (W. Va. 2007); *Princeton Ins. Agency, Inc. v. Erie Ins. Co.*, 690 S.E.2d 587, 598-600 (W. Va. 2009); *Compressors II*, 2013 WL 1431756, at *10-15.  Since the IPPs fail to satisfy the *AGC* test, as discussed in Section IV, *supra*, the Court should dismiss the West Virginia antitrust claims.

### 2.      EPs Fail to Allege a Sufficient Nexus to Intrastate Commerce

The West Virginia Supreme Court has held that "West Virginia's antitrust law is directed towards *intrastate* commerce."  *West Virginia ex rel. Palumbo v. Graley's Body Shop, Inc.*, 425 S.E.2d 177, 183 n.11 (W.Va. 1992) (citing *Anziulewicz v. Bluefield Cmty. Hosp., Inc.*, 531 F. Supp. 49, 53 (S.D.W.V. 1981) (internal quotations omitted)).  Here, the IPPs fail to allege a specific nexus between the alleged conspiracy and *intrastate* commerce in West Virginia.  Rather, as previously discussed, the IPPs have repeatedly pleaded facts showing that the conduct alleged was *interstate* in nature.  (*See, e.g.*, AD CCC ¶¶ 20, 262*;* EP CCAC ¶ 16.)  In *Wire Harnesses II,* the Court found that the complaints satisfied the West Virginia standard where IPPs "allege an effect on West Virginia commerce."  2013 WL 2456612, at *21.  However, the EPs in this case fail to allege the purchase or sale of any Bearings in West Virginia and, further, fail to allege the location of the sellers of the affected Bearings.  (*See* EP CCAC ¶ 235.)  The EPs thus fail to show that *intrastate* commerce in West Virginia is affected by the alleged conspiracy.

### 3.      IPPs' West Virginia Unjust Enrichment Claims Fail Because They Fall Short of West Virginia's Pleading Requirements

The IPPs' West Virginia unjust enrichment claims fail because West Virginia requires a plaintiff to specifically allege not only that a defendant's retention of a benefit is "inequitable and unconscionable" but "how."  *Wittenberg v. First Indep. Mortg. Co.*, No. 3:10–CV–58, 2011

86

WL 1357483, at *15 (N.D. W. Va. Apr. 11, 2011) (Exh. J-28). Because the IPPs do not plead these elements, their unjust enrichment claims warrant dismissal.

### 4. IPPs' Antitrust and Unjust Enrichment Claims Are Also Barred in Whole or in Part by West Virginia's Statute of Limitations

A four-year statute of limitations applies to West Virginia antitrust and unjust enrichment claims. W. Va. Code Ann. § 47-18-11; *see* Section VI, *supra*. The IPPs' claims cannot extend beyond this period because they fail to sufficiently allege with particularity "obstruction by the defendant . . . by a positive act"—as "mere silence will not constitute obstruction sufficient to toll the running of the statute of limitations"—or due diligence. *Sattler v. Bailey*, 400 S.E.2d 220, 228-29 (W. Va. 1990). West Virginia's statute of limitations thus bars the IPPs' claims for damages based on purchases prior to May 23, 2008.

### DD. Wisconsin

#### 1. IPPs Lack Antitrust Standing Under Wisconsin Antitrust Law

The *AGC* factors apply to claims under Wisconsin antitrust law. *See Strang v. Visa U.S.A. Inc.*, No. 03 CV 011323, 2005 WL 1403769, at *3-5 (Wis. Cir. Ct. Feb. 8, 2005) (Exh. J-16); *Compressors II*, 2013 WL 1431756, at *10-15. For the reasons discussed in Section IV, *supra*, the Court should dismiss IPPs' Wisconsin antitrust claims for lack of antitrust standing.

#### 2. IPPs' Wisconsin Unjust Enrichment Claims Fail Because Defendants Provided Consideration for Any Benefit Received

In Wisconsin, an unjust enrichment claim will not lie where, as here, Defendants have provided consideration (Bearings) for the benefit received (money). *See Tri-State Mech., Inc. v. Northland Coll.*, 681 N.W.2d 302, 305–06 (Wis. Ct. App. 2004); Section V.B.4, *supra*.

### 3. IPPs' Antitrust and Unjust Enrichment Claims Are Also Barred in Whole or in Part by Wisconsin's Statute of Limitations

A six-year statute of limitations applies to Wisconsin antitrust and unjust enrichment claims. Wisc. Stat. Ann. § 133.18(2); *see* Section VI, *supra*. The IPPs' claims cannot extend beyond this period because they fail to sufficiently allege with particularity affirmative conduct by the Defendants upon which they relied, "and as a result of such reliance failed to commence action within the statutory period" *State ex. Rel. Susedik v. Knutson*, 191 N.W.2d 23, 25-26 (Wis. 1971), and due diligence. *Hinkson v. Sauthoff*, 74 N.W.2d 620, 622 (Wis. 1956). Wisconsin's statute of limitations thus bars claims for damages based on purchases prior to May 23, 2006.

