UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION                            MASTER FILE NO. 12-MD-02311

_____

In re: Bearings                                 HON. MARIANNE O. BATTANI

_____

THIS DOCUMENT RELATES TO:

All Dealership Actions                          2:12-cv-00502
All End-Payor Actions                           2:12-cv-00503
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO
DISMISS THE CONSOLIDATED AMENDED COMPLAINTS**

Before the Court is Defendant SKF USA Inc.'s Motion to Dismiss the Consolidated Amended Class Action Complaints of the Dealership Plaintiffs and the End-Payor Plaintiffs. (Doc. No. 81 in 12-502; Doc. No. 79 in 12-503). Defendant SKF USA Inc. ("SKF USA") alleges that the complaints fail due to the lack of specific allegations against SKF USA and that End-Payor Plaintiffs failed to name SKF USA individually in any of the counts in their complaint.

Defendant waived oral argument on the motion, which was set for June 4, 2014. The Court has reviewed the filings and for the reasons stated below, the motion is **DENIED**.

**I. STATEMENT OF FACTS**

Automobile Dealership Plaintiffs ("ADPs"), and End-Payor Plaintiffs ("EPPs") (collectively referred to as "Indirect Purchaser Plaintiffs" or "IPPs") filed separate

consolidated class action complaints alleging federal and state law claims. Indirect Purchaser Plaintiffs allege Defendants engaged in a conspiracy to inflate, fix, raise, maintain, or artificially stabilize prices of Bearings sold in the United States for which they seek damages and other appropriate equitable relief. Generally, Defendants are in the business of manufacturing or selling Bearings, which are "friction-reducing devices that allow one moving part to glide past another moving part" and are used in the manufacture of automobiles. (Case No. 12-502, Doc. No. 67 at ¶¶ 3, 4; Case No. 503, Doc. No. 70 at ¶¶ 3, 4).

IPPs allege that SKF USA manufactured automotive Bearings and participated in the automotive Bearings market; that the market was conducive to an antitrust conspiracy, that anticompetitive price increases during the Class Period support the existence of a conspiracy; and that the Department of Justice, and European and Korean authorities are investigating SKF USA as well as former Defendant AB SKF's joint automotive bearings enterprise.

Defendant AB SKF is the 100% owner of its subsidiary, SKF USA. (Case No. 12-503, Doc. No. 70 at ¶ 91). Although the Court granted AB SKF's motion to dismiss for lack of personal jurisdiction, the allegations against it remain relevant to the Court's assessment of the viability of the pleadings relative to SKF USA. AB SKF belongs to the World Bearing Association, which is comprised of the seven largest bearing manufacturers in the world. (Case No. 12-502 Doc. No. 67 at ¶ 176; Case No. 12-502, Doc. No. 70 at ¶ 160) The World Bearing Association is neither incorporated nor registered and does not maintain records of meetings. (Case No. 12-502 Doc. No. 67 at ¶ 177; Case No. 12-502, Doc. No. 70 at ¶ 161).

Plaintiffs allege that the structure of the Bearings market is conducive to price-fixing and collusion given the high barriers to entry, inelasticity of demand, high concentration, and numerous opportunities to conspire. (Case No. 12-502, Doc. No. 67 at ¶ 166; Case No. 12-503, Doc. No. 70 at ¶ 115). The complaints further allege that the market for Bearings is controlled by a small number of manufacturers, including AB SKF. (Case No. 12-502, Doc. No. 67 at ¶ 163 ; Case No. 12-503, Doc. No. 70 at ¶ 108). The top three suppliers control 95% of the Bearings market in the United States. (Case No. 12-502 Doc. No. 67 at ¶ 174; Case No. 12-502, Doc. No. 70 at ¶ 123). Moreover, prices for Bearings increased even as auto sales remained flat or sluggish. (Case No. 12-502 Doc. No. 67 at ¶ 133; Case No. 12-502, Doc. No. 70 at ¶ 114).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows district courts to dismiss a complaint which fails "to state a claim upon which relief can be granted." To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff must show that his complaint alleges facts which, if proven, would entitle him to relief. First Am. Title Co. v. DeVaugh, 480 F.3d 438, 443 (6th Cir. 2007). "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Weiner v. Klais & Co., 108 F.3d 86, 88 (6th Cir. 1997).

When reviewing a motion to dismiss, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although

3

the federal procedural rules do not require that the facts alleged in the complaint be detailed, "'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.'" Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

The Court has taken judicial notice of the plea agreements of two named Defendants, and those plea agreements may be considered by the Court for purposes of this motion. See Rondigo, L.L.C. v. Twp. of Richmond, 641 F.3d 673, 680-81 (6th Cir. 2011) (court may consider public records if referred to in the complaint and are central to its claims without converting a motion to dismiss into a motion for summary judgment) (citing Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008)).