## VIII. IPPS HAVE FAILED TO ALLEGE ANY PLAUSIBLE THREAT OF FUTURE INJURY TO SUPPORT A CLAIM FOR INJUNCTIVE RELIEF

The IPPs seek injunctive relief "preventing and restraining the violations alleged" in their Complaints. (*See* AD CCC ¶ 274; EP CCAC ¶ 207.) The party seeking an injunction has the burden of demonstrating that such relief is necessary. *See, e.g.*, *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) ("[T]he burden is a heavy one"); *In re Nifedipine Antitrust Litig.*, 335 F. Supp. 2d 6, 17 (D.D.C. 2004). Here, IPPs' request for injunctive relief must be dismissed because IPPs fail to allege facts sufficient to show any real or immediate threat of future harm.

To obtain injunctive relief, the IPPs must plead facts that plausibly establish a "likelihood of substantial and immediate injury." *City of L.A. v. Lyons*, 461 U.S. 95, 103, 111 (1988) (holding the "speculative nature" of future injury precluded issuance of an injunction) (internal citations and quotations omitted); *see also* 15 U.S.C. § 26 (adopting standards applicable to request for injunctive relief). "The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *W.T. Grant Co.*, 345 U.S. at 633. This requirement "cannot be met where there is

88

no showing of any real or immediate threat that the plaintiff will be wronged again." *Lyons*, 461 U.S. at 111.

As an initial matter, the IPPs do not allege a single fact to support the inference of a continuing conspiracy or to establish a "real and immediate threat" of future anticompetitive conduct.  The only facts that the IPPs have pleaded regarding the alleged price-fixing conspiracy relate to past foreign conduct, overseas investigations and enforcement actions, and public statements by Defendants acknowledging investigations by the DOJ and others into the Bearings industry.  Tellingly, the IPPs allege a conspiracy from "January 1, 2004 to [the present]," (*see* AD CCC ¶ 3; EP CCAC ¶ 2), but allege no unlawful conduct after 2011—when the government raids and investigations into the Bearings industry became public.  "[P]ast wrongs do not in themselves amount to that real and immediate threat of injury" necessary to obtain injunctive relief.  *Lyons*, 461 U.S. at 103 (internal quotation omitted).  The IPPs' inability to allege any facts to support an inference of a continuing conspiracy should be no surprise, as the DOJ itself has acknowledged that any admitted illegal conduct regarding Bearings to date ended no later than July 2011.  *See, e.g.*, Information ¶ 6, *United States v. JTEKT*, No. 13-CR-104, ECF No. 2 (S.D. Ohio Sept. 26, 2013) (Exh. K-2); Information ¶ 6, *United States v. NSK Ltd.*, No. 13-CR-103, ECF No. 2 (S.D. Ohio Sept. 26, 2013) (Exh. K-3).[35]

---

[35] Further, the facts averred by the IPPs are inconsistent with the IPPs' conclusory allegations regarding a "continuing conspiracy" or threat of future harm.  As the IPPs note, prosecutors and regulators in six jurisdictions, including the United States, are currently investigating whether there has been any anticompetitive conduct related to the sale of Bearings.  (*See* AD CCC ¶¶ 181-212; EP CCAC ¶¶ 124-158.)  In the context of a massive, worldwide investigation into the Bearings industry, it is not plausible—and defies common sense—that any of the Defendants would continue or resume any alleged conspiracy.  The IPPs allege nothing to support the implausible notion that there would be a continuing Bearings conspiracy somehow ongoing under the noses of government investigators around the world.

An injunction is also unnecessary and unwarranted because the IPPs have failed to plead facts alleging that any of them will be wronged again.  Even if a continuing conspiracy existed, the IPPs provide no basis from which to infer that they personally face a substantial and immediate threat of future harm.  *See O'Shea v. Littleton*, 414 U.S. 488, 502 (1974).  None of the IPPs allege that they are likely to purchase Automotive Bearings in the future, much less how each would be harmed by such a purchase.  "The Court is not required to accept plaintiffs' conclusions and inferences [of a continuing violation] if they are unsupported by facts."  *In re Nifedipine Antitrust Litig.*, 335 F. Supp. 2d at 18.

The IPPs have an adequate remedy at law for any injuries suffered.  *See Lyons*, 461 U.S. at 111 (denying injunction where his pending damages suit would offer adequate remedy and claim of future injury was purely speculative).  And to the extent any "lingering price inflation" were to continue, this would be a "natural factor in damages calculations."  *In re Nifedipine Antitrust Litig.*, 335 F. Supp. 2d at 18-19 (noting that "lingering monetary injury, without any ongoing threat of recurrent violations, is not sufficient to confer standing to seek an injunction."). Accordingly, because there are no allegations plausibly supporting an ongoing conspiracy or the threat of real or immediate future harm, the Court should dismiss the IPPs' request for injunctive relief due to lack of standing.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the End Payors' Corrected Consolidated Amended Class Action Complaint and the Dealership Consolidated Class Complaint in their entirety.