## III. ANALYSIS

### A. Sufficiency of the Allegations

SKF USA argues that IPPs' complaints fail to meet pleading standards because there are no allegations regarding its involvement in the alleged conspiracy. The Sixth Circuit usually requires the plaintiffs alleging a price-fixing conspiracy to "specify how [each] defendant [was] involved in the alleged conspiracy." Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 445 (6th Cir. 2012) (quoting In re Travel Agent Comm'n Antitrust Litig., 583 F.3d 896, 905 (6th Cir. 2009)). The court in Carrier Corp. addressed allegations that the parent sold the price-fixed product to the subsidiary in the United States, that the parent exercised control over the subsidiary, and that the parent held

4

out the two companies as a single enterprise with overlapping executives. Id. at 445-46. Given these allegations, the appellate court noted that it is not necessary for the plaintiffs to "delineate in the complaint the role each subsidiary played in the conspiracy." Carrier Corp., 673 F.3d at 446.

That is the situation here. In this case, IPPs allege that SKF USA sold bearings in the United States during the Class Period. Notably, once IPPs pleaded SKF USA participated in conspiracy, they did not need to differentiate between participating defendants relative to the overt acts. They have met their burden by alleging SKF USA joined the conspiracy and played a role in it, rather than relying on an allegation that SKF USA is liable because AB SKF joined the conspiracy. Further, IPPs have alleged more than parallel conduct; IPPs have alleged that AB SKF, the parent company of SKF USA, participated in the conspiracy and authorized SKF USA to engage in the alleged antitrust conduct. IPPs allege that the two entities shared executives, reported sales from the automotive division jointly, and had a large presence in the United States. IPPs also allege that the market was conducive to antitrust conduct, and AB SKF, was one of only seven members of the World Bearing Association Consequently, even if IPPs could have alleged NSK USA's role in the conspiracy more explicitly, the Court finds IPPs have met their pleading burden.

This result is consistent with the Court's holding in other component part cases. For example, in In re Automotive Parts Antitrust Litig., No. 2:12-cv-00102, 2013 WL 2456613 (E.D. Mich. June 6, 2013), the Court found that the plaintiffs' allegations regarding the parent company's control over the subsidiaries along with the parent company's guilty plea were sufficient to withstand a motion to dismiss. Id. at *3.

Although the plaintiffs did not detail the specific conduct of the subsidiaries, the allegations as a whole created an inference that the subsidiaries participated in the conspiracy. Id. at *4. The same inference flows from the allegations in this case even though AB SKF has not pleaded guilty in light of the other allegations supporting the existence of a conspiracy. For example, AB SKF has admitted it is part of the Department of Justice investigation into antitrust activity in the Bearings market. (Case No. 12-502, Doc. No. 67 at ¶ 185; Case No. 12-503, Doc. No. 70 at ¶ 140). The investigation is ongoing. Further, the Court has taken judicial notice of the criminal plea agreements filed by the United States Department of Justice regarding SKF USA's co-defendants, NSK Ltd. and JTEKT Corporation. (See Case No. 502, Doc. No. 98; Case No. 12-503, Doc. No. 101). NSK Ltd.'s Plea Agreement requires its full cooperation to provide documents and information relating to the conspiracy. (See Case No. 12-503, Doc. No. 82, Ex. 1). The Plea Agreement also requires cooperation from any subsidiaries in which NSK Ltd. has a greater than 50% ownership. (Id.) Likewise, JTEKT Corporation has pleaded guilty to conspiring to fix the prices of Automotive Bearings in the Untied States. (See Case No. 12-503, Doc. No. 82, Ex. 2). Both Defendants have admitted to participation with "other bearings manufacturers" from at least 2000 through July 2011. (NSK Plea at ¶¶ 2, 4(b); JTEKT Plea Agreement at ¶¶ 2, 4(a)(ii)). Both admit that the "conspiratorial conversation and meetings [ ] took place in the United States and elsewhere." (NSK Plea Agreement at ¶ 2; JTEKT Plea Agreement at ¶ 2).

SKF USA highlights the lack of any reference to it in the plea agreements and the limited scope of the admissions by NSK Ltd. and JTEKT Corporation relative to the

broad conspiracy advanced by IPPs. NSK Ltd. and JTEKT Corporation only admitted that they agreed "to allocate markets, rig bids for, and to fix, stabilize, and maintain the prices of bearings sold to Toyota Motor Company ("Toyota"), certain subsidiaries, and other Japanese automobile manufacturers and Japanese automobile component manufacturers. . .in the United States and elsewhere. (Id.)

SKF USA concedes that ADPs do allege that Toyota was one of SKF's main customers. (Doc. No. 100 at ¶ 156). Because ADPs use SKF to refer to AB SKF and SKF USA collectively, however, Defendant concludes that it is not clear that SKF USA sold Bearings to Toyota or other Japanese manufacturers in the United States, a pleading shortfall that dooms the complaint. See Precision Assoc., Inc. v. Panapina World Transport (Holding) Ltd., 08-CV-42 (E.D.N.Y. Jan. 4, 2011) (observing that lumping or grouping corporate families ignores corporate separateness). The Court disagrees.