Dated:  December 2, 2013

SHEARMAN & STERLING LLP

/s/ Heather L. Kafele
Heather L. Kafele
Keith Palfin
Alison R. Welcher
801 Pennsylvania Avenue
Suite 900
Washington, DC 20004
202-508-8097
202-508-8001 (facsimile)
heather.kafele@shearman.com
keith.palfin@shearman.com
alison.welcher@shearman.com

PAESANO AKKASHIAN, PC

Brian M. Akkashian
132 N. Old Woodward Avenue
Birmingham, MI 48009
248-792-6886
bakkashian@paesanoakkashian.com

**Attorneys for JTEKT Corporation and JTEKT North America Corp. (formerly d/b/a Koyo Corporation of U.S.A.)**

REED SMITH LLP

Debra H. Dermody
Michelle Mantine
Reed Smith Centre
225 Fifth Ave.
Pittsburgh, PA 15222-2716
412-288-3302
ddermody@reedsmith.com
mmantine@reedsmith.com

DYKEMA GOSSETT PLLC

/s/ Howard B. Iwrey (w/ consent)
Howard B. Iwrey (P39635)
Brian M. Moore (P58584)
39577 Woodward Avenue; Suite 300
Bloomfield Hills, MI 48304
248-203-0700

91

hiwrey@dykema.com
bmoore@dykema.com

**Attorneys for Defendant AB SKF**

LANE POWELL PC

/s/ Kenneth R. Davis II (w/consent)
Kenneth R. Davis II
Craig D. Bachman
Darin M. Sands
Masayuki Yamaguchi
ODS Tower
601 SW Second Ave., Suite 2100
Portland, OR  97204-3158
(503) 778-2100
(503) 778-2200 (facsimile)
davisk@lanepowell.com
bachmanc@lanepowell.com
sandsd@lanepowell.com

Larry S. Gangnes
Connor B. Shively
1420 Fifth Avenue, Suite 4100
Seattle, WA  98101-2338
(206) 223-7000
(206) 223-7107 (facsimile)
gangnesl@lanepowell.com
shivelyc@lanepowell.com

KEMP KLEIN LAW FIRM

Richard D. Bisio (P30246)
Ronald S. Nixon (P57117)
201 W. Big Beaver, Suite 600
Troy, MI 48084
 (248) 528-1111
 (248) 528-5129 (facsimile)
richard.bisio@kkue.com
ron.nixon@kkue.com

**Attorneys for Defendants Nachi-Fujikoshi
Corp. and Nachi America, Inc.**

92

WINSTON & STRAWN LLP

/s/ A. Paul Victor (w/consent)
A. Paul Victor (*pro hac vice*)
Jeffrey L. Kessler (*pro hac vice)*
Molly M. Donovan (*pro hac vice)*
Elizabeth A. Cate (*pro hac vice*)
200 Park Avenue
New York, NY 10166
(212) 294-6700
 (212) 294-4700 (facsimile)
pvictor@winston.com
jkessler@winston.com
mmdonovan@winston.com
ecate@winston.com

KERR, RUSSELL AND WEBER

Fred K. Herrmann (P49519)
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
 (313) 961-0200
fkh@krwlaw.com

**Attorneys for Defendants NTN
Corporation and NTN USA Corporation**

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

/s/ Jeremy J. Calsyn (w/consent)
Jeremy J. Calsyn
Mark Leddy
2000 Pennsylvania Avenue, NW
Washington, DC 20006
202-974-1522
jcalsyn@cgsh.com
mleddy@cgsh.com

HONIGMAN, MILLER, SCHWARTZ
AND COHN LLP

David A. Ettinger
660 Woodward Avenue
Suite 2290
Detroit, MI 48226-3506

93

313-465-7368
dettinger@honigman.com

**Attorneys for Defendants NSK Ltd. and NSK Americas, Inc.**

WILMER CUTLER PICKERING HALE AND DORR LLP

<u>/s/ Eric J. Mahr (w/ consent)</u>
Eric J. Mahr
Stacy E. Frazier
1875 Pennsylvania Ave., NW
Washington, DC 20006
202-663-6446
eric.mahr@wilmerhale.com
stacy.frazier@wilmerhale.com

**Attorneys for Defendants Schaeffler AG and Schaeffler Group USA, Incorporated**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 2, 2013, I caused the foregoing DEFENDANTS' COLLECTIVE MOTION TO DISMISS THE END PAYORS' CORRECTED CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND THE DEALERSHIP CONSOLIDATED CLASS ACTION COMPLAINT and MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' COLLECTIVE MOTION TO DISMISS THE END PAYORS' CORRECTED CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND THE DEALERSHIP CONSOLIDATED CLASS ACTION COMPLAINT to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: December 2, 2013

<u>/s/ Heather L. Kafele</u>

95