Defendant's desire to confine any inference drawn from the guilty pleas to the specific behavior admitted by NSK Ltd. and JTEKT Corporation ignores the wide-ranging, ongoing investigation by governmental authorities into the conspiracy and case law upholding the use of admitted conduct to support the existence of the conspiracy beyond those entities that have pleaded guilty. The content of the guilty pleas does not render a conspiracy beyond Toyota implausible. The factual allegations in the complaint creates "a reasonable expectation that discovery will reveal evidence of illegal agreement" beyond those parties that have pleaded guilty and beyond the extent admitted by some Defendants. Twombly, 550 U.S. at 556. Accord In re Polyurethane Foam Antitrust Litig., 799 F. Supp. 2d 777, 782 (N.D. Ohio 2011) (relying on "specific

admissions" made during a governmental investigation that supported the "existence of a conspiratorial agreement" as opposed to government investigations coupled with parallel conduct). The fact that only Toyota was identified as a target in the guilty pleas does not act as a limit on the scope of the conspiracy, particularly before discovery. In re Packaged Ice Antitrust Litig, 723 F. Supp. 2d 987, 1011 (E.D. Mich. 2010). Relatively few defendants plead guilty to all of the charges against them, and limitations on government resources may play as much a role in the agreement as the conduct involved. In re High Fructose Corn Syrup Antitrust Litig., 295 F.3d 651, 664-665 (7th Cir. 2002). Consequently, viewed in their entirety, the allegations support an inference that SKF USA participated in a price-fixing conspiracy aimed at the United States under the direction of AB SKF. Accordingly, the Court denies SKF USA's request to dismiss the complaints based upon the sufficiency of the allegations and considers Defendant's second ground for dismissal.

### B. Omissions in End-Payor Plaintiffs' Complaint

SKF USA argues it must be dismissed from the EPPs' complaint because it is not named in any of the four claims for relief in the End-Payor Complaint. EPPs' complaint defines collective Defendants as "JTEKT Corporation, Nachi-Fujikoshi Corp., NSK Ltd., Schaeffler AG, AB SKF, NTN Corporation and NTN USA Corporation." (Case. No. 12-503, Doc. No. 70 at ¶ 4). Each of the four counts is brought against "Defendants." (Case No. 503, Doc. No. 70 at ¶¶ 196-258). Because SKF USA is not identified as part of the collective Defendants, it concludes that it is entitled to dismissal.

The Court finds Defendant's argument unpersuasive. At the outset of its discussion, the Court observes that the omission of SKF USA from Paragraph 4 of the

Complaint stands in contrast to the allegations advanced against it in Paragraphs 91-94, wherein EPPs define SKF USA as a defendant. (Case No. 12-503, Doc. No. 70). Further, EPPs refer to SKF USA and AB SKF jointly as SKF, and AB SKF is identified in Paragraph 4. Moreover, neither the cases cited by Defendant nor the procedural rules requires a plaintiff to name each defendant specifically in each count of a complaint.

For example in Tran v. Mich. Dep't of Human Servs., the court dismissed the Michigan Department of Human Services, one of twenty-three defendants, because it was not a "person" under § 1983. Further, the complaint did not make any specific allegations against MDHS, and it was not named in any count. That is not the case here, because EPPs do advance specific allegations against SKF USA. Compare Dang v. Quicken Loans, No. RDB-12-3342, 2013 WL 1683910 (D. Md. Apr. 17, 2013) (dismissing claims against Deutsche Bank because, although it was listed in the case caption, the body of the complaint made only passing reference to Deutsche Bank and the plaintiff specifically listed every other defendant by name in each count); Keane v. Navarro, 345 F. Supp. 2d 9, 12 (D. Mass. 2004) (dismissing defendants who are identified as defendants where no counts are brought against them); Servpro Indus., Inc. v. Schmidt, 905 F. Supp. 475, 478-83 (N.D. Ill. 1995) (dismissing defendants named in the caption of the complaint but not named in any counts).

Here, the complaint, read as a whole, includes SKF USA as a defendant. SKF USA is listed under the "SKF Defendants" and EPPs include enough allegations to plausibly implicate SKF USA in the price-fixing conspiracy. "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." Fed. R. Civ. P. 10(c). Moreover, "[p]leadings must be construed so as to do

9

justice." Fed. R. Civ. P. 8(e). Thus, the Court rejects Defendant's narrow reading of EPPs' complaint, The Court finds that EPPs have provided SKF USA with fair notice of their intent to assert claims against it.

## IV. CONCLUSION

Accordingly, Defendant's motion is **DENIED**.

**IT IS SO ORDERED.**

Date: August 27, 2014                    s/Marianne O. Battani
                                         MARIANNE O. BATTANI
                                         United States District Judge


<u>Certificate of Service</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on August 27, 2014.

<u>s/Kay Doaks</u>
Case Manager